**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MICHAEL A. D'ANTONIO, | Civil Action No.: 16-cv-816 |
| Plaintiff, | |
| v. | **OPINION** |
| BOROUGH OF ALLENDALE, et al., | |
| Defendants. | |

**CECCHI, District Judge.**

## I.     **INTRODUCTION**

This matter comes before the Court on several motions to dismiss made by the following

Defendants: Passaic River Coalition ("PRC") (ECF No. 22); David Bole ("Bole"), the Borough of

Allendale ("the Borough"), Mary McDonnell ("McDonnell"), David Pfund ("Pfund"), and Stiles

Thomas ("Thomas," together, the "Borough Defendants") (ECF No. 33); Mark S. Carter ("Carter")

(ECF No. 34); Richard Epstein ("Epstein") (ECF No. 36); John Albohm ("Albohm") (ECF No.

39); and the Bergen County Sheriff's Department ("Sheriff's Department") (ECF No. 47); as well

as pro se Plaintiff Michael A. D'Antonio's ("Plaintiff") motion for default judgment against

Defendants Louis Capazzi ("Capazzi") and Thomas P. Monahan, Esq. ("Monahan") (ECF No. 63),

and Plaintiff's appeal (ECF No. 74) of Magistrate Judge Clark's November 18, 2016, Order (ECF

No. 73).  The Court has considered the submissions made in support of and in opposition to the

instant motions.[1]  The motions are decided without oral argument pursuant to Fed. R. Civ. P.

---

[1] The Court treats ECF No. 26 as Plaintiff's opposition to PRC's motion, and ECF No. 37 as his opposition to the Borough Defendants' motion, for substantially the same reasons as stated

78(b).[2]  For the reasons set forth below, Defendants' motions are GRANTED and Plaintiff's

motion and appeal of Judge Clark's Order are DENIED.

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367(a).

## II.    BACKGROUND

The following alleged facts are taken from the Complaint (ECF No. 1[3]) and its attachments,

as well as matters of public record submitted by Defendants.  See Mayer v. Belichick, 605 F.3d

223, 230 (3d Cir. 2010).

### A.    Parties

Plaintiff was formerly engaged in the purchase, remodeling, and resale of single- and

multiple-family homes, as well as the subdivision of property to build new homes. (Compl. at 7).

Plaintiff leased and resided in a house on a property located at 316 E. Allendale Ave., Allendale,

New Jersey (the "Subject Property"). (Compl. at 7; Cert. of Mary C. McDonnell in Support of

Defs.' Mot. to Dismiss ("McDonnell Cert.") Ex. 6 ¶ 3).  The Subject Property adjoins another

property previously owned by a developer named Jack Levin (the "Levin Property"). (Compl. at

---

by Magistrate Judge Clark in his Order dated November 17, 2016. (ECF No. 73).  Plaintiff's
opposition to the Sheriff's motion is ECF No. 50.

[2] The Court considers any new arguments not presented by the parties to be waived.  See
Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1298 (3d Cir.
1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver
of the argument.").

[3] The Complaint, not including attachments, encompasses a form complaint for pro se
litigants and two additional documents titled "Named Defendants and Service List in the Matter
of Michael A. D'Anton[i]o" and "Civil Rights Complaint of Michael A. D'Antonio Procedural
History." (ECF No. 1).  Each has its own pagination.  The Court will use the ECF pagination
rather than refer to these three documents separately.  Additionally, the Court considers as part of
the complaint the first four pages of ECF No. 1-1, titled "Civil Rights Complaint of Michael A.
D'Antonio Exhibits" because it appears to contain additional allegations.  The Court will refer to
this document as "Supp. Compl." and use its ECF pagination.

7-10). Plaintiff is affiliated (the Complaint does not specify how) with an entity named Calm Development, Inc. ("Calm"), which owned the Subject Property from 1997 until Emigrant Mortgage (not a party here) foreclosed upon it in an action before Judge Peter Doyne in the Superior Court of New Jersey Law Division, Bergen County. (See Compl. Ex. 7 at 29; McDonnell Cert. Ex. 6 ¶ 2; id. Ex. 20 ¶ 1). Plaintiff does not appear to allege he, rather than Calm, ever owned the Subject Property.[4] In 2013, in a separate action, Calm obtained a default judgment against Levin, J.D. Levin Associates, Inc. ("Levin Associates"), and J.S. Heather Court Allendale Property, Inc. ("Heather Court"), for approximately $6 million. (Compl. Ex. 3, ECF Doc. 1-1 at 8-9).

Defendant Thomas owned property adjoining the Subject Property and was employed during the relevant time period by Defendant the Borough as its "Marsh Warden." (Compl. at 8).

Defendant Albohm is alleged to have purchased land at some point from Levin "and further created a reconveyance of title which 'Ran With the Land in Perpetuity.'" (Supp. Compl. at 1). According to Plaintiff, Calm attempted to collect on its default judgment against Levin from Albohm, but was unsuccessful. (Id.). The Court finds no other factual allegations in the Complaint about Albohm.

Defendants Bole, Pfund, and McDonnell represented the Borough in litigation against Plaintiff. (Compl. at 8).

Defendant Epstein represented an entity named Emigrant Mortgage in a foreclosure action against Calm concerning the Subject Property. (Compl. Ex. 7).

