Michael A. D'Antonio
Plaintiff Pro Se
P.O. Box 55
Allendale NJ 07401
201-962-5881 cell
570-664-6168 fax
mad.316@hotmail.com

                                          COURT
                                   NEW JERSEY
                                   RECEIVED

                                  2017 MAR -8  P 12 34

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MICHAEL A. D'ANTONIO                DOCKET NO.: 2:16-cv-00816-CCC- JBC

Plaintiff                                   CIVIL ACTION

    vs

Borough of Allendale et als         AMENDED COMPLAINT AS PER
                                    ORDER OF JUDGE CECCHI U.S.D.J.
                                    DATED FEBRUARY 21, 2017

**THIS MATTER** HAVING COME BEFORE THE COURT, AND THE COURT HAVING DISMISSED THE COMPLAINT WITHOUT PREJUDICE PLAINTIFF MICHAEL A. D'ANTONIO SUBMITS THIS AMENDED COMPLAINT IN ACCORDANCE WITH JUDGE CLAIRE C. CECCHI ORDER:

1. Plaintiff amends this complaint, but relies on all prior submissions including all Exhibits, Motions and Briefs as if set forth here again.

2. Plaintiff requests Reconsideration of the Courts decision of granting the Motion for Failure to State a Claim to not include Mr. Louis Capazzi and Mr. Thomas P. Monahan. Service was made with proofs of service submitted to the Clerk and Judge Clark recognized that neither attorney participated in the two Conference calls made in this action.

A.(1)(c)(5) *"No application will be heard unless the moving papers are a brief and proof or acknowledgment of service on all parties are filed with the clerk at least 24 days prior*

*to the noticed motion day which was June 6th 2016 A. (1) (c) (6) any affidavit supporting a motion must be served with the motion. No Affidavit was served or attached to the Motion.*

*B. Timing 1.a.i. in a responsive pleading every defense to claim for relief in any pleading must be asserted in the responsive pleading FRCP 12 (b)no such answer to complaint was made. Judge Clark waived 12(b) rule against Plaintiff and Public Benefit and diluted Plaintiffs rights to the Rule under present circumstances.*

*C. General requirements, 2.a.i. In order to with stand a motion to dismiss, filed under FRCP12(b)(6) in response to claims understood to raise high risk of abusive litigation, addressed by FRCP 9 (b) a Plaintiff must state factual allegations with greater particularity that that required by FRCP8 FED PROC sec:62470; Bell Atlantic Corp v Twombly, 550 U.S.544, 127 S.CT 1955, 167 L. ed 2d 929, 68 Fed R. ser.3d 661 (2007) ii. FRCP 12 9B)(6) motions are looked on with disfavor by the Court, and are granted sparingly and with care. FEDPROC sec. 62:464. Even if it is doubtful that the Plaintiff would ultimately prevail, if the Plaintiff colorably states facts which if proven would entitle him or her to relief, a motion to dismiss for failure to state a claim should* **NOT** *be granted FEDPROC sec 62: 464*

3.**Mr. Capazzi** and Mr. Monahan did not file a Motion to dismiss for Failure to State a Claim. A CLAIM for which relief may be granted upon Mr. Capazzi, is he represented Plaintiff on the Foreclosure action and the filing of the Bankruptcy and Development issues. As the Court's decision states the complaint is unclear. It was Mr. Capazzi who noticed that Mr. Epstein failed to get Leave of the Bankruptcy Court prior to filing for an UNDISCLOSED Notice of Sheriff's Sale by Mr. Epstein. Mr. Capazzi did not get the property released from the foreclosure action and the house was sold at the Sheriff's Sale. No notice was sent to Mr. Capazzi, this Plaintiff or M&G Holdings or Calm Development Inc. M&G was the entity that paid for the Mortgage on 316 East Allendale Ave. Mr. Capazzi stated that I have standing in Federal Court, as my personal money funded Calm Development and M&G Holdings. I had to assume all assets and liabilities as Calm was bankrupted and still be allowed to continue in Court. It was Mr. Capazzi

Page 2

who formed the D'Antonio Family Living Trust due to the damages caused by the
Borough of Allendale, PRC and the other Defendants. To not expose my children, I
retained all right, title, interest and liability up to the time of the demise and filing of
Bankruptcy for Calm. Mr. Capazzi became ill, stole $1.6 million from his clients, which
I was one of them and allowed Mr. Epstein to take advantage of this. Mr. Capazzi was
disbarred and incarcerated. Mr. Capazzi is not permitted under Supreme Court Rules to
have any CONTACT with any prior clients, wherefore Plaintiff was damaged by the fees,
misrepresentation and malpractice of Mr. Capazzi, I was not able to recover any files Mr.
Capazzi violated my 1st,4th, 5th, 7th , 8th & 14th Amendment Rights. A sum certain
which can be calculated against Mr. Capazzi is $4 million dollars.

4. Plaintiff was recommended to **Thomas P. Monahan** who was an Associate of Dennis
Maycher P.C. A claim which relief may be granted upon Mr. Monahan was that he
reviewed the facts and all related files, and stated that I had one of the most highly
documented cases he had ever seen for Money Laundering, Fraud, Criminal Rico, Over
appropriation of Tax Levies, Municipal Officials Theft, Mail and Wire Fraud. Violation
of Court Rules, Professional Conduct, Civil Rights, Conspiracy, Title 11, 18 USC, , 42
U.S.C.A. sec 1983 violations, Taking of property without compensation, CFO's
Manipulation of Borough accounting and Funds. Consumer Fraud on the Public,
Negligence after Notice of Claim, Violation of Federal and State Open Public Meeting
Laws, Breach of Fiduciary and Duty of Care to the Public Finances. Legal Malpractice,
Fraud in the Inducement and Concealment, violation of OPRA, violation of due process
rights and disclosure. Failure to properly report financial holdings in bank accounts Coah
violations, fraud in the general principles of equity and conspiracy in the inducement. Mr.
Monahan filed a complaint in 2008 on behalf of Plaintiff and Calm Development. Due to
Mr. Monahan's violation of my 1st 4th 5th 7th, 8th & 14th Amendment Rights the claim
is supported by the fact that he filed the complaint in Docket no. Ber-L 8660-10 but he
did not serve all the Defendants creating a two year delay, refusal to continue
representation on the file under a new retainer agreement and the claim by Mr. Monahan
for failure of this Plaintiff to support the payments to his firm. Mr. Monahan was a 40%
partner in the firm on this case. Due to Mr. Monahan's lack of attention/malpractice in

Page 3

not asking the assignment Judge first, as he had knowledge of the Order and then did not serve the Defendants the Complaint in time, causing a delay, because the Court dismissed the case for lack of Prosecution A sum certain which can be calculated against Mr. Monahan is $3 million dollars.

5.**The Borough of Allendale, Mr. Bole, Mr. David Pfund and Ms. Mary McDonnell** .
A claim which relief can be granted upon against these defense attorneys and the Borough of Allendale are invoking Court sanctions of having to request permission of the assignment Judge to view the new complaint to see if any part of any new complaint was ever tried before. Not giving requested discovery pursuant to the Rules of Civil Practice and bearing false witness and exhibits as a Defense. This is a violation of my 1st, 4th, 5th, 7th, 8th and 14th Amendment rights by Mr. Bole, Mr. Pfund and Ms. McDonnell and the Borough of Allendale. As the case was delayed and the ultimate decision of Judge Doyne was that the motion filed in opposition had no merit. Plaintiff was allowed to file the new Complaint. Monetary damages to me in the amount of carrying the mortgage and taxes for an additional two years, defending frivolous law suits, selective enforcement, specific ordinances made to deter the development of the 316 E. Allendale property, and Notice of the Levin property not being placed up for sale under the In Rem Tax Foreclosure Rules and Regulations.

These acts ultimately caused the loss of the property to the bank who stopped taking M & G's checks, stating that the Mortgage was a personal loan not a Commercial Loan and the bank made a predatory taking of the property in a foreclosure action with Mr. Epstein violating procedural requirements. This was all in concert with each other and gave enough time for the Borough of Allendale to have all employees and any one involved in all the criminal activity to leave the Borough as employees or members of the Political Party.

