# DONOHUE, GIRONDA & DORIA
## Certified Public Accountants

Matthew A. Donohue, CPA
Robert A. Gironda, CPA
Robert G. Doria, CPA (N.J. & N.Y.)

310 Broadway
Bayonne, NJ 07002
(201) 437-9000
Fax: (201) 437-1432
E-Mail: dgd@dgdcpas.com

Frederick J. Tomkins, CPA, RMA
Linda R Kish, CPA, RMA
Tammy L. Zucca, CPA

October 10, 2008

The Honorable Mayor and Members
of the Borough Council
Borough of Allendale
500 West Crescent Avenue
Allendale, NJ 07401

We have enclosed ten (10) copies of our performance audit of the financial operations of the Borough of Allendale.

We would like to thank you for this opportunity to serve the Borough. Do not hesitate to contact us if you have any further questions or concerns.

Very Truly Yours,
DONOHUE, GIRONDA & DORIA, CPA'S

Frederick J. Tomkins, RMA #327

EXHIBIT 1 B"

**BOROUGH OF ALLENDALE**

**PERFORMANCE AUDIT**

**AS OF SEPTEMBER 24, 2008**

## BOROUGH OF ALLENDALE
## PERFORMANCE AUDIT
### Index

| | Page Ref |
|---|---|
| Section I: Introduction | 2 |
| Section II: Objectives, Scope and Methodology | 2 - 3 |
| Section III: Results of Applied Methods in Brief | 3 - 4 |
| Section IV: Observations and Recommendations | 5 - 11 |
| Section V: Conclusion | 11 |
| Section VI: Summary of Recommendations | 12 |
| Exhibit 1: Matrix of Significant Job Tasks | 13 |
| Exhibit 1A: Matrix of Significant Job Tasks – Recommended Re-assignments | 14 |
| Exhibit 2: Internal Control Flowchart - Expenditures | 15 |
| Exhibit 3: Internal Control Flowchart - Revenues | 16 |

## SECTION I: Introduction

This Performance Audit was performed at the request of the Mayor and Borough Council of the Borough of Allendale. That request specifically identified a need for a consultant to review and analyze the financial operations of the Borough. The scope of the review includes all the financial related functions including Treasury, Tax Billings and Collections, and Water Utility Billings and Collections.

The Borough is currently experiencing a transition in its Chief Financial Officer position. Although satisfied with the retiring CFO's performance and her impeccable record of leadership and success, this is the impetus behind the Borough's request for this performance audit. The Mayor and Borough Council are using this transition as an opportunity to re-assess its financial operations and to assure the Borough's residents and taxpayers that due diligence is paid to the governance of the Borough's financial operations. In addition the performance audit will ease the transition of the incoming CFO, as her input was considered in determining the recommendations stated here-in.

We conducted this performance audit in accordance with generally accepted government auditing standards. Those standards require that we plan and perform the audit to obtain sufficient, appropriate evidence to provide a reasonable basis for our findings and conclusions based on our audit objectives. We believe that the evidence obtained provides a reasonable basis for our findings and conclusions based on our audit objectives.

## SECTION II: Objectives, Scope and Methodology

The objective of the performance audit is to identify any areas or functions that can be modified to improve the financial efficiency with which the Borough operates within the scope of the following processes:

- Financial Recording and Reporting
- Tax Billing and Collections
- Water Utility Billings and Collections
- Accounts Payable/Expenditure Cycles

More specifically, we applied a methodology that allowed us to outline the Borough's existing financial internal control structure, the duties, responsibilities and tasks of all financial personnel and the make-up of the existing financial system technology. Once understood, each area was scrutinized for either any inefficiencies or areas that can be improved.

The methodology utilized is as follows:

1. Interviewed all financial personnel.
2. Determined the daily activities and job tasks for all personnel interviewed and identified areas where the majority of time is focused.
3. Analyzed these tasks and determined whether:
   - Any redundancies in tasks exist that reduce efficiencies.
   - The assignment and distribution of tasks that might compromise internal controls.
   - Any personnel are underutilized
   - Any job tasks can be automated to reduce workloads.
4. Documented the controls and processes of the expenditure and revenue cycles.

2

5. Reviewed current status of information technology as it relates to the financial processes outlined above to determine whether:
   • Software programs are efficiently integrated within the Borough and utilized to capacity.
   • Upgrades would help to improve internal controls and/or reduce personnel workloads and output redundancy.
6. Reviewed the comments and recommendations section of the most recent report of audit and noted any comments relating to internal control or other significant issues.

While conducting the performance audit, we considered compliance regulations as established by various statutes of the State of New Jersey as well as the Mayor and Borough Council's desire to retain a high level of service to the taxpayers and residents of the Borough.

## SECTION III: Results of Applied Methods In Brief

Below are the results of each procedure of the applied methodology stated in the preceding section. This is not a complete list of recommendations, but is a listing of preliminary issues identified and data accumulated and used to develop and support the recommendations that follow in Section IV.

*Procedure 1: Interviewed all financial personnel.*

Between September 17, 2008 and September 24, 2008, the following personnel were interviewed extensively about their tasks, duties, responsibilities and concerns: Paula E. Favata, CFO* (exiting); Nancy Donnelly, Tax and Finance Clerk*; Alice Palmer, Bookkeeper*; Jennifer Sidoti, Water Utility Clerk; Alyssa Mayer, CFO (incoming); Keith Cauwenberghs, Director of Operations.**

Results of this procedure are spread amongst the remaining procedures. They are not detailed here.

*For each position so noted, CFO Paula E. Favata supplied us with an extensive "Position Description". These documents provided detailed breakdowns of what is expected of each title and were used as an aid when interviewing these individuals.

**For purposes of this performance audit, we were more concerned with Keith Cauwenberghs' Purchasing Agent Position, which is a duty within his Director of Operations title.

*Procedure 2: Determined the daily activities and job tasks for all personnel interviewed, including identifying areas where the majority of their time is focused.*

Refer to Exhibit 1 for the matrix of significant job tasks.

*Procedure 3: Analyzed these tasks and determined whether: (1) any redundancies in tasks occur that reduce efficiencies, (2) the assignment and distribution of tasks that might compromise internal controls, (3) any personnel are underutilized, (4) any job tasks can be automated to reduce workloads.*

The results are as follows:
   • Due to the size of the Borough, there is a lack of segregation of duties, some of which are unavoidable.
   • No Tax and Finance Office and Water Utility staff appear to be under-utilized.
   • Tasks do not appear to be duplicated across personnel, however some tasks do appear to be maintained both manually and through the financial reporting system.

3

- Bank reconciliations for Trust Accounts are prepared by the Bookkeeper who is also posting cash receipts and disbursements to the manual Trust Fund ledgers.
- Water Operating bank reconciliations are prepared by the Water Utility Clerk, who also prepares the requisitions and purchase orders for Water Operations.
- Although the CFO does currently review bank reconciliations and has active oversight over such matters, no evidence documenting such review is made and therefore this can not be considered a compensating control.

### Procedure 4: Documented the controls and processes of the expenditure and revenue cycles.

Refer to Exhibits 2 and 3 for the internal control flowchart of each cycle.

### Procedure 5: Reviewed current status of information technology as it relates to the financial processes outlined above to determine whether: (1) software programs are efficiently integrated within the Borough and utilized to capacity,(2) upgrades would help to improve internal controls and/or reduce personnel workloads and output redundancy.

The current status of the Borough's technology was assessed from a financial processing perspective. The following concerns were noted:
- No Water Utility Operating general ledger is maintained, manual or computerized. Water Utility Operations is automated only for billings and collections.
- Trust Funds are not on the Edmunds system. This includes the Developers' Escrow account, which consists of over 70 sub-accounts and approximately 350 transactions for the year to date which is maintained manually.
- Tax bill adjustments are performed manually. The current billing software, Manley, does not integrate with the tax collection software.
- Requisitions are prepared manually by each department and are submitted to the Finance office for input and purchase order preparation, therefore, each requisition is being completed twice. The Borough processes approximately 200 requisitions per month.
- MCS 32 is an older version of Edmunds Financial Software. The newer version, MCS J, is Windows based and provides users with additional reporting options not available under MCS 32. Some of these options, such as budget vs. actual comparison reports, are currently being prepared manually by Finance and Water personnel.

### Procedure 6: Reviewed the comments and recommendations section of the most recent report of audit and noted any comments relating to internal control or other significant issues.

A review of the audit for the year ended December 31, 2007 yielded no significant findings, audit issues or internal control issues. The Borough had one comment which has since been rectified.

The above noted items are further addressed in the Findings, Comments and Recommendations section.

4

## SECTION IV: Observations and Recommendations

### Observation 1:

Staff assigned to significant financial processing positions include:

- Paula E. Favata, CFO CTC (retiring)
- Alyssa Mayer CFO (incoming)
- Nancy Donnelly, Tax and Finance Clerk
- Alice Palmer, Bookkeeper
- Jennifer Sidoti, Water Utility Clerk
- Keith Cauwenberghs (role of Purchasing Agent analyzed within his title of Director of Operations)

Upon analyzing the job tasks and roles of each position above, it appears each are working to capacity, and there is no under-utilization of personnel. Refer to Exhibit 1 for the matrix of tasks performed. Further analysis of that matrix reveals few, if any, tasks are duplicated amongst titles.

However, there is a lack of segregation of duties, which is inherent in municipalities the size of the Borough. Segregation of duties is best described in this simple explanation provided by the University of Utah, Department of Internal Audit:

> "Segregation of duties is a basic, key internal control and one of the most difficult to achieve. It is used to ensure that errors or irregularities are prevented or detected on a timely basis by employees in the normal course of business. Segregation of duties provides two benefits: 1) a deliberate fraud is more difficult because it requires collusion of two or more persons, and 2) it is much more likely that innocent errors will be found. At the most basic level, it means that no single individual should have control over two or more phases of a transaction or operation. Management should assign responsibilities to ensure a crosscheck of duties."

Although this lack of segregation of duties can not be entirely eliminated without drastic overstaffing, and therefore a negative cost-benefit, there are certain actions available to alleviate some of the risks associated with the lack of segregation of duties. These include:

1. Re-assignment of duties between personnel.
2. Instituting compensating controls.

These actions are not mutually exclusive, and in fact both should be considered. Action 1, considering the capacity to which personnel is currently utilized, is the more involved of the two. In order to re-arrange job tasks, time must be freed up for individual personnel. There are two ways to do this: either hire additional part-time staff to handle ancillary tasks of current personnel or determine whether tasks currently performed can be streamlined through automation and/or the elimination of redundancy.

Although recommended during some interviews, we do not feel additional staff is necessary. In analyzing the time spent by finance personnel in various tasks and duties, we feel there is potential for considerable decreases in personnel work-load. Specifically, we identified the following areas where the use of technology can significantly decrease task completion time:

5

1. Trust Funds and Developers' Escrow:

   The Borough has approximately 13 separate Trust Fund Accounts which are all maintained manually by the Bookkeeper, Alice Palmer. Included in these trust funds is the Developers' Escrow Account. This account has over 70 sub-accounts and, through the date of this report, approximately 350 total transactions. All activity is currently maintained manually in both a general journal and a subsidiary ledger. In addition, a summary spreadsheet is produced that provides balances of each account as of specific dates.

   The inclusion of the Trust Funds in Edmunds, similar to how the Current, General Capital and Water Capital Funds are currently maintained, would eliminate the need for manual ledgers. The posting of receipts and disbursements would automatically generate account balances, trial balances and general ledgers.

   In addition, TD North, formerly Commerce Bank, and Bank of America (which the Borough regularly uses) both offer Escrow Accounting as investment options. Receipts, disbursements, interest and account balances for each line of escrow are tracked by the financial institution as separate sub-accounts. Currently the Borough uses the Bank of America version of this Escrow Accounting Option for tracking performance bonds deposited in excess of $5,000. The cost to include the additional "smaller" accounts would be minimal, if any, to the Borough.

   Ms. Palmer spends considerable time on the maintenance of Developers' Escrow. It is a tedious, time-consuming task which can be reduced by incorporating Trust Funds into the Edmunds financial reporting system and utilizing existing Bank Escrow account options.

2. Tax Billing Adjustments:

   During the course of any tax billing cycle, there are adjustments made by the Tax Assessor. The tax assessor is on-line in accordance with County Tax Board requirements. As bills are produced, the Borough's tax bill vendor electronically pulls data off the assessor's system and produces tax bills.