---

[4] According to the opinion of the Superior Court of New Jersey, Appellate Division, in prior litigation involving Calm, Plaintiff conveyed the Subject Property to his sons in February 1997, who conveyed it to Calm in October 1997. (McDonnell Cert. Ex. 25 at 8 n.3). Thus, Calm appears to have owned the Subject Property before the events giving rise to the Complaint.

Defendant Monahan, who has not appeared in this case, is listed as a defendant in the Complaint but no allegations about him are contained therein. (Compl. at 6). He appears to have been Plaintiff's attorney in previous actions against the Borough. (Borough Defs.' Br. at 8).

Defendant Carter is an attorney who represented Calm in a state court action against the Borough and other defendants (Compl. Ex. 2), in which the default judgment against Levin was obtained (Compl. Ex. 4); as well as in Emigrant Mortgage's foreclosure action. (Compl. Ex. 7).

Defendant Capazzi, who has not appeared, represented either Calm or Plaintiff (the Complaint is unclear) at some point, apparently in connection with the foreclosure proceedings and some bankruptcy proceedings (it is unclear who or what entity filed for bankruptcy). (Compl. at 9-10).

Defendant PRC purchased at least part of the Levin Property from the Borough after the Borough foreclosed on the Levin Property for failure to pay taxes. (Compl. at 8-9).

Defendant Sheriff's Department evicted Plaintiff from the Subject Property. (Compl. at 10).

### B.    Factual Background

Plaintiff's allegations, though not always clear, appear to focus on a series of conflicts between himself, the Borough, and its other residents concerning the Subject Property and the Levin Property, which eventually gave rise to a series of lawsuits in state court. Mindful of Plaintiff's pro se status and in an attempt to construe the Complaint liberally, the Court recounts the factual content of the Complaint in detail.

First, Plaintiff complains of the Borough's restrictions on his use of the Subject Property. In 1998, the Borough declared the Subject Property did not conform with Borough zoning laws,

and denied an application[5] for building permits to build an addition and subdivide the Subject
Property. (Compl. at 7). Allegedly, the Borough made this decision despite the fact that a main
house and a carriage house have existed on the Subject Property since the late 1950s (presumably,
the Borough cited the existence of two structures as the reason for finding the Subject Property to
be nonconforming). (Id.). Twice more, in 2000 and 2002, the Borough denied applications to
subdivide the Subject Property. (Id.). In 2005, the Borough allegedly took several actions to
prevent a second driveway from being added, trees being cut, and other development of the Subject
Property: the Borough allegedly created about twenty ordinances targeting Plaintiff specifically,
and had its police institute video surveillance of the Subject Property and send officers or other
officials to the Subject Property approximately 65 times. (Id.). Although the Complaint is not
clear, it appears Plaintiff was also assessed a $5,000 fine around this time in connection with his
commercial activities on the Subject Property, and accumulated significant attorney's fees
defending against litigation instituted by the Borough and Bole (the subject of this litigation is not
clear).

In 2005 and 2007, the Borough twice denied "COAH approval for 30 units with 6
affordable units[.]" (Compl. at 7). The Council on Affordable Housing ("COAH") is a New Jersey
state agency. See State of New Jersey Department of Community Affairs: Fair Housing Act
Administration, http://www.nj.gov/dca/services/lps/hss/ (last visited February 21, 2017).

At some point (the Complaint does not say when), Plaintiff claims his neighbor, Defendant
Thomas, along with the Borough, diverted a tributary of a nearby river to create an 18-acre lake,
some of which appears to have been on the Subject Property. (Compl. at 8). This resulted in part

---

[5] It is unclear whether Plaintiff, Calm, or some other person or entity filed the application.
The Complaint seldom distinguishes between Plaintiff's actions and Calm's.

of the Subject Property being designated as wetlands, limiting Plaintiff's ability to develop it. (Id.). Thomas also allegedly sent the New Jersey Department of Environmental Protection a photo of an endangered species of owl, falsely claiming they had a habitat on the Subject Property, presumably to further frustrate Plaintiff's ability to develop the Subject Property. (Id.; McDonnell Cert. Exs. 8-9).

Plaintiff claims the diversion of the tributary and designation of the resulting lake as wetlands affected the neighboring Levin Property as well, preventing Levin from developing it, and causing water runoff from the Levin Property to migrate onto the Subject Property. (Compl. at 8). Calm brought litigation in the Superior Court of New Jersey Law Division, Bergen County, before Judge Robert Wilson, against the Borough, Thomas, Levin, Levin Associates, Heather Court, and other parties concerning the water issue (the "Water Litigation"). (Id. at 8; id. Exs. 2, 3). Calm obtained the $6 million default judgment discussed above against Levin, Levin Associates, and Heather Court on March 21, 2013, but obtained no judgment against the Borough. (Id. at 8; id. Exs. 2, 3). Plaintiff claims in 2011 Judge Wilson "dismissed the defendant Stiles Thomas on fraudulent submissions of Counsel hired by the Insurance company Joint Insurance Fund[,]" which is not a party here. (Compl. at 9; see McDonnell Cert. Ex. 22). Furthermore, Judge Wilson granted summary judgment in 2012 as to all parties except Levin, Levin Associates, and Heather Court (all of whom were in default), as Plaintiff claims, "in the absence of all discovery," and without giving Plaintiff or Calm time to find a new lawyer after the previous one passed away during the litigation. (Compl. at 10; see McDonnell Cert. Ex. 24).

In the same paragraph discussing the Water Litigation for the first time, Plaintiff claims Judge Wilson "turn[ed] off the recording" and allowed Defendants Bole, Pfund, and McDonnell to "tamper with evidence and further obstruct justice," which "created a mistrial." (Compl. at 8).