Ms. Susan Lamonica Chair Person of the Finance Committee was first to leave, how can a municipality which taxed the residents 100% cost to operate the town show and support a Debt Service of $19 million with $76 million in an investment account. The Chief of Police left directly after these issues became public.. In total about 12 personnel left the Borough. Mr. Monahan further violated Plaintiff rights by giving instructions of

Page 4

not settling the matter until all discovery was had. Judge Wilson, Mr. Monahan, Mr. Bole, Mr. Pfund, were at a meeting which I did not know about. Mr. Monahan contacted me, on immediate notice to come to the Court House to negotiate a settlement, all of the above mentioned parties could hear me as we were on speaker phone. When I questioned Mr. Monahan about his prior advice NOT to settle until all discovery were had, they all heard my objection and knew that I was waiting for the Ghironda report. This report was ordered and submitted to the Borough of Allendale in October of 2008 it was not until May of 2010 that we received it. The Borough Attorneys waited until discovery period was over before releasing it. This report revealed the double bookkeeping of the CFO Paula Favata and the double billing between her and Keith Cauwenberg the Chief of Outside Operations. The report listed numerous defective ways to correct all problems for instance Ms. Favata could not make the deposits and keep the bank balance, other personnel must segregate the individual job tasks. Mr. Monahan now effectively no longer abided by the attorney client privilege and betrayed my legal interests in violation of my 1st,4th, 5th, 7th, 8th & 14th Amendment Rights. As a result of his lack of representation, Judge Wilson denied me an adjournment to seek or retain new Counsel made me represent the corporation and myself and DID NOT MAKE A FULL RECORDING OF THE HEARING. Mr. Bole, Mr. Pfund, Ms McDonnell submitted false inaccurate facts and aided and abetted the Borough of Allendale in the commission of numerous crimes and the ultimate loss of my property in violation of my 1st, 4th, 5th, 7th, 8th & 14th Amendment Rights. A sum certain which can be calculated against the Borough and the attorneys is $12.5 million dollars plus 55 building lots shovel ready, for over appropriation of the real estate taxes, frivolous litigations to deplete my funds, lack of development approvals and COAH approvals, and failure to fix water infiltration from un-inspected development of Jack Levin property and Notice of Public Sale of the Levin Property in violation of the In Rem Tax Sale procedures, lastly classifying the Levin site as Wetlands in the Absence of the NJDEP requirement and Colluding with the Passaic River Coalition to hide the sale and stop the property from being attached under the Judgment issued by Judge Wilson against Jack Levin in Plaintiff's favor in the amount of $6 million. The Tort Claims Act 59:8-3 note 7 Discrimination *"Notice provisions of New*

Page 5

*Jersey's Tort Claims Act do not apply to claims under 42 U.S.C.A sec 1983 or the New Jersey law against discrimination" [N.J.S.A. 10:5-1 to 10:5-42] Fuchilla v Layman, 109 N.J. 319,537 A2d. 652 (1988) certiorari denied 109 S. Ct. 75, 488 U.S. 826, 102 L.Ed.2d 51*

6. **Mr. Mark Carter Esq.** A claim for which relief can be granted upon is the violation of my 1st, 4th, 5th, 7th and 14th Amendment Rights. Where by, being retained with no interest to bring conclusion to my issues, abandoned the filing of the Motion to reopen the Decision of Summary Judgment issued by Judge Wilson. Mr. Carter was the attorney who stated I had to file an Appeal and there is no other way to overcome Judge Wilson's ruling for Summary Judgment.. I paid Mr. Carter $7,500.00 for the Appeal which was lost due to the record that was available. (Judge Wilson did not make a complete record of the Summary Judgment hearing.) Mr. Carter took my money knowing full well that an incomplete record would be my demise. Mr. Carter requested a default Judgment against Jack Levin and his entities which was decided in my favor for an amount close to $6 million. Upon receiving it Mr. Carter acted unprofessionally and upon my stating to him "you do not know the effect of what you just accomplished" he stated "Oh I will get the Writ of Execution but Levin has No Assets",

when I said "how do you know that, he stated the he was in Court before Judge Wilson and heard a case about Jack Levin wherein he had no assets." I then produced the reconveyance agreement between Jack Levin and Mr. Albohm. Upon Mr. Carter reading it, he was interested enough to offer ME the opportunity for ME to prepare the motion and brief in support of the final outcome of the rest of Mr. Levin's Assets.

In addition to the property owned by Albohm but not fully paid for, left under a recorded instrument filed at the County, wherein Levin could take back the land to build. Mr. Levin held title to 21 acres that were previously approved by the Borough of Allendale's Planning Board for 34 houses. Mr. Carter refused to protect the attorney client privilege and further violated my rights by refusing to present the ultimate fact and finding of Judge Wilson's Proof hearing. In Order for Levin to be found guilty the Borough of Allendale is also guilty. The Storm water drainage system was left

Page 6

Case 2:16-cv-00816-CCC-JBC Document 84 Filed 03/08/17 Page 7 of 36 PageID: 1517

incomplete. As such, Allendale is guilty of issuing the Certificates of Occupancy and releasing Mr. Levin's Bond. By Law the Borough of Allendale and its Planning Board Attorney MUST have an engineer approve Mr. Levin's completed work, attached as evidence marked as Exhibit JM-19 ID 6-26-12 are the plans showing all the lots and the area of the detention basin between lots 16 and 17, the Court will see a dotted line which leads to a large rectangle of about 100 feet by 100 feet which was supposed to be installed by Levin as part of the engineering aspect of the development.

All this, relates to all this water runoff spilling on to my property. In 2008 Plaintiff made notice to the town, they refused to let me divert the water from coming into my property. Mr. Carter violated my rights by not going back to Judge Wilson and requesting that the Summary Judgment order granted to the town would be vacated. Judge Wilson found damages against Levin but Levin was made to leave it like that due to Stiles Thomas, who lived right next to my property. Mr. Carter violated my 1st, 4th 5th 7th 8th 14th Civil Rights. A sum certain which can be calculated against Mr. Carter $3million dollars.

7. **Mr. John Albohm** violated my 1st, 4th, 5th, 7th, 8th and 14th Amendment Rights as an attorney he is obligated to allow me my first amendment right to petition the government. He hired Mr. Hollarhan who denied discovery claiming that the issue was settled and the material was sensitive. Therefore Mr. Carter forbid me to proceed, actually started screaming and cursing at me. The short story is that Mr. Albohm paid off the two developers NOT to build and the amount of money and the source of the money is the sensitive issue. This does not preclude Mr. Albohm from acting within the Law. Notice was given for him to have first right of refusal to buy the remaining land and that I would no longer pursue the issue. I would have settled with Mr. Albohm for $2.5 million and he keeps the land. The land will produce 6 high end yield lots sustaining homes under $2 million. The agreement is still recorded and valid according to the deed of records in the County Court house. Mr. Albohm denied me the due process of collecting on the Judgment awarded to me by Judge Wilson. A sum certain which can be calculated against Mr. Albohm is $2.5 million dollars

8. **Stiles Thomas** violated my 1st,4th,5th,7th,8th,14th Amendment Rights. A claim for which relief can be granted upon is the fact that Mr. Thomas arranged for the taking of

Page 7

Plaintiff's property under coercion and false submission to the NJDEP regarding wetlands and the presence of an endangered species of Bird a Barred Owl. Ms. McDonnell mis-stated the truth and facts regarding Mr. Thomas' tenure and authority as Marsh Warden and his protected right to inform the DEP. When in fact his appointment as Marsh Warden is specific to only one location the Celery Farm. Wherefore an appointed Official of the Borough of Allendale discriminated the resource value and buildable value of my property and denied me economic gain Mr. Thomas denied the development by falsifying the environmental issues on my property, Mr. Thomas threatened and coerced Mr. Levin with a $10 million dollar environmental law suit to cease development on the property now owned by the Passaic River Coalition and the Borough of Allendale, enclosed is the letter dated August 20, 1986 from the Army Corps of Engineers, this letter clearly defines the wetlands and allows the remaining 34 lots to be developed. The second paragraph clearly states that the Wetland Identification and delineation Report dated May 15,1986 is in ERROR. With specificity, "the area in the vicinity of "D" Street and Powell Road given the new Information you have provided this office is adopting the 292 foot contour line" this exhibit marked at the top of the page as JM-27-ID 6-26-12 and marked at the bottom Bate Stamped DO4888 & DO4889. This letter was given by Mr. Bole to Mr. Pfund to defeat the presence of wetlands through out the entire tract of land, and the Plaintiff's land. Attached as exhibit JM-19-ID 6-26-12 is the approved Preliminary Plat for Jack Levin's land, page 2 shows the east corner of the project specifically between lots 16 & 17 is a dotted line which is the storm water drainage line which as the court follows will drain into a 100 foot x 100 foot dry well. Stiles Thomas made this agreement with Jack Levin that he did not have to construct that dry well and only be allowed to build 13 homes and never pay taxes but keep his land. After 25 years the town foreclosed illegally by an In Rem Tax Foreclosure where in the Town never advertised the property to the highest bidder and made notice to the adjoining neighbors, as to the property coming up for auction. The Borough and Stiles Thomas colluded with the Passaic River Coalition to identify all the land as wet lands, when in fact only the perimeter of this property has fringe or intermediate wetlands which allowed the natural surface water runoff to enter the Smokis Voll drainage ditch. As such Stiles Thomas and

Page 8

the Borough and David Bole allowed this storm water runoff to enter Plaintiff's land illegally for over 20 years. 2008 was when Plaintiff found this issue and reported to the Borough they denied me to fix it or deter the water runoff from entering my property See Russo Farms v Bd. of Educ., 280 N.J. Super 320 (App Div 1995) A sum certain which can be calculated against Mr. Thomas is $3 Million Dollars.