   However, there is no interface between the Edmunds tax collection system and the tax bill vendor, Manley. All adjustments and changes must be re-entered manually by Nancy Donnelly, which can take significant time. Conversely, data changes made by the tax assessor are not transferred electronically to the Tax Collector and must also be entered manually.

   The Borough should inquire of the current tax bill vendor whether they can electronically interface with the collections system to eliminate the need for manual billing and data adjustments. If not possible, the Borough should consider changing vendors that can interface. We contacted the vendor the Borough uses for tax collection software, and queried as to the annual costs of their tax billing services. The representative estimated an annual cost of approximately $550 for a Borough with approximately 2,100 line items, as is the case with the Borough of Allendale. Of course, the Borough is not limited to this vendor, the above estimate was included solely as a reference point.

3. Purchase Requisitions:

   After identifying a need for purchase of a good or service, Borough Department Heads complete paper requisition forms. These forms are then turned over to the Finance office, where Nancy Donnelly collates them, inputs the requisition into the Edmunds system and creates purchase orders.

The Borough is currently utilizing a process where requisitions are essentially entered twice: once by the requisitioning department head, and again by Finance Office staff who enters them for purchase order creation. Ms. Donnelly estimates she inputs requisitions at a rate of approximately 10 per hour. Additionally, Ms. Favata estimates there are roughly 200 requisitions entered per month. Total Finance office input time can therefore be estimated at approximately 20 hours monthly.

After the purchase orders are created, they are given to the Purchasing Agent, Mr. Cauwenberghs and CFO to review and sign.

The Borough should consider eliminating the "dual entry" process for requisitions by implementing a computerized Purchasing Requisition system. This system would provide for Department Heads to continue placing their own requisitions, but into a computer screen instead of a piece of paper. Department Head time obligations would remain the same. However, instead of being sent to Ms. Donnelly for processing, the requisitions will be in the system for the CFO and Purchasing Agent to view. From this screen, they can submit approvals, rejections or "holds" on each requisition. Certain Requisition systems allows for 3 levels of approval of each requisition.

Although the process will still include a manual collation of physical purchase orders with attached documentation at some point for delivery to the Mayor and Council, the second level of inputting can be eliminated entirely. In addition, requisitions can be approved and paid in a timelier manner.

4. Upgrade Existing Accounting Software:
   The Borough is currently running an older version of Edmunds Financial software referred to as MCS 32. An upgrade to the more recent version of this software, MCS J would allow the financial system to integrate with Windows. MCS J also provides more reporting options and is more user-friendly. The Finance Office currently provides the Mayor and Council and CFO with monthly reports for use as analytical tools. These reports are currently prepared manually on Excel Spreadsheets. MCSJ would allow several (probably not all) of these reports to be generated without the additional manual analysis, including General Capital and Water Capital improvement authorization reports and budget vs. actual comparisons for Water Operating and Current Fund. The latter assumes Water Operating will be put on the same Edmunds Financial system, see #5 below.

In addition, the enhanced reports that can be produced by MCS J will provide the Mayor and Council a greater oversight of the finances. This oversight should be highlighted as part of the internal control system, especially in an entity with segregation of duties issues.

We contacted Edmunds to get an approximation of the cost for the Borough to upgrade from its existing MCS 32 to MCS J. The representative placed the figure at approximately $5,500 for the Borough.

7

5. Integrate Water Operations into the Financial Processing System:
   Water Utility Operations are currently maintained manually by the Water Utility Clerk, Jennifer Sidoti, with the exception of the Billing and Collection program, "WinBill" by Data Architects. There is no Water Operating general ledger maintained in the Borough.

   The Borough should upgrade the financial reporting and accounting processes for the Water Operating Fund, similar to how the Current Fund is operating. This would allow for the creation of an automated general ledger and trial balance and the availability of different reporting options, such as budget vs. actual reports and a budget account status report.

   It should be noted that the billing and collections software should be integratable with the financial reporting package installed. As stated above, the current billing and collection program is "WinBill". Ms. Sidoti stated her preference to retaining this program. We did contact Data Architects, proprietor of WinBill, and asked whether their system can be integrated with Edmunds Financial Reporting. The following response was obtained:

   "Currently, we do not have an installation that uses Edmunds Accounting and we would need their cooperation (ie a file format that their accounting system can accept and process) in setting up this type of 'integrated' system"

Automating the above processes will reduce personnel workloads in the following areas:

- Trust Funds, including Developers' Escrow, will no longer require tedious manual entries.
- Tax billing and data adjustments will be automated. Duplicate manual entries to prove billings will be reduced or eliminated.
- Purchase requisitions will be entered directly by Department Heads, eliminating the need for Finance to be involved in input.
- Several manual monthly analysis reports will be generated directly by the accounting system, decreasing the need for the additional preparation of analyses.
- Water Operating will produce a general ledger that is integrated with the collection system.

The reduced workload allows for the minor re-apportioning of the following tasks, which will improve the segregation of duties within the Borough (Exhibits 1 and 1A):

- The Bookkeeper should reconcile the water operating account instead of the Water Utility Clerk, in addition to the remaining accounts she currently reconciles. This will remove it from the Water Utility Clerk, who also produces the Water Operating bills lists and purchase orders.
- The bills lists currently produced by the Bookkeeper for Trust Funds, General Capital and Water Capital, should be produced by the Tax and Finance Clerk. The individual reconciling the bank accounts should not be producing bills lists and purchase orders. Currently, the Bookkeeper performs every function in relation to the Trust Funds, including posting receipts and disbursements, producing bills lists and reconciling accounts, greatly compromising internal controls. Moving the bills list function to the Tax and Finance Clerk will alleviate some of the risks associated with that compromise. The elimination of requisition inputting from the Tax and Finance Clerk's position will create sufficient time for this task. The computerized requisition system will also reduce risks in regards to the Trust Funds as all payments will be done via electronic requisition and out of the bookkeepers hand from that point forward.

8

In addition to the improved segregation of duties, risk can further be reduced by mandating certain compensating controls. Although the exiting CFO has appeared to maintain stringent oversight without such requirements, the Borough should mandate the CFO:

- Review all bank reconciliations and document that review.
- Review all bills lists once completed and document that review.

Requiring documentation ensures all items will be reviewed. These controls, although they appear minor, are significant when segregation of duties is compromised to any extent by the inherent nature of the risk environment. They add another layer of review and supervision that can catch irregularities and mistakes and provide additional controls to reduces risks of defalcation.

## RECOMMENDATION 1:

Integrate all Trust Funds into the Borough's financial reporting and processing software. In addition, utilize the Bank of America or TD North, formerly Commerce Bank, Escrow Accounting options to track the activity and balances of each of the 70+ escrow accounts.

This will significantly reduce the time spent by the Bookkeeper in manually tracking Trust Funds, in particular Developers' Escrow.

## RECOMMENDATION 2:

Integrate the Borough's tax billing vendor with the Borough's tax collection system by either requiring the Borough's current billing vendor to do so, or consider utilizing a new vendor that can integrate.

This will eliminate the need for the majority of tax bill and data duplicate adjustments that are made by the Tax and Finance Clerk.

## RECOMMENDATION 3:

Implement a computerized purchase requisition system which will allow Department Heads or their assignees to directly input requisitions into the financial operating system.

This will require no additional work for Department Heads, but simply a change from manual completion of requisitions to electronic completion. This will eliminate the need for the Tax and Finance Clerk to input paper requisitions, which is a redundancy of efforts. If the Borough continues to issue 200 requisitions per month, up to 20 hours monthly of duplicate requisition entry can be eliminated

## RECOMMENDATION 4:

Upgrade the Borough's current Financial Reporting and Processing software from MCS 32 to MCS J. We suggest that this be done at the beginning of an accounting period and not in the middle of the year.

This will increase the system's usability and provide for the automation of several reports currently being maintained manually on Excel spreadsheets, such as improvement authorization status reports and budget vs. actual comparison reports.

9

### RECOMMENDATION 5:

Computerize the accounting and financial software of the Water Utility Operating Fund. Any software should be integrated with the billing and collection function. That may entail integrating the current "WinBill" system if possible, or obtaining a new billing and collection software vendor.

Currently, all accounting for the Water Utility Operating fund is done manually, as well as all budget vs. actual comparison reports. As a consequence, no general ledger is maintained.

### RECOMMENDATION 6:

Re-assign several minor tasks (Exhibits 1 and 1A) amongst Tax and Finance Office and Water Utility Office personnel. Specifically move the responsibility of the Water Operating bank reconciliations from the Water Utility Clerk to the Bookkeeper and the Trust, Capital and Water Capital bills lists from the Bookkeeper to the Tax and Finance Clerk.

This will improve the segregations of duties in the Water Utility by removing the reconciliation function from the staff that posts receipts and is heavily involved in the Utility's purchasing needs. Segregation of duties will also be improved within the Trust, Capital and Water Capital Funds by removing the bills list function from the individual involved in all facets of Trust (receipts and disbursements) and reconciliation of all mentioned bank accounts.

### RECOMMENDATION 7:

Mandate certain compensating controls, including physical sign-offs by the CFO on all bank reconciliations and bills lists.

The inherent nature of the Borough, due to its size, will never entirely eliminate risks associated with the lack of segregation of duties. Simple procedures instituted such as physical, observable review and approval documentation are significant additions to internal control.

### Observation 2

The matrix of significant job tasks in Exhibit 1 demonstrates there is little, if any, redundancy between positions and titles.    However, there is also little cross-training between Finance personnel. Previously, in the event of an extended absence by either the Bookkeeper or Tax and Finance Clerk, the CFO was able to fill in as needed since she had the ability to perform all the tasks of the other staff. The Borough has hired a new CFO, Alyssa Mayer, to replace the retiring Paula E. Favata.  We discussed with Ms. Mayer the potential for an acclimation period. There will be a period of time before she learns all the nuances of the Borough's payroll procedures. In addition, Ms. Mayer is not a Certified Tax Collector (CTC).  She will be taking the requisite courses to obtain the certification, however this is a process that will take some time.

Although such acclimation periods can be expected of any new hire, the Borough may be faced with some challenges in the unexpected event either the bookkeeper or tax and finance clerk were to be absent for any prolonged period of time.

### RECOMMENDATION 8:

The incoming CFO should focus foremost on learning some of the vital aspects of tasks such as payroll and tax collection as a priority in her new position.

She is the only employee who can fill in for any unexpected prolonged absence of either the Bookkeeper or the Tax and Finance Clerk and the performance of their essential tasks.

### SECTION V: CONCLUSION

As evidenced by the lack of findings in previous audit reports, the Borough of Allendale has reaped the benefits of excellent financial leadership from a strong and involved Chief Financial Officer. Any burdens or complications associated with any transition of CFO's should be lessened by the condition Ms. Favata has left the Borough's records in.

However, certain matters do arise, whether through the advent of technology, the changing of personnel or the re-assignment of positions and duties, which always leave room for efficiencies to be improved upon, particularly in financial reporting processes.

We feel the Borough should consider recommendations 1 through 8 as listed above (and summarized briefly in section VI of this report). Implementation of these recommendations will update the Borough technologically and will reduce the amount of time spent on several job tasks. In turn sufficient time will be created to allow for the reassignment of duties necessary to improve internal controls and reduce the need for additional personnel.

11

## SECTION VI: Summary of Recommendations

All recommendations below are detailed further in the sections preceding. This list is supplied for quick reference only. The details and processes behind the recommendations should be read and considered.

**RECOMMENDATION 1:** Integrate all Trust Funds into the Borough's financial reporting and processing software. In addition, utilize the Bank of America or TD North, formerly Commerce Bank, Escrow Accounting options to track the activity and balances of each of the 70+ escrow accounts.

**RECOMMENDATION 2:** Integrate the Borough's tax billing vendor with the Borough's tax collection system by either requiring the Borough's current billing vendor to do so, or consider utilizing a new vendor that can integrate.

**RECOMMENDATION 3:** Implement a computerized purchase requisition system which will allow Department Heads or their assignees to directly input requisitions into the financial operating system.

**RECOMMENDATION 4:** Upgrade the Borough's current Financial Reporting and Processing software from MCS 32 to MCS J.

**RECOMMENDATION 5:** Computerize the accounting and financial software of the Water Utility Operating Fund. Any software should be integrated with the billing and collection function. That may entail integrating the current "WinBill" system if possible, or obtaining a new billing and collection software vendor.