6

Specifically, Plaintiff claims Bole, Pfund, and McDonnell "altered the records and deceived the Judge about the payroll checks[:] some of the checks had front and back but 2600 backs of the checks were missing." (Id. at 8). Further, Plaintiff claims Bole hired a law firm (not a party here) "to obtain a deed by In Rem Tax Foreclosure but all attorneys failed to proceed in accordance to the appropriate statutes and rules of Civil Practice" by not advertising the Levin Property "so it could be sold to the highest and best bidder." (Id.). Ultimately, Plaintiff claims, the Borough sold the part of the Levin Property designated as wetlands to Defendant PRC and retained the rest for itself, although the Borough allegedly "t[old] everyone that the PRC owns it." (Id. at 8-9). The Borough conveyed the Levin Property to PRC on March 24, 2011. (Id. Ex. 1). Plaintiff claims the Borough "never got a letter of interpretation from the [New Jersey] Department [of] Environmental Protection," which "denied Plaintiff the right [to] collect on the sole asset in Jack Levin's name." (Id. at 9). It seems that Plaintiff is alleging that the Borough foreclosed on the Levin Property for non-payment of taxes and sold some of it to PRC, which denied Plaintiff the ability to collect on the default judgment Calm obtained against Levin. (See id. at 8-9).

Plaintiff or Calm hired Capazzi and then Carter as attorneys to "execute a writ" to recover the judgment from Levin on the Levin property, but were unsuccessful despite Plaintiff or Calm paying them $10,000. (Compl. at 9). Plaintiff claims Carter, "a matrimony attorney[,] took the case but did not represent the facts as requested by this Plaintiff." (Id.). He also claims Capazzi "kept the money and never collected on the Writ." (Supp. Compl. at 1).

Plaintiff also complains of taxes the Borough imposed on the Subject Property. In 2002, the Borough increased the property taxes on the Subject Property from $7,200 to $14,400, and eventually (it is unclear when) to more than $25,000. (Compl. at 7). Plaintiff appears to contend this violated New Jersey state tax law, which he claims prohibits a municipality from levying taxes

in excess of a 2% surplus over the municipality's budget. (Id.). Subsequently, in 2007, Plaintiff "t[ook] notice of" the Borough's Annual Budget Report, which he claims intentionally misreported the budget surplus. (Id. at 9). Plaintiff seems to contend this allowed the Borough to hide the fact that it was taxing him in violation of New Jersey law. In particular, Plaintiff alleges the Borough had a secret investment account and had, in total, $76 million in deposits despite only a $37 million budget. (Id.). When Plaintiff requested in "discovery" (it is not clear what court action this refers to) the backs of all payroll checks, Pfund represented that "the backs of the checks were submitted" but "didn't say all of the backs of all the checks were submitted." (Id.). In 2008, the Borough commissioned some sort of internal accounting report to be completed by an individual or entity named "Ghironda." (Id. at 8). Plaintiff claims the report showed inconsistencies in Borough finances, and led several Borough officials to resign or retire. (Id.).

Plaintiff's allegations also encompass the foreclosure proceedings before Judge Doyne, and subsequent proceedings to evict Plaintiff from a house he occupied on the Subject Property, before Superior Court Judge Gerald C. Escala. As with Judge Wilson, Plaintiff contends Judge Doyne held proceedings without "the recorder on." (Compl. at 9-10). Plaintiff claims Calm presented enough evidence for Judge Doyne to find there was a novation of the mortgage, but Judge Doyne did not do so. (Id. at 10). Plaintiff also claims Epstein (as Emigrant Mortgage's attorney) sought to evict Plaintiff by "[a]lter[ing] evidence and filing documents with notice to Plaintiff and[/]or Plaintiff's Counsel to obtain a deed from the Sheriff's Department," "[t]ampered with the transcript to make it appear . . . that [Plaintiff] had no lease when clearly [Plaintiff] was in occupancy 4 years before the bank started to obtain a Writ of Possession[,]" and "manipulated an officer of the Sheriff's Department, a Captain Edgars[,] to give explicit orders that under NO circumstances was Plaintiff allowed to stay in possession of the leased premises, which was

[o]rdered [b]y Judge Jonathan Harris in 2002." (Id.). Notably, however, Plaintiff's exhibits and Defendants' submissions show that on May 14, 2014, Judge Escala found this lease to be a sham lease between Calm and Plaintiff, and denied Plaintiff's motion to stay his eviction. (Compl. Ex. 8 at 64; Epstein's Br., ECF No. 36, Ex. 2 at 6).

In Plaintiff's descriptions of his exhibits (Supp. Compl. at 1-3), Plaintiff claims that, at a hearing before Judge Escala on May 22, 2013, to determine whether the sheriff's sale of the Subject Property would be stayed, Bole (representing the Borough) misrepresented to the court that "there is no property left over" from the Levin Property. (Supp. Compl. at 2). It appears from the transcript of this proceeding that Calm, appearing through Carter, unsuccessfully attempted to negotiate a mortgage modification with Emigrant Mortgage and offered to assign the default judgment to Emigrant. (Compl. Ex. 7 at 6-8). Plaintiff complains that the Borough and PRC conspired both to falsify the size of the Levin Property and to designate it as wetlands without permission from the Department of Environmental Protection, and that this deprived Calm of the ability to collect on the default judgment against Levin. (Supp. Compl. at 2). Plaintiff also claims Epstein (representing Emigrant Mortgage) falsified documents before Judge Escala but does not specify what documents. (Id. at 3).