9. **Passaic River Coalition** was contacted by the Borough of Allendale to acquire the Property of Jack Levin prior to a determination by the Court of an In Rem Tax Foreclosure Judgment and to help negate a sale to the general public as required by Court Rules and Statutes. *A Claim for which relief can be granted upon the PRC is the deprivation of this parcel of land from being placed for public auction in accordance with the rules and regulations of the In Rem Tax Foreclosure Process and so it can satisfy the Judgment against Jack Levin obtained by this Plaintiff in Docket No Ber-L-8660-10. Further the collusion of the PRC with the Borough of Allendale and its Officials to determine that a 21 acre tract of buildable land is a designated wetland in the absence of an LOI Letter of Interpretation by the New Jersey Department of Environmental Protection., further committing Fraud by hiring a Independent Appraiser to submit a false inaccurate appraisal with incomplete supporting values and descriptions of the physical lands themselves. Further concealing the true original nature and block and lot designations and formations. The internal E-Mails suggesting joint tenancy with the Borough in violation of the County Grant Requirements and further the PRC violated its own Corporate Resolution and premise of operations of their Corporate Charter. To wit, the notice by this Plaintiff that the Borough of Allendale is illegally dumping contaminated water in the millions of gallons annually into and onto the lands that the PRC conclude are natural wetlands and necessary to support Passaic River Water Shed. This contaminated water makes its way through the Smokis Voll Drainage Ditch and then into the Saddle River a major tributary and regulated fresh water designated fish stream.* The Borough of Allendale knew of the pending litigation by this Plaintiff. Mr. Bole knew that Jack Levin would not defend the litigation, as the Borough of Allendale, Stiles Thomas and David Bole already consumed the major financial interests of Jack Levin's cash assets. The Borough got the PRC to

Page 9

have interest and as previously submitted, the property identity card and all information are inconsistent with actual facts. The PRC never placed this parcel of land in their Borough of Allendale Open Space & Recreation Master Plan attached as an Exhibit is the undated Master Plan. This document has no pagination. Figure 1 Aerial Photograph of Allendale Borough bottom right of map is a note "*this map was developed using 2002 NJ Department of Environmental Protection geographic information system digital data, but this secondary product has not been verified by the NJDEP and is NOT STATE AUTHORIZED under section.* This statement contradicts the Army Corp of engineering letter wherein the 292 contour was established as the outside perimeter of the wetlands all other areas are uplands and buildable as the attached Exhibit Preliminary Subdivision map Lot 19, block 701, lot 13 block 1902, lot 17&18 block 1906, clearly shows with specificity between lots 16 and 17 is the mandated water retention system WHICH WAS NEVER INSTALLED by the illegal agreement between Stiles Thomas and Jack Levin as a trade off for Mr. Levin not building the remaining 34 houses. In addition Mr. Levin was given a tax exemption which the town reneged on in the presence of my Writ of Execution knowing full well my ability as a builder and intention to collect on the judgment or keep the land and develop it.

In the Borough of Allendale Open Space Master Plan (Attached as an Exhibit) prepared and submitted by the PRC, see no pagination but the Passaic River Coalition name affixed to every page except the cover page. See Section 5, denotes each and every existing OPEN SPACE AND RECREATION RESOURCE identified by block and lot number. If this Court reviews the previous Exhibit the preliminary subdivision map denoted by block and lot numbers, the Court should recognize that this parcel was NOT LISTED IN SECTION 5 anywhere at all.

*3. GOALS AND POLICIES* NOTE: These goals and policies are derived from the Allendale Master Plan and draft Storm water management Plan along with suggested goals and policies as found in nearby municipalities Open Space Master Plans. Part 7 Protect and preserve water resources and watershed lands for purposes of drinking water supply, flood control and recreation. All the above is contrary to the actual facts and conditions as suffered by this Plaintiff the actual fact is that the previously submitted

Page 10

documents proves the PRC violated Plaintiffs 1st ,4th, 5th 7th 8th 10th & 14th Amendment Rights. The PRC has colluded with the Borough of Allendale to deceive the Public into believing that all 21 acres are protected wetlands a sign is in place on that part of the property that is owned by the Borough of Allendale. Allendale, after securing the funds $320,000.00 from the PRC, than subdivides the 9 acres and makes a building lot on the one most sensitive plots in the 9 acres. This lot is the lot that receives the instant water outfall from the open storm water drainage system and that flooded the Plaintiffs property. A sum certain which can be calculated against the PRC is the value of the land and the price that they paid for it and the value of the lost revenues of the 34 lots and profit on 34 homes. 34 lots shovel ready @ $250,000.00 each equals $8.5 million dollars, 34 homes @ $350,000.00 gross profit equals $11,900,000.00 for a total of $20,400,000.00.

**10. Mr. Richard Epstein Esq.** Mr. Epstein violated my 1st , 4th, 5th ,7th, 8th & 14th Amendment Rights. A claim for which relief can be granted upon him for:

1. By not allowing Judge Doyne to deny me an adjournment to get new Counsel.

2. By Not allowing me the protection of my 7th amendment right of a trial by jury

3. By not allowing Judge Doyne to hold a hearing with out the verbatim record being made.

4. By not allowing Judge Doyne to make me represent myself and the Corporation.

5. By not allowing Judge Doyne to let me get my file from the closed lawyers Office.

6. By not sending me notice or my attorney or Calm Development or M&G Holding of the Notice of Sheriffs Sale.

7. By falsifying his submission of a transcript to Judge Escalla wherein he submitted I had no lease, which was 9 years earlier than when I had a lease at the eviction period of time. See Transcript 05-11-2013 p 14-25 marked as exhibit "7"

8, By using Political Influence with Captain Edgars to evict me NO MATTER WHAT. which caused Captain Edgars to be terminated.

9. To make representation to the Sheriffs Office and receive a Writ of Eviction for both houses on the property yet only I was discriminated and the only one evicted.

10. By making incomplete application in his demand for moneys on behalf of his client

Page 11

at the Judgment of Foreclosure thereby claiming a false amount of funds and then under the Controversy Doctrine signed a Certification that the sum was the total accurate amount and then in Superior Court before Judge De La Cruz submits a Counter Claim for unjust uncollected sums of moneys which was denied by the same Judge months before and then sues again and was awarded $11,600.00, which is an inaccurate sum. Res Adjudicate and Collateral Estoppel apply.

11. By denying me some of my possessions, by allowing the Network trucking to stand down in the presence of the Realtor and the Bergen County Sheriff shutting down the eviction under duress and coercion of signing releases prior to the end of the eviction or be thrown off the property with out them at all.

12. By Stating false facts before Judge De La Cruz to obtain a wrongful Summary Judgment against this Plaintiff for loss of personal property, increased living expenses and damages in the total amount of $47,000.00.

13. By his failure to not send the required Notice of the Sheriffs Sale for foreclosure. Mr. Epstein as Counsel to Emigrant Mortgage and Retained Realty, the bank and holding company that had the Mortgage on the 316 E. Allendale property. Mr. Epstein became involved after the bank realized that Plaintiff was involved with litigation regarding the Borough of Allendale and its over appropriating tax policies. Due to the Bank declining a refinancing of the property and the start of the Law suit Mr. Epstein immediately took a deposition of this Plaintiff. Wherein Plaintiff admitted that no lease was in place during the year 2000. Plaintiff lived in the front house and Plaintiffs family lived with him and in the rear house . In 2007 The Borough of Allendale rewrote the ordinance involving Boarders, Plaintiff moved into rear House and rented the primary house to Boarders as they were only allowed to reside in the main house at any property. Judge Harris in 2005 states all parties on the property must have leases and declares that both houses are deemed one residence due to the physical connection of the utilities. Plaintiff writes leases in 2007. Plaintiff moved into rear house to comply with Borough Ordinance and rents front house to non-family Boarders. Plaintiffs son, President of the Company, writes an 8 year lease with rent increases to this Plaintiff.