**RECOMMENDATION 6:** Re-assign several minor tasks (Exhibits 1 and 1A) amongst Tax and Finance Office and Water Utility Office personnel. Specifically move the responsibility of the Water Operating bank reconciliations from the Water Utility Clerk to the Bookkeeper and the Trust, Capital and Water Capital bills lists from the Bookkeeper to the Tax and Finance Clerk.

**RECOMMENDATION 7:** Mandate certain compensating controls, including physical sign-offs by the CFO on all bank reconciliations and bills lists.

**RECOMMENDATION 8:** The incoming CFO should focus foremost on learning some of the vital aspects of tasks such as payroll and tax collection as a priority in her new position.

12

Exhibit 1

## BOROUGH OF ALLENDALE
### Matrix of Job Tasks Performed

| Tax and Finance Clerk<br>Nancy Donnelly | Bookkeeper<br>Alice Palmer | Water Utility Clerk<br>Jennifer Sidoti |
|---|---|---|
| Tax billings. | Bank Reconciliations - All Funds but Water Operating. | Water billings. |
| Tax collections. | Bills Lists - Trust, Capital, Water Capital. | Water collections. |
| Tax reporting. | Verifies ADP Reports. | Water collections reporting. |
| Enters Requisitions. | Prepares payroll for ADP processing. | Bills List - Water Operating. |
| Delinquent Letters. | Trust Fund Ledgers. | Budget vs. Actual reports - Water Operating. |
| Bills List - Current Fund. | Developer Escrow Ledgers and Subsidiary Ledgers. | Bank Reconciliations - Water Operating. |
| Processes mail receipts. | Improvement Authorization Excel Reports | Prepares and proves cash and deposits. |
| Manual and Excel Cash deposit books. | Overtime Excel Reports. | Processes mail receipts. |
| Prepares and proves cash and deposits. Collation of Purchase Orders (W-9 & BRC compliance) | Recreation Payroll Reports. | |
| | Inputs adopted and temporary budgets. | |
| Tax searches. | Budget vs. Actual reports - Current Fund | |
| Sr. Citizen & Veteran deductions. | | |

Other positions assessed were that of the Purchasing Agent and CFO.
In regards to the elimination, modification and re-arrangement of job tasks, these positions had little in regards to the recommendations proposed, so those task lists were not included for analysis.

EXHIBIT 2

BOROUGH OF ALLENDALE
Internal Control Flowchart
Purchasing & Disbursement Cycle



EXHIBIT 3

**BOROUGH OF ALLENDALE**
**Internal Control Flowchart**
**Revenue Cycle**



OUTSIDE DEPARTMENTS

Department Head Collects Cash Receipts

Issues pre-numbered receipt.

Collates collections with or without deposit slip (depends on department).

Prepares pre-numbered cash transmittal sheet.

Remits cash and transmittal to finance office.

TAX COLLECTION/FINANCE

Tax Collection Office collects cash receipt.

Posts to taxpayer account, issues receipt.

Posts and proves department receipts per transmittal.

Proves all deposits posted, prepares remaining deposit slips.

Proves remittance from Water Utility.

ONLY CFO brings physical deposits to bank.

WATER UTILITY

Water Utility Office collects cash receipt.

Posts to water-rent payer account, issues receipt.

Proves receipts to collections.

**MICHAEL D'ANTONIO**
**316 EAST ALLENDALE AVENUE**
**ALLENDALE, N.J. 07401**
**(201) 760-1252 FAX (201) 760- 0757**

June 6, 2006 by regular mail

Emigrant Mortgage Company
7 Westchester Plaza
Elmsford NY 10523

Attention: Ms. Carolynn Toppo
Re: Mortgage & Note Modification

Dear Ms. Toppo:

At the closing in March I made notice to the bank that M&G Corporation would be making the payments on behalf of Calm Development, when you questioned why I explained that the cash assets were in this company and you stated that it would be all right.

I feel that the company should be entered on all the legal documents for standing and a position of equity in the loan agreement. You then stated that you would prepare a document so that this could be accomplished.

It is almost three months since the original documents have been signed and I have received nothing as you stated I would receive.

Please contact me at the above numbers or address to conclude this matter.

Thank you,

Michael D'Antonio

EXHIBIT 1a

is also a second meaning of the term *executed*
to contracts: an *executed* contract can be a
contract; a fully executed contract would be one
been signed by all parties.

## of Contracts

can be described as *valid, void, voidable*, or
*able*, depending on the circumstances. A **valid**
contains all essential elements (discussed later
chapter) and is binding on and enforceable by

contract is one that has no legal force or
it does not meet the essential elements of
One of the essential conditions for a contract
is that it be for a legal purpose; thus, a con-
commit a crime would be void. The term is, in
self-contradictory; in the eyes of the law, a void
is not a contract at all.

able contract is one that seems on the surface
but may be rescinded, or disaffirmed, by one
For example, a contract entered into with
usually is voidable; a minor generally is permit-
affirm a real estate contract within a reasonable
reaching legal age. A voidable contract is con-
by the courts to be a valid contract if the party
the option to disaffirm the agreement does not
within a prescribed period of time.

enforceable contract also seems on the sur-
valid; however, neither party can successfully
other to force performance. An unenforceable
is said to be "valid as between the parties,"
if both desire to go through with it, they can do
example, Jason may have been drunk when he
to buy Robert's property. Because Jason was not a
nt party when he signed, the contract is not
able. But there is nothing to stop them from com-
with its terms, if when Jason sobers up he still
to go through with the purchase and Robert still
to sell. The contract is "valid between the parties."

## Influence and Duress

signed by a person under duress (force) or
influence (being taken advantage of) are voidable
canceled) by such person or by a court. Extreme
should be taken when one or more of the parties to a
is elderly, sick, in great distress, or under the
nce of drugs or alcohol. To be valid, every contract
be signed as the free and voluntary act of each party.

## Performance of Contract

Occasionally a contract may call for a specific time at or
by which the agreed-on acts must be completely per-
formed. In addition, many contracts provide that **time is
of the essence.** This means that the contract must be
performed within the time limit specified, and any party
who has not performed on time is guilty of a breach of
contract. This powerful phrase is a two-edged sword, and
licensees should leave its use to attorneys.

When a contract does not specify a date for perfor-
mance, the acts it requires should be performed within a
reasonable time. In the most common situation, a real
estate sales contract stipulates a target date and place for
closing. If that date comes and goes without settlement,
the contract is still valid. Either party may later make
time of the essence; again, that action should be taken
only with a lawyer's advice.

## Assignment and Novation

Often, after a contract has been signed, one party may
want to withdraw without actually terminating the
agreement. This may be accomplished through either
assignment or novation.

**Assignment** refers to a transfer of rights and/or duties
under a contract. Unless a contract specifically forbids it,
rights may be assigned to a third party. Most contracts
include a clause that either permits or forbids assignment.

In the case of assignment, *the assignor maintains sec-
ondary liability* if the assignee breaches the contract. A
contract also may be modified by **novation,** or the substi-
tution of a new contract for an existing agreement. The
new agreement may be between the same parties or a
new party may be substituted for either (this is *novation
of the parties*).

In the case of novation, the old contract no longer
has any force.

## Discharge of Contract

A contract may be completely performed, with all terms
carried out, or it may be breached (broken) if one of the
parties defaults. In addition, there are various other
methods by which a contract may be discharged. These
include

- *partial performance* of the terms along with a written
  acceptance by the person for whom acts have not
  been done or to whom money has not been paid;
- *substantial performance*, in which one party has sub-
  stantially performed the contract but does not com-
  plete all the details exactly as the contract requires
  (such performance may be sufficient to force pay-

ment with certain adjustments for any damages suffered by the other party);

■ *impossibility of performance*, in which an act required by the contract cannot be legally accomplished;

■ *mutual agreement* of the parties to cancel; and

■ *operation of law*, as in the voiding of a contract by a minor, as a result of fraud, by expiration of the statute of limitations, or as a result of a contracts being altered without the written consent of all parties involved.

## Default—Breach of Contract

A **breach of contract** is a violation of any of the terms or conditions of a contract without legal excuse, as when a seller breaches a sales contract by not delivering title to the buyer under the conditions stated in the agreement.

If the seller defaults, the buyer has three alternatives:

1. The buyer may *rescind*, or *cancel*, the contract and recover the earnest money deposit.
2. The buyer may file a court suit, known as an action for **specific performance,** to force the seller to perform the contract (i.e., convey the property).
3. The buyer may sue the seller for *compensatory damages*.

If the buyer defaults, the seller may pursue one of four courses:

1. The seller may *declare the contract forfeited*. The right to forfeit may be provided for in the contract, and according to the terms of the contract, the seller may be entitled to retain the earnest money and all payments received from the buyer as *liquidated damages*.
2. The seller may *rescind* the contract; that is, he or she may cancel, or terminate, the contract as if it had never been made. This requires the seller to return all payments the buyer has made.
3. The seller may sue for *specific performance*. This may require the seller to offer, or tender, a valid deed to the buyer to show the seller's compliance with the contract terms.
4. The seller may sue for *compensatory damages*.

## Statute of Limitations

New Jersey allows a specific time limit of *six years* during which parties to a contract may bring legal suit to enforce their rights. Any party who does not take steps to enforce his or her rights within this statute of limitations may lose those rights. The six-year period applies to contracts, foreclosures, mortgages, and cases of fraud. Law-

suits to recover real property have a 10-year statute of limitations in New Jersey.

## ■ CONTRACTS USED IN TH ESTATE BUSINESS

The written agreements most commonly en brokers and salespersons are listing agre estate sales contracts, and leases.

### Preparation of Documents

New Jersey allows brokers (or their agents) residential leases and standard approved sa for one- to four-family residences and vacar To avoid the unauthorized practice of law, their salespersons) *may not* draft comm option agreements, or sales contracts on tra land, commercial property, or industrial pro

### New Jersey Requirements

All offers, contracts, or leases prepared by l indicate the business relationship the fi respect to parties named in the document plete text of the Commission Rule on Discl ness Relationships reproduced at the end of

Attached to a proposed contract of sa page must be a copy of the notice reproduc dix B, appropriately revised if the broker r buyer or is functioning as a dual agent or as broker.

New Jersey also requires that the follov appear in exactly this form at the top of the sales contract:

*THIS IS A LEGALLY BINDING ( THAT WILL BECOME FINAL WIT BUSINESS DAYS. DURING THIS P MAY CHOOSE TO CONSULT AN WHO CAN REVIEW AND/OR C/ CONTRACT. SEE SECTION ON REVIEW FOR DETAILS.*

The following section must appear contract:

*ATTORNEY REVIEW:*

1. **Study by Attorney.** The Buyer or choose to have an attorney study this attorney is consulted, the attorney mu or her review of the contract withi period. This contract will be legally bir of this three-day period unless an a

Owners Name: PASSIC RIVER COALITION
Street Address: 330 SPEEDWELL AVE
City & State: MORRISTOWN, NJ
Zip: 07960

Land Linez: 12.1093 AC

Copyright (c) 1992 MicroSystems-NJ.Com, LLC.

EXHIBIT "1"

(FAX)12014884407          P.015/018

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: CIVIL PART
BERGEN COUNTY
DOCKET NO: BER-L-8660-10
A.D. # _____

CALM DEVELOPMENT, INC., )
                        )
        Plaintiff,      )
                        )            TRANSCRIPT
        vs.             )                OF
                        )            PROOF HEARING
BOROUGH OF ALLENDALE,   )
et ials,                )
                        )
        Defendant.      )

Place: Bergen County Justice Ctr.
       10 Main Street
       Hackensack, NJ 07601-7699

Date: March 21, 2013

BEFORE:

    HONORABLE ROBERT C. WILSON, J.S.C.

TRANSCRIPT ORDERED BY:

    MICHAEL A. D'Antonio
    316 E. Allendale Ave.
    Allendale, NJ, 07401

APPEARANCES:

    MARK CARTER, ESQ.,
    Attorney for the Plaintiff


                    Transcriber: Patricia Wtulich
                    Phoenix Transcription, LLC
                    796 Macopin Rd.
                    West Milford, NJ  07480

                    Audio Recorded
                    Recording Opr: Unknown

EXHIBIT "2"    2 PAGES

tions of Jack Levin, PhJ.B. Levin, and J.S. Heather

rp. Allendale.