Relevant to Plaintiff's claims regarding the eviction, in a separate action in Superior Court before Judge Estela De La Cruz in 2015, Plaintiff sought to amend his complaint to bring a wrongful eviction claim, alleging that Epstein misled Judge Escala with a "submission [that] was redacted in part, to favor his client['s] position and present only partial facts to Judge Escal[]a, causing Judge Escal[]a to deny Plaintiff's Emergent Stay of Eviction[.]" (Epstein's Br., Ex. 3 at 3-4). On September 18, 2015, Judge De La Cruz denied Plaintiff's motion to amend with prejudice because his new claims aimed to "re-open prior foreclosure litigation[] rulings and [d]ecisions."

(Id. Ex. 3 at 13).   On October 28, 2015, Judge De La Cruz denied Plaintiff's motion for reconsideration because Plaintiff was "attempt[ing] to re-open prior foreclosure litigation rulings and decisions entered by prior Courts, including those of the Hon. Peter E. Doyne (Ret.) and the Hon. Gerald Escala[.]" (Id. at 14-15).

Plaintiff also complains of Judge De La Cruz's denial of a motion to compel in a separate action in 2015, and claims she "redacted my caption block so that the file would not clearly recognize what the motion was for." (Supp. Compl. at 3).  Plaintiff also cites twelve pages of the transcript of a motion hearing before Judge De La Cruz and claims "Mr. Epstein still has not complied with this statement" but does not specify the statement.  (Id.).  Finally, Plaintiff claims he has been unable to enforce a subpoena attached to the Complaint as Exhibit 9.  (Id.).

### C.   Plaintiff's Claims

Plaintiff purports to bring this claim under 42 U.S.C. § 1983 (Compl. at 12) and lists numerically twenty-six types of law he claims Defendants violated. (Compl. at 11).  However, of the twenty-six, most sound in state statutory or common law, and are thus not enforceable under Section 1983.  See Grammer v. John J. Kane Regional Centers-Glen Hazel, 570 F.3d 520 (3d Cir. 2009) ("[A] plaintiff [in a Section 1983 action] must assert the violation of a federal right . . . to seek redress." (emphasis added)).[6]  Additionally, several of the federal laws Plaintiff cites are best

---

[6] The claimed violations sounding only in state law are "Judgment for over appropriation of tax levies for 15 years," "Municipal Officials Theft," "CFO's manipulation of Borough Accounting," "Violation of Court Rules and Professional Conduct," "Consumer Fraud on the Public," "Negligence after Notice of Claim," "Violation of . . . State Open Public Meeting Laws," "Breach of Duty of Care and Fiduciary Duty," "Legal Malpractice," "Fraud in the Inducement," "Fraud in the Concealment," "Violation of OPRA," "NJ Fair Housing Laws and COAH Violations," and "Fraud in the General Principles of Equity." (Compl. at 11).  Separately, Plaintiff also claims Defendants violated New Jersey Title 54 and the Anti-Eviction Act.  (Compl. at 4). As discussed below, the Court does not consider whether the Complaint states a claim under any of these laws or legal theories independent of Section 1983 because it declines supplemental jurisdiction over state law claims in this case.

understood as independent causes of action rather than federal rights whose violations are enforceable under Section 1983. Moreover, the Court interprets "Conspiracy" and "Conspiracy in the Inducement" to be a Section 1983 conspiracy claim, and "Violation of Federal Civil Rights" to be duplicative of the specific constitutional rights cited elsewhere in the list. (Compl. at 11). Separate from the list, Plaintiff also cites 42 U.S.C. §§ 1981 and 1985 as causes of action. (Compl. at 12). Accordingly, the Court construes the Complaint as listing the following purported federal causes of action:

1. Section 1983 seeking to enforce Plaintiff's First, Fourth, Fifth ("Taking of property with[]out compensation"), and Fourteenth Amendment ("Due Process") Rights;
2. Section 1983 conspiracy concerning the same Constitutional rights;
3. Mail Fraud;
4. Wire Fraud;
5. "Criminal R[ICO] Violations";
6. "Title 11 USC Violation";
7. "Title 18 USC Violation";
8. "Violation of Federal . . . Open Public Meeting Laws";
9. "Right to Disclosure;"
10. Section 1981;
11. Section 1985.

(See Compl. at 11-12). With respect to the Borough only, Plaintiff also specifies claims "on a responde[a]t superior basis for the misconduct of its Officers" under both the Fourteenth Amendment (which the Court interprets as a Section 1983 claim) and Section 1981.[7] (Compl. at 12).

---

[7] Plaintiff also purports to bring a state law claim against the Borough for "its alleged negligence or wonton recklessness in failing to follow the Law as to Municipal funds [to] train and supervise the two individual defendants and in permitting them to act as police officers not[]withstanding the [Borough's] prior knowledge of their propensity to harass and mistreat any citizens." (Compl. at 12). As explained below, the Court declines to exercise supplemental jurisdiction over this and all other state law claims.

### III.   LEGAL STANDARDS

#### A.   Rule 12(b)(1)

##### 1.   Standing

A motion to dismiss for lack of standing is properly brought pursuant to Federal Rule of Civil Procedure 12(b)(1), because standing is a matter of jurisdiction. Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007).