Mr. Epstein applies and receives Scheduled dates for Sheriffs Sale, 6 of them,

Page 12

each time Mr. Capazzi Defeats them by Bankruptcy protection. Mr. Epstein files for a Sheriff's Sale scheduled for December 7th ,2013 but does NOT send Notice to Mr. Capazzi, Plaintiff, Calm Development Inc nor M& Holding all in violation of the Fair Foreclosure Act. Retained Realty by Mr. Epstein receives a Writ of Possession for both Houses front and rear. Mr. Epstein nor Retained Realty does not send notice of title change until March 2014. Plaintiff is served with the Writ of Possession and Eviction scheduled for May 14th 2014. Plaintiff speaks with Mark Carter who contacts Ms. De Somma, Judge Escalla's law Clerk. She states to the Judge the issues and the Judge States if the tenant has a lease and two months proof of paid rent show this to the Sheriff's Officers and they MUST stand down. The Sheriff arrives, Plaintiff shows the lease and bank statements and the Sheriff refuses to abide by the Anti Eviction Act. Sheriff's Officer Braney states "go to Judge Escalla if he cancels the Writ we will put all your possessions back." The Judge has a hearing, Mr. Epstein produces the deposition from 2000 stating I did not have a lease in 2000, but did not show the current lease. See Exhibit "8" Transcript 09-18-2015 see p 33, 14-18 p 34,10-14

Mr. Epstein is notified that the Mortgage was never paid by Calm Development but yet by M&G Holdings a company foreign to the contract with Emigrant Mortgage. Emigrant, after receiving 40 consecutive payments, stops accepting payments and states that the loan is a residential loan and the bank will no longer receive funds from any business entity. The mortgage was given to Calm Development and guaranteed by the Plaintiff. In the same deposition that Mr. Epstein used to evict Plaintiff, Plaintiff testified that he did not have a lease in 2000 but in 2009 tenant had a lease. Further, that PLAINTIFF approached the banks attorney by letter see attached letter June 6th, 2006 ( **previously marked Exhibit 1a**) stating that M&G would be making the payments, requesting that M&G be made a party to the contract. Attached as **(previously marked Exhibit 6a)** that section of law governing Novation , Novation of the Parties and Discharge of Contract by Operation of Law, Title 45 Chapter 15, Title 11 Chapter 5 Administrative Code.

Mr. Maycher, Plaintiff's Attorney dies in the middle of the Litigation and

Page 13

Foreclosure. Mr. Epstein requests a Judgment of Foreclosure before Judge Doyne:

1) Judge Doyne enters the Court with no Law Clerks or Secretary,

2) Announces that Plaintiff is allowed to represent himself and Calm Development Inc., in the absence of an Attorney.

3) Judge Doyne Denies a requested adjournment so Plaintiff could retain new Counsel.

4) Judge Doyne denies Plaintiff to get the files from the closed Law Office of Mr. Maycher.

5) Judge Doyne mandates that Plaintiff will represent the NJ Corporation.

6) Judge Doyne announces that he has no law clerks to operate the recorder.

7) Judge Doyne denied my 7th Amendment Right to a trial by jury

8) The above conduct of a Superior Court Judge constitutes a mistrial.

Judge De La Cruz denied relief under Docket Ber-L 4562-15 twice. First stating I did not include the body of Law and sections of Law, relative to the Novation, Novation of the Parties and Discharge of the Contract by Operation of the Law. Second for improper reasons as Plaintiff complied with all of her requests. See attached Orders.

Plaintiff did not know that a verbatim record must be made by Rule 1:2-2 however Mr. Epstein, a 27 year veteran attorney knew this, also he knew that only an Attorney could represent a NJ Corporation as the Judge made me do this. This constitutes a mis-trial and Plaintiff submitted same to Judge De La Cruz who denied the first Motion citing the failure of Plaintiff to submit proper section and statues governing these issues and that the case was 2 years old and she refused to grant a mis-trial. See attached Orders.

Plaintiff resubmits a new Motion under R. 4-50-1 submits the relevant rules and sections of law as submitted here again and denied that application with prejudice and reversed an equity decision that Calm took rent and security and that the Judgment was transferred to this **Plaintiff personally**. Even though the Judge denied this very same request in a prior action and denied same against Retained Realty submitted by Mr.

Page 14

Epstein, Mr. Epstein violates my 1st, 4th, 5th, 7th, 8th and 14th Amendments of my Civil Rights. He violated the Rules of Civil Practice and the Rules of Professional Conduct. He also is responsible for influencing Captain Edgars of the Bergen County Sheriff's Department who was immediately terminated for wrongful Conduct of scheduling a Sheriff's sale with out Notice to all parties.

Mr. Epstein in representing his client could have sold the house with out evicting me illegally, as the Writ of Possession was for both Houses and both tenants formerly named and as John and Jane Doe. Mr. Epstein did not have the front house tenants evicted. The Notice of Title was not known to me or the tenants until March of 2014, wherein, the front house tenant came to me, showed the Notice from the Bank and he stated he is not paying the March rent to me. He did not pay any rent to either Calm or the Bank. Mr. Epstein made representation to Judge De La Cruz that I took March rent and attached the security thereby falsifying the amount in writing to a Superior Court Judge for Judgment which was denied the first time and granted the second time, which is Fraud on the part of Mr. Epstein. Judge De La Cruz granted this Judgment but attached as Exhibits, Judge De La Cruz's Orders Oct. 4, 2016 (4) Orders and one rider Decision 3 pages, Denying Summary Judgment and Protective Order. On February 21, 2017 Judge De La Cruz violated my 1st, 4th, 5th, 7th, 8th and 14th Amendment Rights by making her Order Denying this Plaintiff Summary Judgment With Prejudice. I was denied to have the Judgment of Foreclosure declared a Mistrial in the presence of all the violations of former Judge Doyne.

Judge De La Cruz reversed a previous order on the issue of rent collected and security returned in violation of Collateral Estoppel and in further support Rule 4:7-1 Mandatory or Permissive Counterclaims [ *a pleading may state as a counter claim any claim against the opposing party whether or not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim] A Defendant, however, either failing to comply with R.4:30 ( entire controversy doctrine) or failing to set off a liquidated debt or demand or a debt or a demand capable of being ascertained by calculation, shall thereafter be precluded from bringing any action for such claim*

Page 15

*or for such a debt or demand which might have been so set off. Mr. Epstein did not Appeal from that decision and Judge de La Cruz denied that request in the prior motion due to this Plaintiff's recital of the above cite and rule.*

Judge De La Cruz further violates the Rules of Civil Practice in that she denied Summary Judgment filed by the 3 Defendants on a procedurally reason, due to the date of the trial being too close for the response by this Plaintiff, further allowing me to file Summary Judgment **WITH OUT BARRING IT DUE TO CONFLICT WITH THE TRIAL DATE.** My 7th Amendment right entitles me to a Trial by Jury.

**11. BERGEN COUNTY SHERIFF'S DEPARTMENT** A Claim(s) for relief which can be granted upon against The Bergen County Sheriff's Department are they violated Plaintiff's 1st, 2nd, 4th, 5th, 7th, 8th and 14th amendment rights :

1) Plaintiff was denied Notice of Sheriff's Sale by Captain Edgars who was influenced by Mr. Epstein. Violation of my first Amendment Right

2) Captain Edgars was immediately Terminated.

3) Plaintiff files Notice of Claim.

4) Mr. John Mc Cann counsel for the BCSD accepts service and delays discovery request of Captain Kolich and reasons for Captain Edgars Termination.

5) The Law Offices or Richard Malagiere are retained 6 months later.

6) The Writ of Possession is received by Plaintiff, Plaintiff confers with Mr. Carter, Mr. Carter speaks with Judge Escalla's law clerk who states if Plaintiff has lease and two months of rent receipts paid, the Sheriff has to stand down.

7) Plaintiff gets evicted after Mr. Epstein Mis-represents Plaintiff's lease to Judge Escalla, who declares lease a sham. Lease was in place since 2009. Plaintiff was evicted May 14, 2014. BCSD violates the Anti -Eviction Act.

8) Retained Realty hires Network trucking and The BCSD is in attendance during eviction, Plaintiffs possessions are missing.

9) Plaintiffs possession are damaged, both the Network Trucking and the Sheriff's Department STOP taking photos.

10) Sheriffs Officer Braney questions Plaintiff as to owning any guns, Plaintiff

Page 16

responds and I and all three Sheriff's Officers go upstairs, I am first, I go around the bed and open the night table drawer I take the gun out and Officer Braney immediately grabs the gun and pushes Plaintiff on to the bed, where the other two officers bodily restrain Plaintiff, forcefully until the chamber and the magazines were unloaded. Officer Braney keeps the Plaintiff's Beretta. Officer Braney unloads the gun, both magazines, takes out the bullets puts them in the boxes and keeps the gun for two days. This is a violation of Plaintiffs 2nd Amendment right. Outrageous Conduct.

11) Due to amount of Plaintiffs possessions, cause's a two day eviction. On the second day, the Sheriff at around 2:30 requests that I sign a release, I refuse stating the eviction is not over. The Realtor Patricia Egan curses and threatens me to sign the release or I will be thrown off the property with out my possessions. This is coercion and duress.

12) Plaintiff has a heart condition and gets elevated blood pressure, he is denied medical attention and was refused to go to the bathroom by the Sheriff's Department. This constitutes Outrageous Conduct.

13) The BCSD is not entitled to Quasi -Judicial Immunity because the BCSD failed to benefit from the immunity had they simply followed the Anti Eviction Act. Simply and with finality, what would have happened if the BCSD were to return to their office and simple state the named person on the writ has a lease and proved rent was paid. The Plaintiff's 14th Amendment rights are violated in that the BCSD leaves the front house tenants in possession, **EVEN THOUGH THE WRIT OF POSSESSION REQUIRES THAT EVICTION ALSO.** In the Alternative one must reason a lot of legal issues would not have been violated and the Bank would still have been abled to sell the property with two leases instead of just one, had this Plaintiff not been evicted and had its Protected Rights violated.