The Court is satisfied with the testimony to

ntify the damages and as such judgement will be

dered for $5,928,680. And that's the decision of

Court for reasons stated on the record.

And do you have a form of judgement, Mr.

ter?

MR. CARTER: I do, Your Honor. May I

each, Your Honor?

THE COURT: Yes.

(Pause in hearing)

THE COURT: That's on the top judgement, you

want one, right?

COURT CLERK: Yeah.

THE COURT: Okay.

MR. CARTER: Thank you very much, Your Honor.

(Proceeding Concluded)

FILED

MAR 21 2013

ROBERT C. WILSON
J.S.C.

FILE NO. 5633
MARK S. CARTER
79 MAIN STREET
HACKENSACK, NJ 07601
(201) 487-7666
(201) 488-4407 (FAX)
Attorney for Plaintiff

RECORDED AS A LIEN MAR 27 2013

|  | SUPERIOR COURT OF NEW JERSEY |
| --- | --- |
| CALM DEVELOPMENT, INC. | : LAW DIVISION-BERGEN COUNTY |
|  | : DOCKET NO. BER-L-8660-10 |
|  | : |
|  | : |
| Plaintiff | : |
|  | : |
| V. | : |
| BOROUGH OF ALLENDALE, | : |
| ALBERT KLOMBURG, VINCENT | : CIVIL ACTION |
| BARRA, PAULA FAVATTA and | : |
| STILES THOMAS, Individually: |  |
| and as an Allendale | : |
| official, JACK D. LEVIN, | : |
| J.D. LEVIN ASSOCIATES, INC.: |  |
| A New Jersey Corporation | : |
| and J.S. HEATHER COURT | : |
| ALLENDALE PROPERTY, Inc., | : |
| A New Jersey Corporation | : |
|  | : |

J 0 6 1 3 7 1 - 1 3

        THIS MATTER being brought before the court by

Mark S. Carter, Esq., Attorney for Plaintiff, CALM DEVELOPMENT,

INC., upon proof hearing seeking judgment against Defendants,

JACK D. LEVIN, J.D. LEVIN ASSOCIATES, INC. and J.S. HEATHER

COURT ALLENDALE PROPERTY, INC., and default having been entered

against said defendants, and the court having heard testimony

and evidence presented along with argument of counsel, and the

EXHIBIT "3"

court being of the opinion that judgment should be entered in
favor of the plaintiff, and good cause appearing:

IT IS on this $2/$ day of $MARCH$ , 2013:

ORDERED AND ADJUDGED that judgment be entered
in favor of Plaintiff, CALM DEVELOPMENT, INC, and against
Defendants, JACK D. LEVIN, J.D. LEVIN ASSOCIATES, INC. and J.S.
HEATHER COURT ALLENDALE PROPERTY, INC., in the amount of $\$5,928,6$
together with interest and costs of suit.

ROBERT WILSON , JSC

.WE FURTHER COMMAND YOU, that in case of a sale, you make your return of this Writ with your proceedings thereon before this Court and you pay to the Clerk thereof any surplus in your hands within thirty days after the sale.

WITNESS, HONORABLE **PETER E COYNE, A.J.S.C.** , a Judge of the Superior Court, at ___Hackensack___ , this _24 th_ day of _April_ , 20 _13_ .

JENNIFER PERE

*Clerk, Superior Court of New Jersey*

**ENDORSEMENT**

| | | |
|---|---|---|
| Judgment Amount*:.............$ | 5,928,680.00 | |
| Additional Costs:..................$ | | |
| Interest thereon: ..................$ | | |
| Credits: ...............................$ | 0.00 | |
| Sheriff's Fees:.......................$ | | |
| Sheriff's Commissions:.........$ | | |
| TOTAL | $ | 5,928,680.00 |

* "Judgment Amount" includes amount of verdict or settlement, plus pre-judgment court costs, plus any applicable statutory attorney's fee.

Post-judgment Interest applied pursuant to CR 4:42-11 has been calculated as simple interest. As required by CR 4:59-1, attached is the method by which interest has been calculated, taking into account all partial payments made by the defendant.

Dated ___4/8/13___

**MARK S. CARTER·FILE NO. 5633**

*Attorney(s) for Plaintiff(s)*

Note: Form adopted as Appendix XII-D, July 27, 2006, effective September 1, 2006; amended September 11, 2006, effective immediately; amended July 9, 2008, effective September 1, 2008.

5090 - Writ of Execution
Superior Court – Appendix XII-D
Rev. 7/9/08   Effective 9/1/08   P8/09

Powered by
HotDocs®

Printed by ALL-STATE LEGAL®
A Division of ALL-STATE International, Inc.
www.aslegal.com   800.222.0510     Page 2

Attorney(s): MARK S. CARTER-FILE NO. 5633
Law Firm:
Address: 79 MAIN STREET
HACKENSACK, NJ 07601

Telephone No.: (201) 487-7666
Fax No.: (201) 488-4407
E-mail: mscesq@aol.com
Attorney(s) for Plaintiff(s): CALM DEVELOPMENT, INC.

| | |
|---|---|
| CALM DEVELOPMENT, INC.<br><br>Plaintiff(s)<br>vs.<br>BOROUGH OF ALLENDALE, ALBERT, KLOMBURG, VINCENT BARRA, PAULA FAVATTA and STILES THOMAS, JACK D. LEVIN, J.D. LEVIN ASSOCIATES, INC., a New Jersey Corporation and J.S. HEATHER COURT ALLENDALE PROPERTY, INC. a New Jersey Corporation<br><br>Defendant(s) | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>L-8660-10 BERGEN COUNTY<br><br>DOCKET NO.: J-061371-13<br><br>**Writ of Execution** |

THE STATE OF NEW JERSEY
TO THE SHERIFF OF BERGEN COUNTY

WHEREAS, on the 21st day of March, 20 13 judgment was recovered by Plaintiff(s), CALM DEVELOPMENT, INC., in an action in the Superior Court of New Jersey, Law Division, BERGEN County, against Defendant(s), JACK D. LEVIN, J.D. LEVIN and J.S. HEATHER, for damages of $ 5,928,680.00 and costs of $ ____________; and

WHEREAS, on March 27, 2013, the judgment was entered in the civil docket of the Clerk of the Superior Court, and there remains due thereon $ 5,928,680.00.

THEREFORE, WE COMMAND YOU, that you satisfy the said Judgment out of the personal property of the said Judgment debtor(s) within your County; and if sufficient personal property cannot be found, then out of the real property in your County belonging to the judgment debtor(s) at the time when the judgment was entered or docketed in the office of the Clerk of this Court, or at any time thereafter, in whose hands the same may be, and that you pay the said monies realized by you from such property to MARK S. CARTER-FILE NO. 5633, Esq., attorney in this action; and that within twenty-four months after the date of its issuance you return this execution and your proceedings thereon to the Clerk of the Superior Court of New Jersey at Trenton.

EXHIBIT "4"

SECURED PROMISSORY NOTE

THIS Note is hereby by and between CALM DEVELOPMENT, INC and SECURED SERVICES INC., for value received and acknowledged herein

Principal Amount: $ 10,000          Rate: n/a          Date: 8/14/13

Promise to Pay: FOR VALUE RECEIVED, Secured Services Inc, hereby promises to pay Calm Development the amount prescribed in the event they are not successful in the execution and collection of all monies due under the writ of execution. Docket number J-061371-13.

This Note is being issued in connection with that certain Agreement for the firm to execute and collect on said judgment. It is understood the firm guarantees the collection of monies as a payment towards the successful collection under the writ.

It is further understood that in the event the firm is successful the maximum cost to Calm Development is owes Secured Services $42,500.00 for the collection of $ 5,928.680. There is no other fees or costs. It is mutually agreed that there are no fees or costs associated with this collection process.

Guaranty of collection. It is understood the $ 10,000.00 deposited this date is acknowledged and received. The money will be 100 percent refundable if the collection under the writ in it's entirety is not accomplished. The guaranty is absolute and requires complete performance or the refund is absolute.

This agreement is acknowledged this 14th Day of August, in the year of 2013.

IN WITNESS WHEREOF, the undersigned has caused this Secured Promissory Note to be executed

CALM DEVELOPMENT INC

SECURED SERVICES, INC

EXHIBIT "5"

**COMMONWEALTH BERGEN TITLE AGENCY, L.L.C.**
*Court Plaza North* | *25 Main Street* | *P.O. Box 526* | *Hackensack, NJ 07602-0526*
*201-343-3121* | *fax 201-343-1663* | *www.cbtitleagency.com*

 **Commonwealth**

File No: H08-0049

# REPORT OF TITLE

RE: 144 East Allendale Avenue, Borough of Allendale
County of Bergen, State of New Jersey
Lot 2 in Block 701

Record title is vested:

John W. Albohm and Kathleen Albohm, His Wife under deed from Allendale Park Estates, Inc., a New Jersey Corporation and J.D. Levin & Associates, dated December 13, 1988, recorded February 1, 1989 in Deed Book 7267 page 235.

SUBJECT to the following:

1. Tax and Assessment Search(es) – Not Ordered.

2. Upper Court Search(es) – Not Ordered.

3. Mortgage between John W. Albohm and Kathleen Albohm, Husband and Wife to Anchor Mortgage Services, Inc., dated January 24, 1989, recorded February 1, 1989 in Mortgage Book 7670 page 362. Secures $499,950.00.

4. Enclosed please find Order Enforcing Settlement as contained in Deed Book 7343 page 946. NOTE: Page 962.

5. Title not examined prior to February 1, 1989.

6. It is expressly understood and agreed that Commonwealth Bergen Title Agency, LLC's liability for any claim, loss or damage resulting from errors and omissions, whether or not caused by Commonwealth Bergen Title Agency, LLC, shall be limited to $1,000.00. No liability is assumed for items not indexed or misindexed by the County Clerk's or Register's Office. This Report is furnished in accordance with your instructions and does not represent either a commitment to insure title or an opinion as to marketability.

*Agent for Commonwealth Land Title Insurance Company of New Jersey*

EXHIBIT "6"    9 PAGES

DATED:  December 27, 2007


COMMONWEALTH BERGEN TITLE AGENCY, LLC

Leo J. Foose
Managing Member
LJF/mep

Prepared for:

Michael Levin, Esq
152 Simsbury Road
Avon, CT 06001

cc:  Robert Vort, Esq.
     2 University Plaza
     Hackensack, New Jersey 07601

'88 12/28 09:35  .P02  *WEBER MUTH&WEBER

## A G R E E M E N T

THIS AGREEMENT made this  day of December, 1988, by and between
ALLENDALE PARK ESTATES, INC., A New Jersey Corporation whose
address is 199 Lake Street, Upper Saddle River, New Jersey and
J. D. LEVIN & ASSOCIATES, A New Jersey Corporation, having its
principal office at 199 Lake Street, Upper Saddle River, New
Jersey (hereinafter "Seller"); and

JOHN W. ALBOHM AND KATHLEEN ALBOHM, his wife, whose address is
about to be 144 East Allendale Avenue, Allendale, New Jersey
(hereinafter "Buyer")

WHEREAS Seller has simultaneously with the execution of this
agreement, conveyed to Buyer all of those premises known as Lot
2 in Block 701 on the current tax assessment map of the Borough
of Allendale, Bergen County, New Jersey, more particularly
described in the deed of conveyance for the consideration of
$670,000.00; and

WHEREAS, the parties wish to arrange for a reconveyance of a
portion of said premises to the Seller, upon the occurrence of
certain conditions.

NOW, THEREFORE, in and for the consideration of ONE DOLLAR paid
by the parties each to the other and upon the further
consideration of the mutual covenants and agreements contained
herein, the parties hereto agree as follows:

1. Buyer acknowledges that the consideration paid by him for
premises at 144 East Allendale Avenue, Allendale, New Jersey
was intended to be in payment for the northeasterly portion of
the premises containing the existing house only and that the
rear portion of the premises was to be reconveyed to Seller,
as soon as Seller was able to obtain from the appropriate parties,
a valid subdivision permitting the reconveyance.

2. Seller shall at its own cost and expense cause a subdivision
application to be filed with the Planning Board of the Borough
of Allendale, to separate the front and the rear portions of
Lot 2 in Block 701. The line of subdivision shall run across
the property from North to South at a location of approximately
50' easterly of the rear of the existing house.