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" Lance v. Coffman, 549 U.S. 437, 439 (2007). One key aspect of this case-or-controversy requirement is standing. Id. at 439. "The standing inquiry focuses on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." Constitution Party of Pa. v. Aichele, 757 F.3d 347, 360 (3d Cir. 2014) (citing Davis v. FEC, 554 U.S. 724, 734 (2008)).

To establish standing, a plaintiff must satisfy a three-part test, showing: (1) an 'injury in fact,' i.e., an actual or imminently threatened injury that is 'concrete and particularized' to the plaintiff; (2) causation, i.e., traceability of the injury to the actions of the defendant; and (3) redressability of the injury by a favorable decision by the Court. Nat'l Collegiate Athletic Ass'n v. Gov. of N.J., 730 F.3d 208, 218 (3d Cir. 2013) (citing Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009)). "The party invoking federal jurisdiction bears the burden of establishing these elements." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

Not all 12(b)(1) motions are created equal: "[a] district court has to first determine [] whether a Rule 12(b)(1) motion presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." Aichele, 757 F.3d at 357. A facial attack "is an argument that considers a claim on its face and asserts that it is

insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not

present a question of federal law." Id. at 358. A factual attack, by contrast, "is an argument that

there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted

jurisdiction." Id. Unlike a facial attack, a factual attack invites the Court to "look beyond the

pleadings to ascertain the facts" relevant to jurisdiction. Id.

### 2.   Rooker-Feldman

The Rooker-Feldman doctrine divests federal courts of subject matter jurisdiction where

the requested relief would reverse a prior state court decision or void its ruling. See Rooker v.

Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460

U.S. 462 (1983); see also 28 U.S.C. § 1257. There are four elements for the Rooker-Feldman

doctrine to apply: "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries

caused by the state court judgments; (3) those judgments were rendered before the federal suit was

filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments."

Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010).

Rooker-Feldman challenges are factual attacks to subject matter jurisdiction. Walthour v. Child

& Youth Servs., 728 F. Supp. 2d 628, 635 (E.D. Pa. 2010).

### B.   Rule 12(b)(6)

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6),

it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Bell Atl. Corp. v. Twombly, 550

U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-

pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of

the non-moving party. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

13

"Factual allegations must be enough to raise a right to relief above the speculative level."
Twombly. 550 U.S. at 555. "A pleading that offers labels and conclusions will not do. Nor does
a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." Iqbal,
556 U.S. at 678 (internal citations omitted). However, "the tenet that a court must accept as true
all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare
recitals of the elements of a cause of action, supported by mere conclusory statements, do not
suffice." Id. Thus, when reviewing complaints for failure to state a claim, district courts should
engage in a two-part analysis: "First, the factual and legal elements of a claim should be separated
. . . . Second, a District Court must then determine whether the facts alleged in the complaint are
sufficient to show that the plaintiff has a 'plausible claim for relief.'" See Fowler v. UPMC
Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted). In deciding a motion to
dismiss pursuant to Rule 12(b)(6), the Court may refer to matters of public record. See Belichick,
605 F.3d at 230.

A pro se litigant's complaint is held to "less stringent standards than formal pleadings
drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-21 (1972). Courts have a duty to
construe pleadings liberally and apply the applicable law, irrespective of whether a pro se litigant
has mentioned it by name. Mala v. Crown Bay Marina. Inc., 704 F.3d 239, 244 (3d Cir. 2013).

## IV.   DISCUSSION

Before construing Plaintiff's individual federal claims, the Court examines potential
jurisdictional issues raised by the allegations in the Complaint.

### A.   Standing

The Court treats Defendants' motions to dismiss for lack of standing as factual, rather than
facial, attacks because they argue Plaintiff's lack of standing results from Plaintiff not owning the

Subject Property during the relevant time period. Ultimately, however, as discussed above, the Complaint, attachments, and public record alone are sufficient to demonstrate that Calm, not Plaintiff, owned the Subject Property during the relevant time period. Plaintiff does not appear to have given any indication to the contrary.

Plaintiff lacks standing to bring claims based on alleged civil rights violations to Calm. The fact that "a corporation may itself bring suit under [S]ection 1983 for alleged infringements of its rights to due process and equal protection[,] . . . eliminates the need for recognition of a right in shareholders to bring suit on the corporation's behalf." Marchese v. Umstead, 110 F. Supp. 2d 361, 367 (E.D. Pa. 2000) (internal quotations and citations omitted). Thus, "a stockholder, director, officer or employee of a corporation has no personal or individual right of action" unless "the shareholder or officer suffers an[] injury separate and distinct from that suffered by the corporation as a result of the wrongdoer's actions." Id. (internal quotations omitted). A "personal loss by virtue of losses incurred by the corporation" is not a separate and distinct injury. Grimm v. Borough of Norristown, 226 F. Supp. 2d 606, 632 (E.D. Pa. 2002) (disagreed with on other grounds by Eichenlaub v. Township of Indiana, 385 F.3d 274, 284 n.6 (3d Cir. 2004)).

It is not entirely clear from the Complaint what Plaintiff's current relationship is with Calm, but even assuming he is the sole owner and/or the sole executive, he lacks standing to bring claims based on injuries to Calm, its interests, or its property. Calm owned the Subject Property during the relevant time periods in the Complaint. For this reason, it is not apparent how Plaintiff, rather than Calm, was directly injured when any Defendant allegedly frustrated efforts to develop the Subject Property; caused flooding on the Subject Property; prevented Calm from collecting on the $6 million default judgment; collected illegal property taxes from Calm; obtained adverse state court rulings against Calm, including the foreclosure on the Subject Property; or interfered with

any other financial or property right belonging to Calm.  Similarly, Plaintiff lacks standing to challenge the Borough's foreclosure on and sale of the Levin Property because it is not apparent how he suffered a direct injury.