Section 59:1-2 of the New Jersey Tort Clams Act (TCA) provides in pertinent part,

"it is hereby declared to be the public Policy of this state that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein"

1. Statutory Claims

The notice provisions of the Tort Claims Act (TCA) does NOT apply to statutory claims, such as those brought under NJ Law Against Discrimination. Brennan v Norton, 350 F. 3d 399 (3d Cir. 2003) Fuchilla v Layman, 109 N.J. 319, 337, cert. denied, 488 U.S. 826 (1988) the notice provisions of the TCA do not apply to claims of discrimination under either 42 U.S.C. sec. 1983 or the NJ Law Against Discrimination. The BCSD discriminated this Plaintiff by selectively choosing to only evict me and not the other named parties on the Writ of Possession. Further discrimination was caused by not adhering to the Anti- Eviction Act under QUASI-JUDICIAL authority they can determine that in the presence of a lease and PAID receipts then no eviction can take place. That is the mandate, not to have to go back to a Judge and have Mr. Epstein falsify the lease, and no one questions/mentions the money paid for rent as proof of a lease. The BCSD further discriminated this Plaintiff by ending the eviction under duress and coercion of signing the release before all possessions were removed. Wherefore Plaintiff is damaged for Statutory Claims of discrimination.

## 2. Common Law Claims

In addition to statutory claims, Plaintiff has common law claims, such as, intentional tort claims for defamation, intentional interference with prospective economic advantage, intentional infliction of emotional distress and malicious prosecution, In Velez v City of Jersey City , 358 N.J. super. 224,239-240 ( App. Div. 2003) public employee accused of assault and battery are not entitled to the protection of the notice of claim provisions of the Tort Claim Act, certif, granted, 17 N.J. 224 (2003). Plaintiff clearly outlined and served the TCA and in amendment by E-Mail gave notice to the amount of damages and willingness to settle for $2.5 million dollars.

## 3. Immunity Under the Tort Claims Act

This protection is circumscribed, However, public employees may not act in complete disregard for the rights of others. There is a public employee immunity exception found in N.J.S.A. 59:3-14. Subsection (a) states: "[ N]othing in this act shall exonerate a public employee from the liability if it is established that his/her conduct was outside the scope of his employment, or constituted a crime, actual fraud, actual malice or willful

misconduct." See Burke v Deiner supra at 472-473.

4. Permancy Requirement

The TCA restricts the right for pain and suffering damages except in cases of "permanent loss of a bodily function" N.J.S.A. 59:9-2(d).where Aggravating circumstances exist, the plaintiff's symptoms can be found to be permanent" even without residual physical injury", see Collins v Union County, 150 N.J. 407 (1997). Plaintiff has recurring nightmares, flashbacks, difficulty in sleeping, a sever loss of self esteem and the inability to trust and interact with others. Medication does not relieve these situations. Plaintiff is willing to see a doctor of Defendants choice to be examined if so ordered by this reviewing Judge.

5. Circumstances Under Which Public Employees Are Not Exonerated

A. Outrageous conduct N.J.S.A. 59:3-14 provides that;

1. Nothing in this act shall exonerated a public employee from the liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct.

Mr. Seaman submits that his clients acted under color of office by carrying out the signed writ of eviction and the Order of Judge Escalla to evict Plaintiff. Does the willful misconduct of the Officers rise to actual malice when the Writ of Possession clearly defined both Tenants were to be evicted, and only this Plaintiff was evicted? Does the conduct of the BCSD officers rise to the level of actual fraud when they request a release to be signed before the actual end of the eviction? Does the actions of the BCSD officers rise to a level of Willful Misconduct when the Plaintiff is assaulted, knocked down on the bed and restrained by two other Officers of the Sheriff's Department when Plaintiff was in performance of satisfying the Officers request to retrieve Plaintiff's gun? Is it a crime to deny the Plaintiff all of his possessions during the eviction? Is it a violation of the 2nd Amendment for the Officer to keep Plaintiff's gun unload the gun and two clips take the gun away from plaintiff and take it with him and then return the same two days later.

2. Nothing in this act shall exonerate a public employee from the full measure of recovery

Page 19

applicable to a person in the private sector if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct. In the performance of the BCSD duties they are here to serve legal documents so that the person being evicted knows that they are performing a legal service, secondary they are there to keep the peace. When an officer invokes personal inquires of the evictees belongings this is outrageous conduct. When the BCSD asks or speaks as to values of the content of the Plaintiff's possessions this is outrageous conduct as it rises to a selective issue as to what possession may be deemed valuable and are kept so that others may benefit from the value taken from the Plaintiff. It is highly likely and possible that Officer Braney could have stopped at his house in Waldwick before returning to Hackensack and take Plaintiffs missing possession out of his car. This act is the Determining factor as to what stays and what is loaded upon the trucks, by stopping the eviction due to the signed release that states the possession are abandoned before the end of the eviction is a fraud, actual malice, willful misconduct and a crime of outrageous conduct.

3. The 1972 Task Force Comment on this statute explained how limited a public employees defenses under the TCA truly are. It is the intent of this provision that public employee guilty of Outrageous Conduct cannot avail himself of the limitations as to liability and damages contained in this act.

4. This 1972 Task Force Commentary contained in N.J.S.A. 593-14 represents a clear and unambiguous  expression of legislative intent that a public employee should be deprived of any benefits such as TCA limitation on liability and damages for their "Outrageous Conduct".

5. Courts have found such "outrageous" conduct, thereby removing the TCA defenses from public employees, in a multitude of circumstance, including claims for :

    1. assault and battery,  Velez supra

2. Malicious prosecution, James v Price, 602 F. Supp. 843 (D.N.J. 1985)

3. False Arrest Dela Cruz v Borough of Hillside, 365 N.J. Super, 127 (App. Div. 2004).

4. Torts based on reckless conduct, Jobes v Evangelista , 2004 WL 1170507 ( App. Div 2004). In Velez, the Appellate Division relied upon both the statutory language of N.J.S.A. 59:3-14 and the legislative intent as set forth in the 1972 Task Force Comment, and rejected the defendants argument that the Plaintiffs claims should be dismissed because the Plaintiff did not comply with the notice provisions set forth in N.J.S.A. 59:8-3. The Appellate Division in Velez determined that the legislative intent of the TCA is to preclude those guilty of Outrageous Conduct from availing themselves of TCA defenses that would permit them to act with impunity.

6. The questions of whether Defendants actions constituted "outrageous conduct is a **question for the jury",** see Marley v Borough of Palmyra 193 N.J. Super 271,295 (App. Div 200) (holding that the issue of whether the public employee defendants conduct was outside the scope of the employment, thereby depriving the defendants of any TCA benefits or immunities, is a question to be submitted to the jury,)

7. Willful Misconduct N.J.S.A. 59:3-14 provides:

a. Nothing in this act shall exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct.

b. Nothing in this act shall exonerate a public employee from the full measure of recovery applicable to a person in the private sector if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct.

c. "Willful misconduct" has been defined as falling somewhere between simple negligence and the intentional infliction of harm, Alston v City of Camden. 168 N.J. 170, 185 (2001). for example, the Supreme Court of New Jersey in Fielder v Stonack, 141 N.J. 101, 123-127 (1995), defined "willful misconduct" as a knowing failure to follow specific orders. ( The Sheriff's Orders were to get Possession of both houses as per the

Writ of Possession). In Fielder, the court stated that willful misconduct is ordinarily limited to a knowing violation of a specific command by a superior or a standing order..." Id. at 125 ( Emphasis added). Captain Edgars was terminated !

8. Reckless Conduct

"reckless conduct" also deprives Defendants of any protections under the TCA, specifically its verbal threshold. In Dunlea v Township of Belleville 349 N.J. Super, 506,512,513 (App. Div.) 2002) the Court held that, in order to defeat a claim of good faith immunity, it is sufficient that the Plaintiff shows the defendant acted recklessly. (Emphasis added). In addition, in Alston v City of Camden 168 N.J. 185 (2001), the Supreme Court of New Jersey articulated that "willful Misconduct is the equivalent of reckless disregard for safety, which is more than an absence of good faith." (Emphasis added).

According to Prosser & Keeton on the Law of Torts, "reckless conduct" is defined as follows:

[A]n actor acts recklessly when he or she intentionally commits an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences. Joseph Potente v County of Hudson, 378 N.J. Super. 40 (2005), cert. granted, 185 N.J. 297 (2005) prejudgment interest may be awarded in a New Jersey Law against discrimination suit against a public entity.

The Superior Court Trial Court Ber-L 4562-15 errs in its decision to bar Plaintiff under the TCA and cites N.J.S.A. sec 59:8-8 Plaintiff takes exception to the decision that Plaintiff claims are forever barred when in fact, b) states two years have lapsed since the accrual of the claim. The BCSD made its investigation by Mr. John McCann who accepted the Notice of Claim and no objection was placed by him on same. He processed the claim and retained counsel to continue.