3. Seller shall have the option of applying for a minor
subdivision permitting the property to be separated from the
portion of the property fronting on East Allendale Avenue to
be retained by the Buyers or of attaching the premises to be
reconveyed to any other contiguous property as part of a major
subdivision of same.

4. Buyer agrees to cooperate with Seller as required, to obtain
such subdivision and to execute all documents required. Buyer
will not be required to expend any monies for processing of the

BK 7343 PG 962

'98. 12/28 09:35  P03 *WEBER MUTH&WEBER

5. Should same be required by the Borough of Allendale, or the County of Bergen, Buyer agrees to convey a strip of land along East Allendale Avenue for present or future road widening purposes.

6. At such time as final subdivision approval has been obtained, permitting such conveyance, Buyer will convey to Seller with a Bargain and Sale Deed with Covenants vs Grantors' Acts, all such part of Lot 2, in Block 701 as shall be delineated in the aforesaid subdivision retaining for Buyers' own use the remainder of the premises lying between East Allendale Avenue to the West and the line which is 50' East of the house.

7. During the period that this agreement is in effect and for whatever time thereafter that Buyer grants to Seller an easement to utilize the existing construction roadway, currently running along the southerly portion of the Buyers' property, which provides access to Sellers' construction site at the rear. This easement shall only terminate upon the completion of construction and the issuance of Certificates of Occupancy for all homes currently being built and hereafter to be constructed by Sellers, their successors and assigns on the lands to be subdivided and the adjacent premises currently owned by Sellers.

8. If, as part of any subdivision plan, Sellers or any governmental authority having jurisdiction should determine that access to the premises to be conveyed or the adjacent lands owned by Sellers should require a means of ingress or egress from East Allendale Avenue, Buyer agrees to convey to Sellers or the proper governmental authority a strip of land fifty (50') feet in width which will run, at Sellers' option, along either the extreme northerly sideline or southerly sideline of Buyers' lands for the purpose of installation of a public street or right of way, which street or right of way shall be installed by Sellers at no expense to the Buyers. Whether or not such a right of way is required, Buyers will, on request of Sellers, grant an easement through a portion of the aforesaid proposed right of way strip for utilities, including, but not limited to sewer lines, water lines, gas electricity, cable television, or any other item required as part of the subdivision to service the development of which the subdivided property is a part.

9. This agreement shall be considered as running with the land and shall bind and insure to the benefit of the respective parties, their heirs, legal representatives, successors and assigns.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day and year first above written.

ATTEST:                          ALLENDALE PARK ESTATES, INC.

_Jackie Teske_                   _William R. Ponsovdt_
Jackie Teske, Secretary          William R. Ponsovdt, President

RK 7343 PG 963

12/28 09:41 P01 *WEBER MUTH&WEBER

ATTEST:

Dexel L. Levin, Asst. Sec/

WITNESS:

J.D.LEVIN & ASSOCIATES

Jack D. Levin, President

John W. Albohm,

Kathleen Alboum

R & R
McCarter + Engush
100 Mulberry St
Newark Nj 07102
attn - J-L

RK 7343 PG 964

**END OF DOCUMENT**



**DEED**

IRWIN B. KLUGMAN, ESQ.

This Deed is made on December 13th, 19 88

BETWEEN

ALLENDALE PARK ESTATES, INC., A New Jersey Corporation
whose address is 199 Lake Street, Upper Saddle River,
New Jersey and J.D. LEVIN & ASSOCIATES, a corporation of the state of New Jersey
having its principal office at 199 Lake Street, Upper Saddle River, NJ
referred to as the Grantor.

AND

JOHN W. ALBOHM AND KATHLEEN ALBOHM, his wife

about to be
whose post office address is 144 East Allendale Avenue, Allendale, New Jersey
referred to as the Grantee.

The word "Grantee" shall mean all Grantees listed above.

Transfer of Ownership. The Grantor grants and conveys (transfers ownership of) the property described below to the Grantee. This transfer is made for the sum of SIX HUNDRED AND SEVENTY THOUSAND AND 00/100 ($670,000.00) DOLLARS
The Grantor acknowledges receipt of this money.

Tax Map Reference. (N.J.S.A. 46:15-2.1) Municipality of Allendale
Block No. 701   Lot No. 2   Account No.
☐ No property tax identification number is available on the date of this Deed. (Check box if applicable.)

Property. The property consists of the land and all the buildings and structures on the land in the Borough of Allendale
County of Bergen   and State of New Jersey. The legal description is:

More particularly described on Schedule "A" annexed hereto
and made a part hereof.

012100

89 FEB -1 PM 4:09

BK 1267 PG 235

28 12/28 09:35 .P02 *WEBER MUTH&WEBER

## A G R E E M E N T

THIS AGREEMENT made this day of December, 1988, by and between ALLENDALE PARK ESTATES, INC., A New Jersey Corporation whose address is 199 Lake Street, Upper Saddle River, New Jersey and J. D. LEVIN & ASSOCIATES, A New Jersey Corporation, having its principal office at 199 Lake Street, Upper Saddle River, New Jersey (hereinafter "Seller"); and

JOHN W. ALBOHM AND KATHLEEN ALBOHM, his wife, whose address is about to be 144 East Allendale Avenue, Allendale, New Jersey (hereinafter "Buyer")

WHEREAS Seller has simultaneously with the execution of this agreement, conveyed to Buyer all of those premises known as Lot 2 in Block 701 on the current tax assessment map of the Borough of Allendale, Bergen County, New Jersey, more particularly described in the deed of conveyance for the consideration of $670,000.00; and

WHEREAS, the parties wish to arrange for a reconveyance of a portion of said premises to the Seller, upon the occurrence of certain conditions.

NOW, THEREFORE, in and for the consideration of ONE DOLLAR paid by the parties each to the other and upon the further consideration of the mutual covenants and agreements contained herein, the parties hereto agree as follows:

1. Buyer acknowledges that the consideration paid by him for premises at 144 East Allendale Avenue, Allendale, New Jersey was intended to be in payment for the northeasterly portion of the premises containing the existing house only and that the rear portion of the premises was to be reconveyed to Seller, as soon as Seller was able to obtain from the appropriate parties, a valid subdivision permitting the reconveyance.

2. Seller shall at its own cost and expense cause a subdivision application to be filed with the Planning Board of the Borough of Allendale, to separate the front and the rear portions of Lot 2 in Block 701. The line of subdivision shall run across the property from North to South at a location of approximately 50' easterly of the rear of the existing house.

3. Seller shall have the option of applying for a minor subdivision permitting the property to be separated from the portion of the property fronting on East Allendale Avenue to be retained by the Buyers or of attaching the premises to be reconveyed to any other contiguous property as part of a major subdivision of same.

4. Buyer agrees to cooperate with Seller as required, to obtain such subdivision and to execute all documents required. Buyer will not be required to expend any monies for processing of the



'98. 12/28 09:35   P03 *WEBER MUTH&WEBER

5. Should same be required by the Borough of Allendale, or the County of Bergen, Buyer agrees to convey a strip of land along East Allendale Avenue for present or future road widening purposes.

6. At such time as final subdivision approval has been obtained, permitting such conveyance, Buyer will convey to Seller with a Bargain and Sale Deed with Covenants vs Grantors' Acts, all such part of Lot 2, in Block 701 as shall be delineated in the aforesaid subdivision retaining for Buyers' own use the remainder of the premises lying between East Allendale Avenue to the West and the line which is 50' East of the house.

7. During the period that this agreement is in effect and for whatever time thereafter that Buyer grants to Seller an easement to utilize the existing construction roadway, currently running along the southerly portion of the Buyers' property, which provides access to Sellers' construction site at the rear. This easement shall only terminate upon the completion of construction and the issuance of Certificates of Occupancy for all homes currently being built and hereafter to be constructed by Sellers, their successors and assigns on the lands to be subdivided and the adjacent premises currently owned by Sellers.

8. If, as part of any subdivision plan, Sellers or any governmental authority having jurisdiction should determine that access to the premises to be conveyed or the adjacent lands owned by Sellers should require a means of ingress or egress from East Allendale Avenue, Buyer agrees to convey to Sellers or the proper governmental authority a strip of land fifty (50') feet in width which will run, at Sellers' option, along either the extreme northerly sideline or southerly sideline of Buyers' lands for the purpose of installation of a public street or right of way, which street or right of way shall be installed by Sellers at no expense to the Buyers. Whether or not such a right of way is required, Buyers will, on request of Sellers, grant an easement through a portion of the aforesaid proposed right of way strip for utilities, including, but not limited to sewer lines, water lines, gas electricity, cable television, or any other item required as part of the subdivision to service the development of which the subdivided property is a part.

9. This agreement shall be considered as running with the land and shall bind and inure to the benefit of the respective parties, their heirs, legal representatives, successors and assigns.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day and year first above written.

ATTEST:                                    ALLENDALE PARK ESTATES, INC.

Jackie Teske, Secretary              William R. Ponsoldt, President

BK 7343 PG 963

12/28  09:41   P01   *WEBER  MUTH&WEBER

ATTEST:

Dixel L. Levin, Asst. Sec/

J.D.LEVIN & ASSOCIATES

Jack D. Levin, President

WITNESS:

John W. Albohm,

Kathleen Albohm

BeR
McCarter + English
100 Mulberry St
Newark N.J. 07102.
attn - J-L

RK 7343 PG964

END OF DOCUMENT

1

                      SUPERIOR COURT OF NEW JERSEY
                      LAW DIVISION, CHANCERY PART
                      BERGEN COUNTY

2

                      DOCKET NO. F-47234-09
                      A.D. #_____

3

4    EMIGRANT MORTGAGE,         )
                            )

5            Plaintiff,     )      TRANSCRIPT
                            )        OF

6       vs.                )      HEARING
                            )

7    CALM DEVELOPMENT,        )
                            )

            Defendant.     )

8

9                       Place:    Bergen Cty. Courthouse
                                  Ten Main Street
                                  Hackensack, NJ  07601

10

                       Date:    May 22, 2013

11

12   BEFORE:

13    HONORABLE GERALD C. ESCALA, J.S.C.

14   TRANSCRIPT ORDERED BY:

     MICHAEL A. D'ANTONIO, 316 Allendale Avenue

15                       Allendale, New Jersey 07481

16   APPEARANCES:

     MR. EPSTEIN, ESQ.

17    Attorney for Plaintiff

18    MARK S. CARTER, ESQ. (Sole Practitioner)
     Attorney for Defendants Calm Development and

19    Michael A. D'Antonio

     DAVID B. BOLE, ESQ. (Winne, Dooley & Bole, P.C.)

20    Attorney for the Borough of Allendale

21

                       Diane Tillson

22                     KING TRANSCRIPTION SERVICES
                     901 Route 23 South

23                     Center Suite 3
                     Pompton Plains, NJ  07444
                     (973) 237-6080

24

                     Audio Recorded

25                     Recording Operator: N/A

EXHIBIT 7

1   provided the opportunity.  There's no doubt that that

2   was done and he didn't take advantage of it.  Now he's

3   saying, okay, I didn't take advantage of it before but

4   now I really want to take advantage of it in the

5   mediation.  That -- that -- that's a self-serving

6   approach.

7                MR. CARTER:  Judge, we can also -- with

8   the rent that's being paid, we'll assign it over to

9   the bank as a showing of good faith.  It's $2,300 a

10  month.

11               Now, it may be a token amount as to what the

12  actual --

13               THE COURT:  What did he do with the rent

14  money he's been receiving?  He's been receiving $2,300

15  a month and he doesn't have a dime?

16               MR. CARTER:  He doesn't receive -- Judge, no.

17  My client --

18               THE COURT:  Well, who gets it?

19               MR. CARTER:  My client pays rent to Calm.

20  He's not -- my -- my client's not a -- he doesn't own

21  Calm.  He's --

22               THE COURT:  He's a tenant.

23               MR. CARTER:  He's a tenant, but I'm saying --

24               THE COURT:  Well, he can't be both a tenant

25  and a homeowner all in one.

**FILED**

SEP 18 2015

ESTELA M. DE LA CRUZ
J.S.C.

MICHAEL A. D'ANTONIO,

    Plaintiff,

vs.

RETAINED REALTY, INC. et al.,

    Defendants.

---

RETAINED REALTY, INC.,

    Third Party Plaintiff,

vs.