In opposition to the present motions, Plaintiff claims that he is the settlor of the D'Antonio Family Living Trust (the "Trust"), into which he transferred all of Calm's assets and liabilities, including the default judgment against Levin, Levin Associates, and Heather Court. (Pl.'s Opp., ECF No. 26, at 13; id. Ex. 16). Plaintiff's exhibit (Id. Ex. 16), a September 2, 2015, letter from Joseph S. DiMaria, Esq. attaching Calm's corporate resolution dated April 28, 2014, indicates that Calm is a closed corporation, which transferred its assets and liabilities to Plaintiff on April 28, 2014. Plaintiff in turn apparently transferred these assets to the Trust, although nothing in Plaintiff's submissions indicates when this transfer occurred. (Id.). Nevertheless, Plaintiff still appears to lack standing. First, even assuming what Plaintiff says is true, the Trust never owned the Subject Property. According to a Superior Court order from Judge Toskos dated January 17, 2014, the Subject Property was sold in a sheriff's sale on December 6, 2013. (Epstein's Br. Ex. 2 at 2-4). Therefore, any injuries related to the Subject Property would have occurred before the Trust owned Calm's assets. As for any other alleged injury—including the inability to collect on the default judgment—Plaintiff has not alleged or indicated how he personally is directly injured by an injury to the Trust. The Court has been given no information concerning which state's law created the Trust; whether it is a revocable or irrevocable Trust; what role Plaintiff retains in relation to the Trust; or whether he continues to have any kind of interest in the Trust. Thus, the Court cannot find Plaintiff has been directly injured based on alleged injuries to the Trust.

At this juncture, therefore, the Court will not construe any claims based on injuries to Calm or the Trust, and the Court will not consider factual allegations of injuries to Calm in construing Plaintiff's claims.

**B.**     **Rooker-Feldman**

Many of Plaintiff's allegations concern prior Superior Court decisions and their consequences. To the extent Plaintiff alleges a direct injury (rather than an injury to Calm or the Trust) based on any adverse state court decisions prior to the filing of this lawsuit, this Court lacks jurisdiction to "review and reject" these decisions. See Great Western Mining & Mineral Co., 615 F.3d at 166. For this reason, Plaintiff cannot base his claims on the summary judgment ruling in 2012 in the Water Litigation;[8] Judge Doyne's decision not to find a novation in the Subject Property foreclosure action; or Judge De La Cruz's decisions in 2015.

**C.**     **Insufficient Service of Process**

PRC moves to dismiss for insufficient service of process under Rule 12(b)(5)[9] because Plaintiff personally mailed PRC a copy of the Complaint before it was filed and did not include a summons, in violation of Fed. R. Civ. P. 4(a) and 4(c), and failed to file an affidavit of service, in violation of Fed. R. Civ. P. 4(l). (ECF No. 22, "PRC's Br.," at 18). Indeed, Plaintiff has not served any Defendant in compliance with Rule 4. The Complaint was filed on February 10, 2016 (ECF Doc. 1). Summons was issued on February 18. (ECF Doc. 2). Yet, the only proof of service Plaintiff has ever filed, on March 30, 2016 (ECF Doc. 5) indicates he personally mailed copies of

---

[8] Claims arising from Plaintiff's allegation that the 2011 dismissal of Thomas was procured by fraud do not appear to be barred by Rooker-Feldman because the alleged injury resulted from the fraud, not the judgment. See Great Western Mining & Mineral Co., 615 F.3d at 167-68. In any event, Plaintiff lacks standing to challenge this action because it is not apparent how Plaintiff, rather than Calm (the plaintiff in the Water Litigation) or the Trust, was injured.

[9] Incorrectly brought as a motion pursuant to Rule 12(b)(4).

the Complaint to each Defendant on February 10, 2016, before summons was issued. Therefore, Plaintiff must have mailed those copies of the Complaint without a summons attached.

Plaintiff points out that, in a letter to the Clerk of Court dated March 31, 2016, PRC requested a 14-day extension to file responsive pleadings "[even ]though service was sufficient." (ECF No. 9-1). Plaintiff essentially argues this effected a waiver of the service requirements under Rule 4. (Pl.'s Opp., ECF No. 26, at 11). There is no indication Plaintiff requested a waiver from any Defendant, as required by Fed. R. Civ. P. 4(d)(1), and no formal waiver was obtained.

"[D]istrict courts possess broad discretion to either dismiss the plaintiff's complaint for failure to effect service or to simply quash service of process. However, dismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained. In such instances, the district court should, at most, quash service, leaving the plaintiffs free to effect proper service." Umbenhauer v. Woog, 969 F.2d 25, 30 (3d Cir. 1992). Here, the Court exercises its discretion not to dismiss the Complaint as to PRC for insufficient service of process. The Court does this in light of Plaintiff's pro se status and the Court's decision, explained below, to dismiss the Complaint without prejudice for failure to state a claim. To the extent there are any issues as to service on PRC, Plaintiff will be afforded an opportunity to effect service in conformity with Rule 4 of the Federal Rules of Civil Procedure.