For the above reasons Plaintiff is still allowed to file a claim against the BCSD. The issues presented above require a trial by jury.

Page 22

Page 15 of the Decision, the Court states, "After review of all the arguments and evidence
presented on Motion and in Oral argument, I conclude that the Plaintiffs Motion for
Summary Judgment is denied and that the 3 Cross Motions for Summary Judgment are
granted for the following reasons. Plaintiff has not shown that there is a genuine issue of
material Fact with regards to the alleged damaged property. Mr. D'Antonio's motion
seeks to go back in time and overturn the entire foreclosure from the beginning and seeks
to reset the past. This Court then says " This Court does not find that any of the record
evidence supports granting the relief the Plaintiff seeks.

Plaintiff submitted the following Issues of material Facts in dispute:

1. Judge Doyne did not have the recorder on.

2. Judge Doyne denied me an adjournment to get new Counsel due to the death of Mr.
Maycher .

3. Judge Doyne made me represent a NJ Corporation.

4. Judge Doyne denied me the time to get the files from the closed Lawyers Office.

5. Judge Doyne wrote an 8 page Opinion which validates that a Novation was mentioned
or was known to him, submitted with the appropriate Title and Chapters of Law.

6. Denied me the right to appeal due to no record was made and that the record could not
be reconstructed due to his resignation.

7. Judge Doyne denied me the right to a Trail by Jury.

8. Mr. Epstein did not show proof of notice to Plaintiff, Calm Development M&G
Holding or Mr. Capazzi for the Notice of Sheriff's Sale.

9. Mr. Epstein influenced Captain Edgars of the BCSD to hold a sale with out leave of
the Bankruptcy Court.

10. The BCSD did not give discovery as to why Captain Edgars was terminated.

11. Mr. Seaman submitted Plaintiff's Offer of Settlement to the County Council for a
decision to settle the claim and then said they did not make any response.

12. The Bergen County Council would not have reviewed the claim if the claim did not
have merit. For the Attorney to submit the offer, the claim had to have merit.

13. Mr. Epstein submitted a portion of a transcript representing that it related to current

Page 23

issues and relevant to the eviction  when in fact that portion of the transcript related to issues 9 years old. He then filed that portion of the transcript to Judge Escalla as if it related to current issues so Judge Escalla would deny my application to vacate the Writ of Possession.

14. Mr. Epstein misrepresented facts to a Superior Court Judge as to rent and security being held by Calm Development when in fact the rent in question or part of it was not paid by the tenant. The security was applied to damages as committed by the tenant during the tenancy agreement.

15. Damages for the missing and damaged property are supported by Network Trucking's submission as to abiding by the BCSD closing the eviction down when all Plaintiff's possessions were not loaded on the trucks or from the garage and sheds. The BCSD Officer who parked on the lawn right next to the front door of the house could have taken the trains, due to Officer Braney's questions as to the value of the boxes marked trains.

16. The Cross Claim submitted by Retained Realty for relief as to damages caused by their sub-contractor and that Retained Realty was not responsible.

17. The argument about who owned the wood and who is allowed to claim damages for the wood being kept in the garage that was rented by the Plaintiff and not loaded on the trucks.

18. The releases were signed under coercion and under duress and Outrageous Conduct by the BCSD  to be signed by the Plaintiff before the eviction was over.

19. Plaintiff did send an E-mail to the BCSD attorney quantifying the amount of damages to satisfy subsection (f) of the TCA. The filed motion further amplifies the damages and this explains that Plaintiff could not ascertain a total sum of funds. Plaintiffs is still permitted to have damages awarded in light of these submissions in the Motion before Judge DeLa Cruz.

20. Retained Realty is liable for the damages to the personal property of the Plaintiff  as they made false representation to get the Writ approved, which brought the illegal moving company and the BCSD.

21. There are 2 releases, one prepared by the Foreman of Network Trucking which clearly has an asterisk and the writing that states some damages. This serves as notice and

Page 24

allows for the damaged or missing property of the Plaintiff.

22. The second release was signed in good faith before all of the Plaintiff's Possessions were removed and loaded in the truck, hence new issues as to Outrageous Conduct of the BCSD and the Assault and Battery and detainment of the Plaintiff's gun are still unresolved by the Superior Court Judge DeLa Cruz wrongful decision of Summary Judgment denying plaintiff his constitutional right to a trial by a Jury.

23. The fact that the Trial Judge failed to state that the Defendants filed for Summary Judgment first is a material issue of fact. It is a partial and unfair decision to make this Plaintiff's believe my Summary Judgment can not be challenged and go to a trial. The fact that the defendants Summary Judgment motion was procedurally dismissed was that the Trial date was scheduled and this Plaintiff would not have time to answer. But Plaintiff's Summary Judgment was not procedurally dismissed due to a pending trial date and it was dismissed with prejudice.

I certify that the foregoing statements made by me are true. I am further aware that if any of the foregoing statements are willfully false I am Subject to punishment.

Dated:_____                    _____

                                         Michael A. D'Antonio

I certify that I caused an original of the foregoing statement to be filed by hand with the Clerk's office of the District Court 50 Walnut St. Newark NJ, with exhibits to be entered on the ECF system as notice to all parties.

I further certify that I delivered 3 Summons to be signed by the Clerk in connection with Judge Cecchi's order to effect proper service on Defendants Capazzi, Monahan and the PRC.

Dated:_____                    _____

                                         Michael A. D'Antonio

Page 25

## PROCEDURAL HISTORY

1. 1998 The Borough of Allendale (the town) by way of the Zoning Officer declares the property, 316 E. Allendale Ave ( the Property), non-conforming and denies building permits to build an addition and a sub-division. The Property at 316 E. Allendale Ave. Allendale, NJ 07401 had dual occupancy which existed since late 1950's in both houses. The Main House and a Carriage House.

*This AMENDED COMPLAINT is for violations of Municipal Land Use Laws, and a basis of violation of my First, Fourth, and Fifth, Seventh, Eight and Fourteenth Amendment Rights against the Borough of Allendale and it's Counsel David Bole, David Pfund and Mary McDonnell and Stiles Thomas for deliberate alterations of existing local codes and building ordinances which were custom drafted to deny this Plaintiff, the right to develop the property at 316 E. Allendale Avenue. Further, Plaintiff had to defend frivolous claims of these violations of local ordinances specifically collated and Binded with "D'Antonio Ordinances" by hiring Attorneys at great expense. Plaintiff, further amends this complaint against the Borough of Allendale and David Bole for suing me personally and attempting at all times violating the list as submitted in Mr. Monahan's paragraph 4 above. **Plaintiff D'Antonio by agreement transferred all legal matters from Calm to himself personally in 2014 before the Eviction. So that any parties would not sue my children. This Plaintiff is the sole financial backer of all business ventures and taught his sons by decisions. Plaintiff, letting them be active in these, seeing the continuance of the harassment and illegal acts of the neighbors and video surveillance in place at the two adjoining neighbors houses WITH OUT PLAINTIFFS KNOWLEDGE constitutes a violation of Plaintiff's Fourth Amendment Right.** This surveillance request produced a nearby neighboring town to allow it's fire official to act as Allendale's Expert witness. This official testified that Plaintiff's son threw a black bag of cement when it was actually used coffee cups into my truck, calling the bag, a bag of cement, thereby "loading the Truck" in violation of the town ordinances. Superior Court Judge Jonathan Harris entered a Judgment of $5,000.00 representing $4,000.00 in legal fees and $1,000.00 fine. This violates Plaintiff's 1st 4th,8th and 14th amendment.*

2. 2000 The Town denies a second sub-division after revision to the application.
*Plaintiff re-alleges the same violations as in the prior paragraph*

3. 2002 The Town denies a third sub-division ( they created 5 new Zoning Laws to prevent this property from being Developed), one denial is valued at $2.6 million in Gross Revenue. 5 Houses could have been built.