CALM DEVELOPMENT, INC.,

    Third Party Defendant.

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION:BERGEN COUNTY
Docket No. BER-L-4562-15

Civil Action

ORDER ON 8/24/15 MOTION

    **THIS MATTER** having been opened to the Court by Michael A. D'Antonio, Plaintiff in the above matter, upon application to amend his Complaint as it pertains to re-opening issues intended to appeal the Hon. Peter E. Doyne, Ret. J.S.C., December 7, 2012 and September 8, 2010 Decisions and Orders; and the Court having considered the papers filed herein and having heard oral argument today; and for reasons placed on the record and for good cause having been shown;

    IT IS, on this 18th day of September, 2015,

1) **ORDERED** Michael A. D'Antonio's Motion to Amend his Complaint to re-open prior foreclosure litigations rulings and Decisions is hereby **DENIED WITH PREJUDICE.**

Hon. Estela M. De La Cruz, J.S.C.

**OPPOSED**

EXHIBIT "7a"

**FILED**

**SEP 18 2015**

**ESTELA M. DE LA CRUZ**
**J.S.C.**

Michael A. D'Antonio
Plaintiff Pro Se
PO BOX 55
Allendale NJ. 07401
201-962-5581 cell
201-797-1245 fax
mad.316@hot mail.com

7/27/2015

---

MICHAEL A. D'ANTONIO                 SUPERIOR COUORT OF NEW JERSEY
Plaintiff                            BERGEN COUNTY LAW DIVISION

vs                                   CIVIL ACTION

RETAINED REALTY ET AL                DOCKET NO. BER-L-004562-15
Defendant

ORDER
(7/24/15 Motion)

---

THIS MATTER having come before the Court upon application of the Plaintiff,
seeking an Order to Compel Discovery from the Defendants, and the Court reviewing the
Exhibits and for good cause shown;

It is Ordered on this 18 day of Sept , 2015, that
Defendants Retained Realty and The ~~Bergen County Sherrifs~~ Department shall with in
_____ days of the signing ~~of this Order and submit~~ the requested discovery of
the Plaintiff. **DENIED** *

~~It is further Ordered that a copy of this Order shall be served upon all Counsel~~
~~of record by regular mail and/or electronic submission with in Five days of the signing of~~
~~this Order.~~

~~OPPOSED~~  ____ Unopposed                    Judge Estela De La Cruz J.S.C.

* For reasons gwen
on record today.

280

EXHIBIT "7b"

Michael A. D'Antonio
Plaintiff Pro Se
PO BOX 55
Allendale NJ. 07401
201-962-5881 cell
201-797-1245 fax
mad.316@hotmail.com

**FILED**

**SEP 18 2015**

**ESTELA M. DE LA CRUZ**
**J.S.C.**

---

| | |
|---|---|
| **MICHAEL A. D'ANTONIO** | **SUPERIOR COURT OF NEW JERSEY** |
| **Plaintiff** | **LAW DIVISION- BERGEN COUNTY** |
| | |
| **vs** | **DOCKET NO. BER-L-4562-15** |
| | |
| **RETAINED REALTY ET AL** | **CIVIL ACTION** |
| **Defendants** | |

---

| | |
|---|---|
| **RETAINED REALTY INC.** | **ORDER** |
| **Third Party Plaintiff** | ~~DISMISSING DEFENDANTS~~ |
| | ~~ANSWER, SEPARATE DEFENSES,~~ |
| | ~~COUNTERCLAIM AND THIRD PARTY~~ |
| | ~~COMPLAINT FOR FAILURE TO~~ |
| **vs** | ~~COMPLY WITH R. 4:23-5 and R.4:23-4~~ |
| | ~~TO COMPEL THE BERGEN COUNTY~~ |
| | ~~SHERIFFS DEPARTMENT  TO~~ |
| **CALM DEVELOPMENT INC.** | ~~COMPLY WITH DISCOVERY~~ |
| **Third Part Defendant** | ~~REQUESTS~~ |
| | (8/11/15 Motion) |
| **D'ANTONIO FAMILY LIVING TRUST** | |
| **Cross Third Party Plaintiff** | |
| | |
| **vs** | |
| | |
| **EMIGRANT MORTGAGE COMPANY INC** | |
| **BOROUGH OF ALLENDALE** | |
| **Cross Third Party Defendants** | |

---

THIS MATTER being opened to the Court by MICHAEL A. D'ANTONIO

Plaintiff in the above matter, upon application to strike Defendants Answer, Separate

Defenses, Counterclaim and Third Party Complaint and entering Default for defendants

EXHIBIT "7c"

failure to provide Discovery and the Court having reviewed the papers in support of the

within application and ~~no~~ opposition thereto and for good cause showing and oral argument heard today

It is on this _14th_ day of _Sept_____, 2015

ORDERED that the Answer, Separate Defenses, Counterclaim and Third Party

Complaint be and hereby are stricken and ~~dismissed~~ and default is hereby

entered against Defendants R~~~~~~~~~~~~ the Bergen County Sheriff's

Department for failure to provide discovery.

~~IT IS FURTHER ORDERED, that the ~~~~ may be complied with within ~~

~~days of the signing of this Order.~~

~~IT IS FURTHER ORDERED, that default be entered against Defendant~~

~~Regional entity Inc and the Bergen County Sheriff's Department, Patricia Egan, and~~

~~Network Trucking.~~

**DENIED**

\* For reasons set forth on record today —

_____
Hon. Judge Estela De La Cruz J.S.C.
Estela

_____ opposed
not opposed

OPPOSED

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION, CIVIL PART
BERGEN COUNTY, NEW JERSEY
DOCKET NO. BER-L-4562-15
APP. DIV. NO.

MICHAEL A. D'ANTONIO,     )
                          )
      Plaintiff,     )
                          )        TRANSCRIPT
    vs.               )           of
                          )    MOTIONS HEARING
RETAINED REALTY, INC.,   )
ET AL.,                )
                          )
      Defendants.    )

Place: Bergen County Superior Court
Justice Center, 10 Main St.
Hackensack, N.J. 07601

Date: September 18, 2015

BEFORE:

HONORABLE ESTELA M. DE LA CRUZ, J.S.C.

TRANSCRIPT ORDERED BY:

MICHAEL A. D'ANTONIO (P.O. Box 55, Allendale,
New Jersey 07401)

APPEARANCES:

MICHAEL A. D'ANTONIO, PRO SE
Attorney for the Plaintiff

RICHARD EPSTEIN, ESQ. (Attorney at Law)
Attorney for the Defendant

Transcriber Dolores Hastings, AD/T 417
**APPEALING TRANSCRIPTS INC.**
8 Victoria Drive
Clark, New Jersey 07066
(732) 680-1610 / Fax (732) 680-1615
Appealingtrans@gmail.com
Digitally Recorded
Operator, Patrick O'Connor

EXHIBIT "8"

```
1  ne that caused the sheriff's sale to issue a deed when
2  they knew that the property was protected by
3  bankruptcy. They gave the documents for the
4  sheriff's sale and then Mr. Epstein did not send a
5  fifth notice to either Mr. Capazzi or myself.  So he
6  waited two months after he had possession of the deed
7  to send the notice to the tenants.
8           MR. EPSTEIN:  Your Honor, I'll make it brief.
9  Mark Carter represented Mr. D'Antonio on the order to
10 show cause opposing the eviction.  Mr. Carter was
11 present I believe during the oral argument of that on
12 the morning of the decision when Judge Escala denied
13 the application.
14          There was a lease that was turned over that
15 was presented, it was an eight year lease between Calm
16 Development and Mr. D'Antonio, Mr. D'Antonio was the
17 director of Calm Development, at        below market
18 rent. If you look at the first exhibit, the first order
19 attached to my certification you can see Judge Escala's
20 handwritten --
21          THE COURT:  What certification?  Dated?
22          MR. EPSTEIN:  My certification dated
23 September 10th, the certification in opposition to
24 plaintiff's motion to amend.
25          THE COURT:  One second.
```

34

```
1           MR. EPSTEIN:  It's the same certification
2  with Judge Doyne's summary judgment order, it's the
3  first order attached after my signature page.
4           THE COURT:  All right, I have it.
5           MR. EPSTEIN:  And it says, this is Judge
6  Escala's handwriting,
7           "Lease offered by defendant is a sham lease
8  made by corporation of which defendant is director to
9  himself.  Rent        to be below market."
10          So there was a lease present.  Mr. Carter was
11 arguing the case for Mr. D'Antonio at the point, at
12 that point.  So he was represented by counsel, no
13 appeal was filed from that order, the eviction that
14 morning -- that afternoon.
15          THE COURT:  The order itself says he's pro
16 se.
17          MR. D'ANTONIO:  Thank you.
18          MR. EPSTEIN:  Mark Carter filed paperwork.
19          THE COURT:  Well the order says he's --
20 D'Antonio is pro se.
21          MR. EPSTEIN:  Okay.  It may -- maybe Mr.
22 Carter didn't show up at the argument then.
23          THE COURT:  Well, that doesn't qualify as
24 someone pro se, that the attorney doesn't show up.
25          MR. EPSTEIN:  Looking at a letter of May 5th
```

MICHAEL A. D'ANTONIO
PLAINTIFF PRO SE
P.O BOX 55
ALLENDALE NJ 07401

---

MICHAEL A. D'ANTONIO                    :       SUPERIOR COURT OF NEW JERSEY
                                        :                   DIVISION
                                        :                    COUNTY
                         Plaintiff      :
                                        :       DOCKET NO.   BER-L - A562 - 15
                  v.                    :
RETHINGD REALTY ET ALS                  :            CIVIL ACTION
                                        :
                                        :            *SUBPOENA*
                         Defendant      :          *DUCES TECUM*

---

**THE STATE OF NEW JERSEY, TO:** BANK OF AMERICA  LEGAL ORDER PROCESSING

        **YOU ARE HEREBY COMMANDED** to attend and give testimony before the above-named Court
at:   WITHIN 21 DAYS OF RECEIPT OF SUBPOENA  DOCUMENTS ONLY

on                  at                  o'clock        .M., on the part of

in the above-entitled action, and pursuant to R. 1:9-2 that you have and bring with you and produce at the same
time and place the following: CLOSING  STATEMENT  MB:A 51 -16- 200 ·8540· 451
BOROUGH OF ALLENDALE

        Failure to appear according to the command of the Subpoena will subject you to a penalty, damages in
a Civil Suit and punishment for contempt of Court.

Dated:

  11-11-15                                       _Jennifer Perez_
_____                 _____
                                                                        **Clerk**

Attorney for

---

                        **PROOF OF SERVICE**

        On  11 11 15              , I, the undersigned, being over the age of 18, served the within Subpoena by
delivering a copy thereof to the person named therein, at 5 701  HORATIO  STREET  UTICA NY
13502   CERT. MAIL  7015 0640 0004  4975  4604
and by tendering to such person the attendance fee of $              and mileage of $
as allowed by law.

        I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing
statements made by me are willfully false, I am subject to punishment.

Dated:  11-11-15                                 _Michael A D'Antonio_
Address for Service:  P.O BOX 55
                      ALLENDALE  NJ
21 - Subpoena Duces Tecum                 07401
All Courts - With Proof of Service

---

EXHIBIT "9"  4 PAGES  P 1

Matthew Helbling
Legal Analyst
US Trust Third Party Services
Tel: 904.423.2442

December 4, 2015

## VIA UPS NEXT DAY AIR
Michael A. D'Antonio
208 Kenneth Ave.
Fair Lawn, NJ 07410
201-962-5881

Re: <u>Michael A. D'Antonio v. Retained Realty, et al.</u>

Dear Mr. D'Antonio,

Enclosed are documents responsive to the Subpoena served on Bank of America regarding the above-captioned matter. These documents are to be treated as confidential and are to be used only by the parties in connection with the referenced litigation.

Please call 904-423-2442 to obtain the password to the encrypted disk. This disk contains sensitive client and/or employee data and is required to be destroyed via granulation. If you do not have the ability to granulate this disk, please return it to me at the address below so I can properly dispose of it.

Bank of America reserves the right to supplement, amend, correct or clarify its responses and/or objections to the Subpoena. If we locate additional responsive documents that have not already been produced to you in response to this Subpoena, we will forward copies of the documents to your attention immediately.

Should you have any questions, please do not hesitate to contact me.