For the same reason, the Court notes that Defendants Capazzi and Monahan were not properly served within 90 days of the Complaint being filed, see Fed. R. Civ. P. 4(m), but grants Plaintiff additional time to serve these Defendants properly.[10]

---

[10] The remaining defendants have waived the defense of improper service of process by failing to move to dismiss on these grounds. See Fed. R. Civ. P. 12(h)(1). This is so even though Plaintiff failed to serve them properly within the timeframe set forth by Rule 4(m). McCurdy v. Am. Bd. of Plastic Surgery, 157 F.3d 191, 194-95 (3d Cir. 1998). Therefore, the Court will take no action with respect to the service of these Defendants.

**D.      Federal Claims**

Considering the remainder of Plaintiff's allegations over which the Court has jurisdiction to adjudicate potential claims, Plaintiff states no claims arising under federal law.  The Court discusses each of Plaintiff's purported legal theories in turn.

1.      Section 1983 seeking to enforce Plaintiff's First, Fourth, Fifth ("Taking of property with[]out compensation"), and Fourteenth Amendment ("Due Process") Rights

As an initial matter, Plaintiff's respondeat superior theory of liability as to the Borough is foreclosed by the Supreme Court's decision in Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable under § 1983 on a respondeat superior theory.").

Aside from the allegations over which the Court has determined it lacks jurisdiction, set forth above, the Court is able to discern only two sets of allegations even arguably giving rise to a Section 1983 claim or any other federal claim.[11]

The first concerns the Borough's and Bole's alleged actions in 2005, namely, the imposition of ordinances, police surveillance, and fines, leading to Plaintiff's accrual of legal costs in defending against an unspecified action by the Borough.  (Compl. at 7).  But in New Jersey, a Section 1983 claim is subject to a two-year statute of limitations.  287 Corp. Ctr. Assocs. v. Twp. of Bridgewater, 101 F.3d 320, 323 (3d Cir. 1996).  Plaintiff does not explain why the statute of limitations should be tolled, or why Defendants should be estopped from asserting it.  Therefore, any potential claims arising out of this series of events are time-barred.

The second concerns Epstein's and the Sheriff Department's eviction of Plaintiff from the

---

[11] Plaintiff's allegations against his own attorneys, Capazzi and Carter, appear to be in the nature of malpractice, a state law claim.

house on the Subject Property.  But even assuming a wrongful eviction could give rise to a Section 1983 claim against these Defendants, it is barred by the doctrine of issue preclusion.  Issue preclusion requires showing "(1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding."  Hennessey v. Winslow Twp., 183 N.J. 593 (2005) (internal quotations and citations omitted).[12]

It is clear from public record that decisions from Plaintiff's previous cases in state court have already held Plaintiff was not wrongfully evicted.  Judge Escala did so in denying the stay of the eviction.  Judge De La Cruz did so again when she denied Plaintiff's motion to amend his complaint to add claims based on alleged wrongful conviction.  Thus, Plaintiff is precluded from litigating this issue yet again, and any claim arising from this allegation must be barred.

  2.  Section 1983 Conspiracy

Plaintiff's conspiracy claim under Section 1983 fails because, as discussed above, he has failed to allege the deprivation of a constitutional right or privilege.  Black v. Montgomery Cty., 835 F.3d 358 (3d Cir. 2016) (holding that a plaintiff who could not succeed on underlying Section 1983 claims also could not succeed on a conspiracy claim).  To the extent Plaintiff alleges conspiracy regarding the 2005 ordinances, surveillance, fines, and litigation costs, or regarding his

---

[12] New Jersey law controls the preclusive effect to be given to the decisions of its courts. See Allen v. McCurry, 449 U.S. 90, 96 (1980) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so[.]").

eviction, these conspiracy claims fail for the same reasons the underlying claims fail.[13]   Therefore, this claim is dismissed.

### 3.      Mail Fraud and Wire Fraud

Mail Fraud and Wire Fraud are federal criminal statutes.  See 18 U.S.C. §§ 1341, 1343.  As such, they do not independently grant Plaintiff a private right of action.  See Addlespurger v. Corbett, 461 F. App'x 82, 87 (3d Cir. 2012).  Therefore, these claims are dismissed.

### 4.      "Criminal R[ICO] Violations"

Plaintiff lacks standing to enforce criminal law.  To the extent Plaintiff brings a civil claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Complaint fails to state a claim under this statute.  Private rights of action under RICO are brought pursuant to 18 U.S.C. § 1962, and require showing "a pattern of racketeering activity."  18 U.S.C. § 1962(a) - (c).  A "pattern of racketeering activity" requires at least two acts of racketeering activity within a ten-year period.  18 U.S.C. § 1961(5).  The only potential predicate acts Plaintiff alleges are mail fraud and wire fraud.  But mail fraud and wire fraud in the RICO context require Plaintiff to allege that the Defendants used the mail or the wires in a scheme to deceive him.  See Boyle v. D'Onofrio, 99 F. Supp. 2d 541, 547 (D.N.J. 2000) (collecting cases).  Here, Plaintiff only appears to allege Defendants deceived others, including the courts of New Jersey, to his personal detriment.

Therefore, Plaintiff's RICO claim is dismissed.

### 5.      "Title 11 USC Violation" and "Title 18 USC Violation"

Title 11 of the United States Code concerns bankruptcy, and Title 18 is the criminal code.  Plaintiff does not specify which statutes apply to this case or why he has standing to enforce

---

[13] Plaintiff's allegations that the Borough and PRC conspired to falsify the size of the Levin Property and to designate it as wetlands are among those concerning Calm's inability to collect on its default judgment, and thus Plaintiff lacks standing to bring them.  See supra Part IV.A.

criminal statutes or bankruptcy statutes outside of a bankruptcy proceeding. Therefore, these claims are dismissed.