*Plaintiff alleges the same violations in the prior paragraphs*

4. 2002 The Borough of Allendale, Stiles Thomas and David Bole Esq. literally doubled the Real Estate taxes from $7,200.00 to $14,400.00 presently they are $25,000.00+on the 316 E. Allendale Property. Title 54 N.J.S.A. clearly states that a Taxing entity can only levy taxes for the COST TO OPERATE THE ENTITY AFTER AN APPROVED BUDGET IS IN PLACE plus 2% SURPLUS. The underlying reason for this is that Plaintiff refused to pay $50,000.00 per house built to the former Mayor of Allendale. Plaintiff seeks damages against the Borough of Allendale, Stiles Thomas and David Bole Esq. jointly and equally in this tax issue. Mr. Thomas is the oldest living person in Allendale he taught the town how to over appropriate the budget. David Bole sat at the Council Table for over 30 years and signed his name to each budget report. The Exhibits speak for them selves especially the Bank of America Bank Statement, showing the ending balance of $76,000,000.00, which was transferred and this Plaintiff was denied the closing statement of the old investment account and the opening balance in the new account.

a. Plaintiff alleges violation of 1st, 5th, 8th and 14 th Amendments, as to the eight Amendment Plaintiff takes overcharging taxes, continual lawsuits, policing efforts, continual summons, ordinances in my name being made under fraudulent intentions, as unusual punishment.

b. Municipal Officials Theft: Significant discrepancies are apparent in the payroll roster payroll ledger and the individual checks that are presented by Mr. Pfund before Judge Wilson, wherein Mr. Pfund states the checks are there. However, a check consists of two parts a front and a back Mr. Pfund stating that the checks are there violates the due process of the first amendment and all rules and regulations and rules of professional

Page 27

conduct associated with the "right to petition the government in the presence of a Grievance. The checks submitted have about 300 of the fronts and backs but 2600 checks only have the fronts. This Plaintiff relied upon filing of this complaint, the significance of Rule 26 Discovery, wherein all Defendants failed to comply with this rule. Plaintiffs is damaged in accessing the total measure of damages as the Magistrate Judge Clark denied any Rule 26 discovery which must be considered a dilution of the facts. There by negating my rights to complete discovery under the Federal Rules of Court.

c. Ms. McDonnell made false representation to Judge Wilson in Docket No. Ber-L- 8660-10, whereby Mr. Stiles Thomas a Defendant made misrepresentations as to the presence of endangered species of wild life present on his property which is adjacent to Plaintiffs property. Ms,. McDonnell made a representation to have Mr. Thomas dismissed as he was acting under Color of Office and received same by dismissal, however upon reading the Ordinance adopting Mr. Thomas as "Marsh Warden" the ordinance gave succinct specific, inclusive responsibility to only one property, and that was the Celery Farm he could only make inspections and report on wildlife in the celery farm. As such his report to the NJDEP of the Barred OWL was fraudulent and caused Plaintiff to suffer the loss of development and or delay of development as the property was classified as exceptional resource value. Mr. Thomas violated my 1st , 4th, 5th, and 8th amendments. Ms. McDonnell violated my 1st, 4th,5th 7th 8th and 14th amendments.

5. CFO's Paula Favata manipulation of Borough Accounting, Mail Fraud Wire Fraud, Consumer Fraud, Negligence after Notice of Claim Fraud in the Concealment, Fraud in the general Principles of Equity, Failure to Properly report Banking Balances, Cash Reconciliation Forms, Annual Debt Service, Fraudulent Debt Service of Water Utility Funds, and Depositing more funds in the water utility than the utility receives in income. This is commingling and scheduling of funds and is a violation of the Internal Revenue Service, a violation of Municipal Statute governing financial accounting practices. The Ghironda and Ferraiolli and the Kommendant reports indicate dual accounting methods manual and computer, double billing of fees and services. Sending wire transfers over

Page 28

state lines to access and receive funding interest in MBIA Accounting. falsifying the existence of the MBIA bank account and stating it is a coding to deceive this Plaintiff from further discovering the true amount in the funds as previously submitted.

6. 2005 Town authorizes police Chief Robert Herndon by way of Borough Attorney to have video surveillance of the D'Antonio Family and the property from both neighbors houses. The town creates 19-20 ordinances, prosecutes the D'Antonio family members, issued summons for a tire on a truck touching the lawn, parking trucks in the rear yard while working in the rear yard. Sending a 6 man detail to "inform" plaintiff he is being watched. Then puts the ordinances in a three ring binder and puts D'Antonio Ordinances on the label of THE BINDER, numerous zoning and use violation issues were alleged after 20 years of the same occupancy by other families living at this location. Police and other Officials come to property 65 times try to stop me from cutting trees, and putting in second driveway, and use and other issues. These tree ordinances were designed to deter this Applicant from clearing the land as to the danger the trees posed to the structures, people and the vehicles parked on the property the house the truck and the driveway were damaged by falling trees and limbs within 3 weeks of occupancy.

7. Plaintiff's primary business income was derived in the purchase, remodel and resale of single and multiple family homes and also sub-dividing the extra land if so available and building new homes. Plaintiff could not lift the houses and bring them off site to remodel them, so in essence did operate a business in a residential zone and was assessed a $5,000.00 fine. Sustained legal costs upward of $200,000.00, due to frivolous litigation practices by the Town and its Attorney David Bole Esq. on all issues for approvals, engineering, defending law suits, violation of ordinances after uses were established. Finally proving that in that the utilities were connected in between the houses the same Judge that fined me $5,000.00 now put the issues to rest due to the utilities being connected the court deemed it one house.

8. 2005 The Town denied COAH approval for 30 units with 6 affordable units, actual net loss $10,000,000.00

9. 2007 The Town denied COAH again

10. 2008 after extensive research of the town's COAH compliance and Master Plan and regional contributions and open space available and Financial records, Plaintiff files law suit alleging tortuous interference of economic gain, Criminal Rico Statutes, theft of public funds, wire fraud, mail fraud and consumer fraud. Town hires Ghironda to perform proficency report which details the double billing of services and supplies, *__TWO SETS OF BOOKS ONE MANUAL AND ONE COMPUTER,__* and that the Water Department did not keep a General Ledger. Millions were taken out by Frank Swarth and the political party members. The Budget entries and expense entries did not match the records obtained under Access to Public records. Of particular interest is the Debt service cancelled checks did not match the recorded amounts as listed in the financial ledgers. The CFO was terminated under guise of early retirement all key Political Officials were advised to leave and disconnect them selves from the Borough Ms. Susan Lamonica the Chair of the Finance committee left first in the wake of the Ghironda Report.

11. Stiles Thomas an adjoining neighbor to the Plaintiffs property was a Self Proclaimed Marsh Warden. Allendale's geographic location was not far from the Saddle River. Mr. Thomas and the Town diverted a tributary of the Saddle River to create an 18 acre lake so that the affordable housing fair share would be negated by the presence of wetlands. Mr. Thomas' father was a politician who also got caught ciphering funds from the Borough to landscape the family estate in Town. Mr. Stiles Thomas also sent a fraudulent photo of a barred owl, allowing DEP to assess exceptional resource value of endangered species habitat on the Plaintiff's property. This also stopped Jack Levin a Developer from developing his additional 34 lots which were completely approved by the Allendale Planning Board and caused the infiltration of water runoff onto Plaintiff's Property from the incomplete storm water drainage system, which for 20 years drained into the Plaintiff's property causing a portion to be determined wet lands. Judge Wilson grants a $6 Million Dollar Default Judgment against Jack Levin but not the Borough of Allendale who approved and accepted the drainage system *__IN THE ABSENCE OF THE REQUIRED ENGINEERS SIGN OFF REPORT.__* During the Law Division Complaint BER-L- 8660 -08 Judge Wilson obstructed Justice and created a Mis-Trial by turning off

the recorder and allowed the 3 Attorneys to tamper with evidence and further obstruct justice. David Bole, David Pfund and Mary Mc Donnell were the attorney's who altered the records and deceived the Judge about the payroll checks some of the checks had front and back but 2600 backs of the checks were missing. David Bole hired a law Firm Pinck and Pinck to obtain a deed by In Rem Tax Foreclosure but all attorneys failed to proceed in accordance to the appropriate statutes and rules of Civil Practice they never advertised the property so it could be sold to the highest and best bidder.. The Town Sells a portion to the Passaic River Coalition under the guise of wetlands to recoup the $323,000.00 owed in back taxes and then keeps the rest of the land for themselves but tells everyone that the PRC owns it. They Never Got a Letter of Interpretation from the NJ DEPARTMENT ENVIRONMENTAL PROTECTION AGENCY This denied Plaintiff the Right to collect on an asset in Jack Levin's name. All attempts to settle with the Town were refused by the town's former attorney and the New One Raymond Wiss Esq. Westwood NJ, which continues to this time over the disputed sums of money in the investment account.

11. 2007 Plaintiff takes notice of financial records with particularity the Annual Budget reports. These reports are the SOLE communication between the town and the residents. Any and all representations made, must be within Municipal Government Accounting Regulations, which they are not. The amounts listed as Cash and Investments were fraudulent in that the investment account had $76 million in deposits listed on the check statements for the General ledger alone. This creates fraud as to the amount of surplus listed and would prove the non-necessity of raising taxes under fraudulent practices. One incident ii the tax appropriation of $500,000.00 for an Addition to the Fire Department which remained active for 5 years and resulted in its removal prompted by this Plaintiff bringing it to the attention of Mayor Barra. However after 5 years the total appropriation was $2.5 million which still remains in the Boroughs control and the residents not receiving a new addition to the Fire Department Garage.

12. 2007 with a budget appropriation of only $37 million Plaintiff added up all bank statement deposits and revealed a total of $76 million in deposits and reviewed all other

ledgers, bank balances, and discovers a secret investment account never revealed to the Public or posted on the Budget Report. Plaintiff finally analyzed the payroll roster vs the register vs the deposits slips for the payroll account and this is how they got the money out. Discovery is incomplete as to the backs of ALL the payroll checks requested from all 3 Attorneys representing the Town. It was Mr. Pfund who stated the backs of the checks were submitted, he just didn't say all of the backs of all the checks were submitted.