Sincerely,

*[signature]*

904· 425-9513

Matthew Helbling

---

matt.helbling@ml.com
Bank of America, FL9-805-01-20
4800 Deer Lake Dr. E., Jacksonville, FL 32246

EXHIBIT "9" P-2



EXHIBIT IV

PORTFOLIO ALLOCATION

AS OF 09/28/07

ACCOUNT
51-16-200-8540451

NON-GOV'T UNITS NJ

PAGE 3

| DESCRIPTION | MARKET VALUE | BOOK VALUE | UNREALIZED GAIN/LOSS | % OF NV | ACCRUED INCOME | CURRENT YIELD | ESTIMATED ANNUAL INCOME |
|---|---|---|---|---|---|---|---|
| CASH AND CASH EQUIVALENTS | 113,370,429.47 | 113,370,429.47 | | 41.100 | 34,190.07 | 3.572 | 4,045,280.00 |
| FIXED INCOME | 162,472,503.15 | 161,768,163.41 | 704,339.74 | 58.900 | 1,159,158.42 | 4.585 | 7,445,156.89 |
| TOTAL ASSETS | 275,842,932.62 | 275,138,592.88 | 704,339.74 | 100.000 | 1,193,348.49 | 4.148 | 11,490,436.89 |
| TOTAL | 275,842,932.62 | 275,138,592.88 | 704,339.74 | | 1,193,348.49 | | 11,490,436.89 |

EXHIBIT 9  P 3

Settlement Date

**U.S. TRUST**

Bank of America Corporation

## Account Summary

*Account:*   51-16-200-8540451   CUTWATER INVESTOR SERVICES NJ

Dec. 01, 2013 through Dec. 31, 2013

### Market Value $0.00

#### Account Activity

| Description | Current Period | YTD Since 01/01/13 |
|---|---|---|
| Beginning Market Value | $813.59 | $79,745,895.39 |
| Income | 0.88 | 147,172.39 |
| Deposits | 35,261.68 | 14,505,562.04 |
| Disbursements | -36,076.15 | -94,311,887.35 |
| Bank Fees | 0.00 | -35,710.00 |
| Change in Market Value | 0.00 | -51,032.47 |
| **Ending Market Value** | **$0.00** | **$0.00** |
| Change in Account Value | -813.59 | -79,745,895.39 |
| Accrued Income | 0.00 | 0.00 |
| **Ending Value + Accrued Income** | **$0.00** | **0.00** |

#### Income Summary

| Description | Current Period | YTD Since 01/01/13 |
|---|---|---|
| Dividends - Taxable | $0.88 | $1,075.33 |
| Interest - Taxable | 0.00 | 146,097.06 |
| **Total Income** | **$0.88** | **$147,172.39** |

The amounts shown throughout this statement should not be used in the preparation of tax documents. Detail specifi... ... the nature of income will be provided with year-end tax documentation. Please consult your tax advisor.

*COAH RULES & REGULATIONS*

petitions for substantive certification, the municipality shall reserve and set aside new infrastructure capacity, when it becomes available, for low and moderate income housing, on a priority basis.

(d) Municipal officials shall endorse all applications to the New Jersey Department of Environmental Protection or its agent to provide affordable infrastructure. Such endorsements shall be simultaneously submitted to the Council.

(e) Where the New Jersey Department of Environmental Protection or its designated agent approves a proposal to provide infrastructure to a site for the development of low and moderate income housing identified in the housing element, the municipality shall permit such development.

(f) Where a municipality has designated sites for low and moderate income housing that lack adequate infrastructure and where the New Jersey Department of Environmental Protection or its designated agent approves a proposal to provide infrastructure to a site other than those designated for the development of low and moderate income housing in the housing element, the municipality shall amend its housing element and fair share housing ordinance to permit development of such site for low and moderate income housing. The amended housing element and fair share housing ordinance shall be submitted to the Council within 90 days of the site's approval by the New Jersey Department of Environmental Protection or its agent.

#### Case Notes

Affordable housing regulations did not violate Fair Housing Act. Calton Homes, Inc. v. Council on Affordable Housing, 244 N.J.Super. 438, 582 A.2d 1024 (A.D.1990), certification denied 127 N.J. 326, 604 A.2d 601.

Council rule that municipal zoning ordinance was subject to approval by Dept. of Environmental Protection was not improper delegation. Township of Bernards v. State, Dept. of Community Affairs, 233 N.J.Super. 1, 558 A.2d 1 (A.D.1989), certification denied 118 N.J. 194, 570 A.2d 959, certification denied 118 N.J. 195, 570 A.2d 959.

### 5:92–8.6  Prohibitive costs of infrastructure

(a) The Council shall make an adjustment to the municipal present and prospective need due to prohibitive costs associated with providing public facilities and infrastructure. This adjustment shall remain totally or partially in effect until adequate, affordable infrastructure facilities are provided.

(b) Notwithstanding the prohibitive cost of adequate public facilities and infrastructure, the municipality shall nonetheless designate and zone appropriate sites to accommodate its fair share obligation. The lack of adequate capacity, in and of itself, shall constitute a durational adjustment of the municipal obligation and that obligation shall be deferred until adequate infrastructure is made available as set forth in (c) through (h) below.

(c) Notwithstanding the prohibitive cost of adequate public facilities and infrastructure at the time a municipality petitions for substantive certification, the municipality shall reserve and set aside new infrastructure capacity, when it becomes available for low and moderate income housing on a priority basis.

(d) Municipalities seeking an adjustment of their fair share due to prohibitive costs of infrastructure to the public shall complete "The Costs of Providing Infrastructure" application provided by the Council and submit it to the Council for its review.

(e) The Council shall forward "The Costs of Providing Infrastructure" application to the New Jersey Department of Community Affairs Division of Local Government Services for review. The Council shall consider the report of the Division of Local Government Services in determining whether to permit an adjustment due to prohibitive costs associated with providing public facilities and infrastructure.

(f) Municipal officials shall endorse all applications to the New Jersey Department of Environmental Protection or its agent to provide affordable infrastructure. Such endorsements shall be simultaneously submitted to the Council.

(g) Where the New Jersey Department of Environmental Protection or its designated agent approves a proposal to provide affordable infrastructure to a site for the development of low and moderate income housing in the housing element, the municipality shall permit such development.

(h) Where a municipality has designated sites for low and moderate income housing that lack adequate infrastructure and where the New Jersey Department of Environmental Protection or its designated agent approves a proposal to provide affordable infrastructure to a site other than those designated for the development of low and moderate income housing in the housing element, the municipality shall amend its housing element and fair share housing ordinance to permit development of such site for low and moderate income housing. The amended housing element and fair share housing ordinance shall be submitted to the Council within 90 days of the site's approval by the New Jersey Department of Environmental Protection or its agent.

#### Case Notes

Council rule that municipal zoning ordinance was subject to approval by Dept. of Environmental Protection was not improper delegation. Township of Bernards v. State, Dept. of Community Affairs, 233 N.J.Super. 1, 558 A.2d 1 (A.D.1989), certification denied 118 N.J. 194, 570 A.2d 959, certification denied 118 N.J. 195, 570 A.2d 959.

---

## SUBCHAPTER 9.  PRIORITIZING

### 5:92–9.1  Prioritizing vacant and developable sites

(a) Municipalities shall establish priorities for low and moderate income sites. Sites should be available, suitable, developable and approvable as defined in N.J.A.C. 5:92–1.3.

*EXHIBIT "22"*

$v^1$ $\psi^{23}$

$g^3$

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION, CIVIL PART
BERGEN COUNTY, NEW JERSEY
DOCKET NO. BER-L-4562-15
APP. DIV. NO.

MICHAEL A. D'ANTONIO,          )
                               )
          Plaintiff,           )
                               )          TRANSCRIPT
     vs.                       )             of
                               )       MOTIONS HEARING
RETAINED REALTY, INC.,         )
ET AL.,                        )
                               )
          Defendants.          )

                    Place: Bergen County Superior Court
                           Justice Center, 10 Main St.
                           Hackensack, N.J. 07601

                    Date:  September 18, 2015

BEFORE:

     HONORABLE ESTELA M. DE LA CRUZ, J.S.C.

TRANSCRIPT ORDERED BY:

     MICHAEL A. D'ANTONIO (P.O. Box 55, Allendale,
     New Jersey 07401)

APPEARANCES:

     MICHAEL A. D'ANTONIO, PRO SE
     Attorney for the Plaintiff

     RICHARD EPSTEIN, ESQ. (Attorney at Law)
     Attorney for the Defendant

                    Transcriber Dolores Hastings, AD/T 417
                    APPEALING TRANSCRIPTS INC.
                    8 Victoria Drive
                    Clark, New Jersey 07066
                    (732) 680-1610 / Fax (732) 680-1615
                    Appealingtrans@gmail.com
                    Digitally Recorded
                    Operator, Patrick O'Connor

EXHIBIT " 1 "

motions filed by plaintiff pertaining to compelling discovery from defendant and one of the -- the second -- the second motion to compel also includes a provision to dismiss Retained Realty's answer or strike it for failure to produce discovery. The defendant also filed its own motion to dismiss the complaint and finally plaintiff has filed a motion to amend the complaint.

The plaintiff's motion filed August 24, 2015 to amend the complaint is denied. The motion to amend the complaint is to reopen issues already litigated and heard before prior judges which concluded with Judge Doyne's decision December 7, 2012 on the foreclosure action and thereafter handled by Judge Escala on May 14, 2014 pertaining to that -- that course of events after the foreclosure. The Court is not going to allow the amendment of a complaint notwithstanding the rule's directive to be -- to view these applications liberally because this is a very clear attempt, an admitted attempt by Mr. D'Antonio, plaintiff, to reopen the foreclosure action simply because he disagrees with Judge Doyne's December 7, 2012 decision.

Today is September 18, 2015. There has been no appeal filed of Judge Doyne's decisions on these matters that preceded Judge Escala's May 14, 2014 order. There was no appeal of Judge Doyne's summary

judgment granting on September 8, 2010, there was no appeal of Judge Doyne's December 7, 2012 order and decision on foreclosure and again there has been no appeal filed on the more recent order entered by Judge Escala on May 14, 2014.

To reopen this is absolutely not supported by any rule, in fact when probed as to what rule or legal authority supports such an application to amend the complaint for those issues, plaintiff -- plaintiff could not identify one except 4:50-2 without any specific reference to language. The Court is denying it, the amendment of the complaint, denying the reopening of any issue decided by Judge Doyne and/or by -- more recently by Judge Escala.

The Court is also denying defendant's cross-motion to dismiss and denying that without -- strike that.

The motion to amend the complaint as presented by Mr. D'Antonio is denied with prejudice. The amendment as requested now is denied with prejudice.

The defendant's motion, cross-motion to dismiss the complaint is denied without prejudice. The Court discerns that that application is premature, discovery end date is January 2 of 2016, discovery is

FILED

OCT 2 8 2015

**Prepared by the Court**

ESTELA M. DE LA CRUZ
J.S.C.

MICHAEL A. D'ANTONIO,

Plaintiff,

vs.

RETAINED REALTY, INC. et al.,

Defendants.

RETAINED REALTY, INC.,

Third Party Plaintiff,

vs.

CALM DEVELOPMENT, INC.,

Third Party Defendant.

D'ANTONIO FAMILY LIVING TRUST,

Cross Third Party Plaintiff

vs.

EMIGRANT MORTGAGE COMPANY
INC., BOROUGH OF ALLENDALE,

Cross Third Party Defendants

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION:BERGEN COUNTY
Docket No. **BER-L-4562-15**

Civil Action

**AMENDED ORDER ON 10/5/15
MOTION FOR RECONSIDERATION**

**THIS MATTER** having been opened by the Court to vacate a prior Order entered on

October 23, 2015, which due to a clerical error resulted in conflicting language appearing on that

filed Order;

IT IS, on this 28th day of October, 2015,

1) **ORDERED** Michael A. D'Antonio's Motion for Reconsideration is **DENIED** on the

following basis:

        a.   This Court remains with the rulings and decisions entered on September 18, 2015, which denied Plaintiff's attempt to re-open prior foreclosure litigation rulings and decisions entered by prior Courts, including those of the Hon. Peter E. Doyne (Ret.) and the Hon. Gerald Escala; it is further

2) **ORDERED** Michael A. D'Antonio's request for an entry of Default Judgment against Defendants, Network Trucking, Patricia Egan and the Bergen County Sheriff's Department, which was included in the October 5, 2015, Motion for Reconsidering is hereby **DENIED**; it is further

3) **ORDERED** that a copy of this Order shall be served upon all counsel/parties within seven (7) days of the date hereof.