6.      "Violation of Federal . . . Open Public Meeting Laws"

Plaintiff does not appear to articulate any facts entitling him to relief for violation of any federal law concerning open public meetings. The Complaint's references to OPRA concern the New Jersey Open Public Records Act, not a federal statute. The only public entities in this case are municipal entities within the state of New Jersey. Therefore, this claim is dismissed.

7.      "Right to Disclosure"

To the extent Plaintiff alleges he was denied discovery in any of the prior state court actions, the Rooker-Feldman doctrine prevents the Court from revisiting the state courts' decisions. Plaintiff has not articulated any facts entitling him to relief under federal law for Defendants' failure to disclose any particular information.

8.      Section 1981

To state a claim under 42 U.S.C. § 1981, a plaintiff must demonstrate that: (1) he is a member of a racial minority; (2) the defendant intended to discriminate against him on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in § 1981, including the right to make and enforce contracts. Leuallen v. Paulsboro, No. CIV. 990–4353(JBS), 2001 WL 1700432, at *4 (D.N.J. Dec. 5, 2001). Plaintiff does not allege that he is a member of a racial minority or make any allegations regarding Defendants' discrimination against him based on race. Therefore, this claim is dismissed.

9.      Section 1985

Section 1985 provides a cause of action for "one injured by a conspiracy formed 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal

22

protection of the laws, or of the equal privileges and immunities under the laws.'" Farber v. City of Patterson, 440 F.3d 131, 134 (3d Cir. 2006) (quoting 42 U.S.C. § 1985(3)).  To state a claim under § 1985, a plaintiff must allege facts that plausibly suggest "some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action[.]"  See id. (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)) (internal quotation marks omitted).

Here, Plaintiff alleges no facts suggesting a racial or otherwise class-based discriminatory animus by any Defendant.  Therefore, this claim is dismissed.

The Court has searched the Complaint in an attempt to construe any other federal claim besides those enumerated by Plaintiff and is unable to do so.

### E.    State Law Claims

Because all claims arising under federal law have been dismissed, the Court declines to exercise supplemental jurisdiction over any state law claims.  28 U.S.C. § 1367(c)(3).

### F.    Default Judgment

As explained above, the Court lacks jurisdiction over Plaintiff's claims against Capazzi, and there are no apparent claims in the Complaint against Monahan.  Accordingly, the Court denies Plaintiff's motion for default judgment.[14]

### G.    Appeal of Judge Clark's Order

On November 17, 2016, in an effort to manage this case and construe Plaintiff's various submissions, Judge Clark issued a Letter Order.  (ECF Doc. 73).  In it, Judge Clark ruled (i) Plaintiff's filing at ECF No. 26 was not to be construed as a cross-motion for summary judgment or any other kind of motion because Plaintiff did not request leave to file such a motion—instead,

---

[14] For this reason, the Court also denies Plaintiff's application, via letter dated February 12, 2017 (ECF No. 79), to "expedite" the default judgment against these defendants.

23

it would be treated as Plaintiff's opposition to PRC's motion to dismiss; (ii) Plaintiff's filing at ECF No. 37 was not to be construed as a motion to amend or correct, or any other kind of motion, because it did not "address the basic factors for a motion to amend or provide a proposed amended complaint as required by the Local Rules[,]" and would be treated as Plaintiff's opposition to the other motions to dismiss pending at the time it was filed; and (iii) Plaintiff's filing at ECF No. 38 was not to be construed as a motion for summary judgment because Plaintiff did not request leave to file one, and to the extent it sought a scheduling conference or settlement conference, it was denied without prejudice. (Id.).

In a letter dated November 20, 2016 (ECF No. 74), Plaintiff objects to Judge Clark's Letter Order, and appears also to object to Judge Clark's June 16, 2016, Letter Order (ECF No. 43) staying discovery pending the outcome of the motions to dismiss. Having reviewed the submissions Judge Clark construed in the November 17 order, the Court agrees with Judge Clark that these submissions were best interpreted as oppositions to the motions to dismiss, and finds Judge Clark acted within his discretion in not treating these submissions as motions because they were filed without leave of the Court and not in conformity with local rules. Moreover, because Plaintiff will be granted leave to amend the Complaint, his objection to Judge Clark's decision not to treat ECF No. 37 as a motion to amend is now moot. Finally, to the extent Plaintiff challenges any other orders from Judge Clark, these challenges are untimely because they were not filed within 14 days of the order. Fed. R. Civ. P. 72(a).

As to all motions discussed herein, the Court has considered Plaintiff's submissions and arguments and finds them unpersuasive.

## V.     CONCLUSION

For the reasons above, all Defendants' motions are GRANTED, and Plaintiff's motion and

appeal are DENIED.   The Complaint is dismissed without prejudice.   However, mindful of Plaintiff's pro se status, the Court grants Plaintiff 30 days from the date of this Opinion to file an amended complaint to address the pleading deficiencies described herein, and 60 days from the date of this Opinion to effect proper service on Defendants Capazzi, Monahan, and PRC, to the extent the amended complaint asserts any claims against these Defendants.

An appropriate order accompanies this Opinion.


                                                     CLAIRE C. CECCHI, U.S.D.J.

Dated: February 21, 2017

25