13. The Town executed a In Rem Foreclosure against the Levin Property, took surplus denying Plaintiff to execute its judgment given by Judge Wilson after the summary judgment hearing submitted by the Borough and their Counsel. Mr. Carter Esq. started and Mr. Capazzi Esq. ( now Disbarred) took $10,0000.00 to execute a writ but did not succeed as of yet, Mr. Capazzi became ill and was disbarred Mr. Carter A matrimony attorney took the case but did not represent the facts as requested by this Plaintiff.

14. 2011 Judge Wilson dismissed the defendant Stiles Thomas on fraudulent submissions of Counsel hired by the Insurance company Joint Insurance Fund.

15. 2012 Judge Wilson did not have the recorder on at all times neither did Judge Doyne. Judge Doyne heard testimony and was presented with sufficient evidence to sustain a Judgment in favor of this Plaintiff to obtain a finding of Novation of the Parties. Instead the Judge with 2 Law Clerks stated no one was available to TURN THE RECORDER ON. At that hearing is was short and the Judge DID NOT MENTION the Novation at that hearing, the purpose was to find a New Attorney as the Plaintiffs attorney passed away and Plaintiff had no files or records to defend the Motion for Judgment of Foreclosure which Mr. Epstein on behalf of Emigrant Savings Altered evidence and filing documents with notice to Plaintiff and or Plaintiff's Counsel to obtain a deed from the Sheriff's Department. Mr. Epstein manipulated an officer of the Sheriff's Department, a Captain Edgars to give explicit orders that under NO circumstances was Plaintiff allowed to stay in possession of the leased premises, which was Ordered By Judge Jonathan Harris in 2002. All attempts to mitigate damages failed by this Plaintiff.

16. 2012 Wilson granted SJ in the absence of all discovery, no backs of the cancelled

Page 32

checks, no expert report by Ghironda was submitted until after discovery had ended. Judge Wilson denied me additional time to get a new Attorney when my attorney died so did Doyne.

17. 2013 Judge Wilson granted Default judgment of $6 mil but denied a subpoena to be answered for the closing balance in the investment account of the Town. He also stopped the subpoena from the Bank of America proving how much money actually was on deposit in the secret investment account of the town due to the appeal being processed

18. Louis Capazzi Esq. delayed the bankruptcy and foreclosure but the bank took advantage of his illness and did not send proper notices for Sheriff's Sale which is no longer pending. Decisions under Judge Troast. Judge Doyne and Judge Wilson have now claimed conflict of interest and will not touch any aspect of my files. Judge Doyne Resigned.

19. Plaintiff currently has a Civil Action pending in Superior Court Bergen County. Judge Estella De La Cruz is the Pre Trial Judge. She resides in the Borough of Allendale and Plaintiff requested her Recusal due to her residency and possible complaint of other Counsel objecting if she gives this Plaintiff a favorable decision.

This Pre-trial Judge denied a motion for default against two named defendants for not answering the complaint. She further denied a request to compel discovery of all the named parties, none of these named defendants answered the discovery requests.

This Plaintiff had a valid lease which Richard Epstein Esq. Obstructed Justice, Tampered with the transcript to make it appear to Judge Escalla that I had no lease when clearly I was in occupancy 4 years before the bank started to obtain a Writ Of Possession. I was evicted by the Sheriff's department even after I showed them my lease and cancelled checks for the rent to the Landlord. The Officer told me that under no circumstances were i to be left in possession under Orders of Captain Edgars who was terminated for his conduct in this matter.

Page 33

20. The plaintiff at all times acted with in the laws of this state. The named defendants did not. Plaintiff's expert Howard Commandant at the Proof hearing for the Default Judgment of Jack Levin entered a total loss of $46,000.000.00 it was determined that Jack Levin's Portion was $6,000,000.00.

The Attachments are or should be self explanatory as this matter holds over 20,000 pages of legal papers and exhibits this plaintiff has reduced the enclosures to what appears to be most relevant, if the Court needs clarification please do not hesitate to contact me at 201-962-5881 or mad.316@hotmail.com.

I certify that the foregoing statements made by me are true. I am further aware that if any of the foregoing statements made by me are willfully false I am subject to punishment.

Dated: 3-8-2017

Michael A. D'Antonio

1. Plaintiff cites but does not limit violations of 1st, 2nd,4th 5th,7th,8th and 14th Amendment rights
2. Plaintiff seeks Judgment for over appropriation of tax levies for 15 years
3. Municipal Officials Theft
4. CFO 's manipulation of Borough Accounting
5. Mail Fraud
6. Wire Fraud
7. Violation of Court Rules and Professional Conduct
8. Violation of Federal Civil Rights
9. Taking of property with out compensation
10. Conspiracy
11. Criminal Rico Violations
12. Title 11 USC Violation
13. Title 18 USC Violation
14. Consumer Fraud on the Public
15. Negligence after Notice of Claim
16. Violation of Federal and State Open Public Meeting Laws
17. Breach of Duty of Care and Fiduciary Duty
18. Legal Malpractice
19. Fraud in the Inducement
20. Fraud in the Concealment
21. Violation of OPRA
22. Violation of Due Process Rights and Right to Disclosure
23. Failure to Properly Report ( Banking)
24. NJ Fair Housing Laws and COAH Violations

25. Fraud in the General Principles of Equity
26 Conspiracy in the Inducement

It is based upon the foregoing that the Plaintiff brings this matter under Sec. 1983. It is
well settled law that Sec. 1983 " is not itself a source of substantive *RIGHTS*, but merely
provides a method for vindicating Federal *RIGHTS* elsewhere conferred."
Under Sec. 1983, a Plaintiff must first show that "the conduct complained of was
committed by a person(s) acting under color of state law."

Secondly, a plaintiff must show the defendants conduct deprived a person of *RIGHTS*,
privileges, or immunities secured by the Constitution of the United States. "To satisfy the
second element, Plaintiff must show that the Defendants' conduct was the cause in fact
off the alleged deprivation Rodriquez c Cirilo 115 F 3d 50, 1977. Defendants cannot
argue that the second prong is not satisfied here because their conduct did  violate
Plaintiffs' RIGHTS under Federal Law. Accordingly, this Court must individually
address whether Plaintiff is entitled to a Judgment because their conduct did affect
Plaintiffs' constitutional RIGHTS and enforcement requires certain protections of this
Court.

The Municipality must be liable since the violations alleged by the Plaintiff were the
result of its official policy. The Municipality and the individual employees, assigns and
or elected officers can only be held liable under Sec. 1983 for constitutional violations
only if they occur pursuant to an official policy or custom.
This fact is stipulated, Your Honor, a review of the enclosures herein will show this
Court with sufficient proof to verify the veracity of same.
The Actions of the Municipality was Official Business and the Defendants collectively
can't sustain a single fact to refute that fact. The illegal cover up and actions to avoid this
plaintiff were not pursuant to local law but were under the umbrella of authority.

Plaintiff brings this action in the District Court against the individual defendants and
against the Borough of Allendale on the grounds that the Plaintiffs Rights under 42
U.S.C. Sections 1981, 1983, and 1985 and the US Constitution were violated.

Page 35

Three distinct grounds for relief are asserted against the Borough of Allendale:

1) under the fourteenth amendment the City is liable on a respondent superior basis for the misconduct of its Officers;

2) under 42 U.S.C. sec. 1981 the Borough of Allendale is liable on a respondent basis for the misconduct of its Officers ;

3) The Borough is liable directly for its alleged negligence or wonton recklessness in failing to follow the Law as to Municipal funds train and supervise the two individual defendants and in permitting them to act as police officers not withstanding the Towns prior knowledge of their propensity to harass and mistreat any citizen. The first two grounds being Federal, Jurisdiction was asserted under 28 U.S.C. Sect. 1331 and 1343. The third is based on State Law and the Federal Court is asked to exercise derivative pendent jurisdiction.

Plaintiff did own the land and transferred the deed to his children due to medical reasons and they in turn formed a corporation. The allegations contained here in can be converted to non-corporate protection as the Defendants Borough of Allendale and David Bole pierced the corporate veil and sued D'Antonio and family not Calm Development. They named the Ordinances after D'Antonio not Calm. A Director or Financier of a NJ Corporation may convert assets and or liabilities to personal status as is needed. The diversity of Calm vs D'Antonio was for business designation to protect personal assets. As they are or were my assets I have the right to assert a claim in my name. Even though Calm may have been damaged the people who lived on the property and suffered from the violations listed in this complaint have the right to be awarded damages also. The Borough of Allendale put surveillance on private citizens i and my family.

I certify that the foregoing statements made by me are true. I am further aware that if any of the foregoing statements made by me are willfully false I am subject to punishment.

Dated: _3-8-2017_

Michael A. D'Antonio