Hon. Estela M. De La Cruz, J.S.C.

FILED

JAN 2 2 2016

ESTELA M. DE LA CRUZ
J.S.C.

**Prepared by the Court**

---

MICHAEL A. D'ANTONIO,

        Plaintiff,

vs.

RETAINED REALTY, INC. et al.,

        Defendants.

---

RETAINED REALTY, INC.,

        Third Party Plaintiff,

vs.

CALM DEVELOPMENT, INC.,

        Third Party Defendant.

---

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION:BERGEN COUNTY
Docket No. **BER-L-4562-15**

Civil Action

**ORDER ON 12/20/15 MOTION**

---

**THIS MATTER** having been opened to the Court by Michael A. D'Antonio, Plaintiff in
the above matter, upon application to restore Defendants Patricia Egan and The Bergen County
Sheriff's Department; and the Court having considered the papers filed herein; and for good cause
having been shown;

IT IS, on this 22nd day of January, 2016,

1) **ORDERED** Michael A. D'Antonio's Motion to Restore his Complaint to as to Patricia Egan
and the Bergen County Sheriff Department is hereby **GRANTED;** and it is further

2) **ORDERED** that a copy of this Order shall be served upon all counsel/parties within seven (7)
days of the date hereof.

_____
Hon. Estela M. De La Cruz, J.S.C.

**UNOPPOSED**
(even with BCSD's
Jan. 4, 2016 letter)

Michael A. D'Antonio
Plaintiff Pro Se
PO BOX 55
Allendale NJ. 07401
201-962-5881 cell
201-797-1245 fax
mad.316@hot mail.com

**FILED**

**MAY 0 2 2016**

ESTELA M. DE LA CRUZ
J.S.C.

4/12/2016

---

**MICHAEL A. D'ANTONIO**
**Plaintiff**

**SUPERIOR COUORT OF NEW JERSEY**
**LAW DIVISION- BERGEN COUNTY**

**vs**

**DOCKET NO. BER-L-4562-15**

**RETAINED REALTY et als**
**Defendants**

**ORDER**

---

**THIS MATTER** having been opened to the Court by Plaintiff Michael A. D'Antonio and for good cause shown, it is on this _____ day of _____, 2016,

**ORDERED** that Judge Del La Cruz will recuse herself for the supporting reasons in this Motion.

**IT IS FURTHER ORDERED,** That Network trucking will pay the sum of $400.00 to Plaintiff Michael A. D'Antonio for not showing up for the scheduled Deposition. It is further ordered that Final Default Judgment be entered in favor of the Plaintiff for failure of Network Trucking's failure to make all discovery requests.

**IT IS FURTHER ORDERED,** That Final Default Judgment be entered in favor of the Plaintiff for failure of the Bergen County Sheriff's Department to make all discovery requests.

**IT IS FURTHER ORDERED,** That Final Default Judgment be entered in favor of the Plaintiff for failure of Retained Realty to make all discovery requests.

**IT IS FURTHER ORDERED,** That the Borough of Allendale is a named Defendant in this matter as the Clerks Office sent notice that they were a Defendant and would be dismissed due to lack of Prosecution and for failure to make all relevant discovery.

DENIED

**IT IS FURTHER ORDERED,** that Final Default Judgment be entered in favor of Plaintiff for failure of Patricia Egan to make all relevant discovery and answer the Complaint.

**IT IS FURHTER ORDERED,** that the Hearings before Judge Doyne and Judge Wilson are deemed Mis Trials due to No Verbatim Records being made in violation of R.1:2-2 and that by application of Plaintiff a proof hearing will be requested to attain the final determination of the Court and upon any redress by any aggrieved party to this Order.

**ESTELA M. DE LA CRUZ, J.S.C.**
J.S.C.

\* This motion is convoluted and not understandable; furthermore, no cogent basis is presented for Recusal.

OPPOSED
___ OPPOSED
___ UNOPPOSED

Michael A. D'Antonio
Plaintiff Pro Se
PO BOX 55
Allendale NJ. 07401
201-962-5881 cell
201-797-1245 fax
mad.316@hot mail.com

**FILED**

**SEP 18 2015**

ESTELA M. DE LA CRUZ
J.S.C.

---

**MICHAEL A. D'ANTONIO**
**Plaintiff**

**SUPERIOR COURT OF NEW JERSEY**
**LAW DIVISION- BERGEN COUNTY**


**vs**

**DOCKET NO. BER-L-4562-15**


**RETAINED REALTY ET AL**
**Defendants**

**CIVIL ACTION**

---

**RETAINED REALTY INC.**
**Third Party Plaintiff**

**ORDER**
~~DISMISSING DEFENDANTS~~
~~ANSWER, SEPARATE DEFENSES,~~
~~COUNTERCLAIM, THIRD PARTY~~
~~COMPLAINT FOR FAILURE TO~~
~~COMPLY WITH R. 4:23-5 and R:4:10-1~~
~~TO COMPEL THE BERGEN COUNTY~~
~~SHERIFFS DEPARTMENT TO~~
~~COMPLY WITH DISCOVERY~~
~~REQUESTS~~

**vs**

**CALM DEVELOPMENT INC.**
**Third Part Defendant**

(8/11/15 Motion)

---

**D'ANTONIO FAMILY LIVING TRUST**
**Cross Third Party Plaintiff**

**vs**
**EMIGRANT MORTGAGE COMPANY INC**
**BOROUGH OF ALLENDALE**
**Cross Third Party Defendants**

---

**THIS MATTER** being opened to the Court by **MICHAEL A. D'ANTONIO**
Plaintiff in the above matter, upon application to strike Defendants Answer, Separate
Defenses, Counterclaim and Third Party Complaint and entering Default for defendants



failure to provide Discovery and the Court having reviewed the papers in support of the

within application and ~~no~~ opposition thereto and for good cause showing, and oral argument

heard today

It Is on this _____ day of _____ , 2015

    **ORDERED** that the Answer, Separate Defenses, Counterclaim and Third Party

Complaint be and hereby are stricken and defenses suppressed and default is hereby

entered against Defendants Retained Realty Inc and the Bergen County Sheriff's

Department for failure to provide discovery.

    ~~**IT IS FURTHER ORDERED,** that discovery be complied with within~~

~~days of the signing of this Order.~~

    ~~**IT IS FURTHER ORDERED,** that default be entered against Defendants~~

~~Retained realty Inc and the Bergen County Sheriff's Department, Patricia Egan, and~~

~~Network Trucking.~~

\* For reasons set forth
on record today —

_____
Hon. Judge ~~Estella~~ De La Cruz J.S.C.
Estela

_____ opposed

_____ unopposed

OPPOSED

Michael A. D'Antonio
Plaintiff Pro Se
PO BOX  55
Allendale NJ. 07401
201-962-5881 cell
201-797-1245 fax
mad.316@hot mail.com

**FILED**

SEP 1 8 2015

ESTELA M. DE LA CRUZ
J.S.C.

7/27/2015

---

**MICHAEL A. D'ANTONIO**
**Plaintiff**

**SUPERIOR COUORT OF NEW JERSEY**
**BERGEN COUNTY LAW DIVISION**

**vs**

**CIVIL ACTION**

**RETAINED REALTY ET AL**
**Defendant**

**DOCKET NO. BER-L-004562-15**

**ORDER** (7/28/15 Motion)

---

**THIS MATTER** having come before the Court upon application of the Plaintiff,
seeking an Order to Compel Discovery from the Defendants, and the Court reviewing the
Exhibits and for good cause shown;

**It is Ordered** on this 18 day of Sept , 2015, that
Defendants Retained Realty and The Bergen County Sheriffs Department shall with in
_____ days of the signing of ~~this order~~ and submit the requested discovery of
the Plaintiff.

~~It is further Ordered that a copy of this Order shall be served upon all Counsel
of record by regular mail and or electronic submission with Five days of the signing of
this Order.~~

**DENIED** *

**OPPOSED**
___ Unopposed

_____
Judge Estela De La Cruz J.S.C.

* For reasons given
on record today.

FILED

SEP 18 2015

ESTELA M. DE LA CRUZ
J.S.C.

**Prepared by the Court**

| | |
|---|---|
| MICHAEL A. D'ANTONIO,<br>Plaintiff,<br>vs.<br>RETAINED REALTY, INC. et al.,<br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION:BERGEN COUNTY<br>Docket No. **BER-L-4562-15**<br><br>Civil Action |
| RETAINED REALTY, INC.,<br>Third Party Plaintiff,<br>vs.<br>CALM DEVELOPMENT, INC.,<br>Third Party Defendant. | **ORDER ON 8/24/15 MOTION** |

**THIS MATTER** having been opened to the Court by Michael A. D'Antonio, Plaintiff in the above matter, upon application to amend his Complaint as it pertains to re-opening issues intended to appeal the Hon. Peter E. Doyne, Ret. J.S.C., December 7, 2012 and September 8, 2010 Decisions and Orders; and the Court having considered the papers filed herein and having heard oral argument today; and for reasons placed on the record today and for good cause having been shown;

IT IS, on this 18th day of September, 2015,

1) **ORDERED** Michael A. D'Antonio's Motion to Amend his Complaint to re-open prior foreclosure litigations rulings and Decisions is hereby **DENIED WITH PREJUDICE.**

Hon. Estela M. De La Cruz, J.S.C.

**OPPOSED**

0332

# CORPORATE RESOLUTION CALM DEVELOPMENT INC.

Whereas, the Director, Michael A. D'Antonio has requested a meeting and proposes a Corporate Resolution based upon the Denial of the Bankruptcy Application to reopen the Docket Number F-47234-09 dated April 28, 2014, which having been denied, requests a vote by the Stock Holders to close the Corporation.

Further, in that Calm Development received a Judgment under Docket No. BER-L- 8660-10 in the amount of $5.9 million dollars and this is deemed an asset of Calm Development and in further protection of the Stock Holders it is hereby resolved that Michael A. D'Antonio assume any and all liabilities and Judgments assessed against the Corporation going forward. The Stock holders make full release and are held harmless from same.

This resolution is predicated on the present issues and these issues alone. It is also aligned to relieve any or all future legal obligations of any further outcome of any adverse Legal determinations so brought against the Closed Corporation.

Gaetano D'Antonio  President                    vote  yes  X  no _____

Michael John D'Antonio Treasurer              vote  yes  X  no _____

Mario Peter D'Antonio Secretary               vote  yes  X  no _____

It is on this 28, day of April 2014 that the Stock Holders held this meeting and Closed this Corporation.

## D'ANTONIO FAMILY LIVING TRUST

This Living Trust is made with the express condition that Michael A. D'Antonio is the settler of the trust.

The Trustees of the trust are Michael J. D'Antonio and Lisa A. Hopper.

The Purpose of this trust is to transfer the assets of the settler and of former Corporation Calm Development held in the name of the three sons Gaetano, Michael J. and Mario and now convert this trust to create a trust wherein all descendants share in a continuing benefit from the balance of the Estate of Michael A. D'Antonio. The Principal Assets and or Judgments collected upon are to be realized, material, valid and placed in any form of high yield bonds, stock, annuities and or income producing Real Estate.

All personal possessions of Michael A. D'Antonio are to be liquidated and fund the Trust so that a continuing form of income continues through out the Family. No foreign person or former member of the family may benefit in any manner or form. No former person may enter any of the Real Estate that is generated by and from this Trust.

This Living Family Trust is hereby a Revocable Trust, where in the settler may modify, amend, change, or use any or all of the Assets protected by this Trust.

This Trust was created with the express condition and understanding that it defeats the contemporary rules of tax law and circumvents the need for probate, or any filing fees, and annual recording fees.


It is on this 28th Day of April 2014 that this instrument becomes valid;


_Michael A. D'Antonio settler_

Michael A. D'Antonio settler

dated: 4-28-14

Sworn and witnessed by:

_Anthony Catanzaro_

Anthony Catanzaro

dated: _____

Notary Public State of New Jersey

ANTHONY CATANZARO
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES MAY 24, 2016

Sworn to and subscribed before me
this 2̲L̲ day of _April_ 20 _15_.