SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-000011-17T2

---

MICHAEL A. D'ANTONIO                    CIVIL ACTION

PLAINTIFF-APPELLANT                     ON APPEAL FROM

vs                          SUPERIOR COURT, LAW DIVISION

RETAINED REALTY ,
NETWORK  TRUCKING,
BERGEN COUNTY SHERIFF'S
DEPARTMENT,PATRICIA EGAN               SAT BELOW

                                       HONORABLE ESTELLA DE LA CRUZ
                                       DOCKET NO. BER- L -4562-15

DEFENDANTS-RESPONDENTS

---

APPELLANT  REPLY BRIEF

---

FILED
APPELLATE DIVISION

AUG 2 8 2018

CLERK

MICHAEL A. D'ANTONIO
APPELLANT
P.O. BOX 55
ALLENDALE, NJ 07401
201-962-5881 CELL
201-857-4411 FAX
MAD.316@HOTMAIL.COM

EXHIBIT "3"

# SUPERIOR COURT OF NEW JERSEY

## APPELLATE DIVISION

### DOCKET NO. A-000011-17T2

---

CERTIFICATION OF SERVICE

I CERTIFY that on this date I served an original and 5 copies of Appellants

Reply Brief on the Clerk of the Appellate Division, Superior Court of New Jersey, 25 W.

Market Street, Trenton New Jersey  via Federal Express and 2 copies to Richard Epstein

Esq. for Retained Realty 1170 US Highway 2 East, Bridgewater NJ 08807, Leonard

Seaman Esq. for Bergen County Sheriff Dept. %Richard Malagiere

 250 Moonachie Road, Moonachie NJ 07074, Narinder Parmar Esq. for Network

Trucking % George W. Wright 505 Main Street Hackensack NJ 07601 and Patricia Egan

84 Farley Place Allendale NJ 07401

8 26 - 18

## PROCEDURAL HISTORY

1. The opening statement of Defendant Retained Realty's procedural history does not fairly represent the facts of the case and Appellants brief does not focus on all issues previously heard and determined in the Foreclosure action. No Judgment for $11,600.00 was part of the Foreclosure and is of a primary issue here and is a basis for the reopening of the Foreclosure docket. However, the Note and the Mortgage, specifically, the Surety aspect of the Note only allows for the property to be SOLD with out any Eviction. Mr. Epstein received a Writ of Possession for both houses but only evicted the Appellant. Mr. Epstein misapplied and the Judge violated the terms of the contract.

2. Plaintiff filed this appeal due to Interlocutory Orders and improper decisions of Judge de La Cruz' below.

3. Judge de La Cruz inadvertently decided that the Foreclosure issue could not be reversed due to the statute of limitation as 2 years time has passed.

4. Appellant has submitted copies of the Real Estate licensing Act Title 45 Chapter 15 OAL and Rules and Regulations Title 11 Chapter 15. This section of the Administrative Code clearly, beyond all doubt establishes certain rights to this Appellant, that the statute to reopen contracts, mortgages, foreclosures is 6 years and the right for redemption of a party's home is 10 years.

5. Mr. Epstein does not, nor did not respond to these documents throughout the entire time this Appeal was submitted. None of the other defendants have responded.

1

6. The illegal actions of the Defendants have casued all personnel involved with the Foreclosure and Eviction to no longer be employed by the Sheriff Dept. or the Moving Company Net Work Trucking.

7. Respectfully, Judge Ostrer issued an order limiting Appellant the Right to argue or appeal the Foreclosure action, which was made part of the case.

8. Judge Ostrer denied Appellant a reversal under Motion for Reconsideration based upon submission of this Section of Law.

9. Clearly, Judge de La Cruz was unaware of this section of Law and changes the submission on the reliance of Rule 4:50-1 as permissible to reopen the Foreclosure aspect. Judge Cruz did not make a verbatim record of all the proceedings which denies this Appellant the right to properly defend these issues and reopen the Foreclosure issue. Plaintiff relies on Sniadach v family Finance Corp. Mc Cormack federalism Sect. 1983 Limitations on Judicial Empowerment of Constitutional protection 60 Val. rev 1 (1974) c Antieau Federal Civil Rights Act Civil Practice (1971) 395 U.S. 342 (1964) Pa table of authorities 21.

10. In that Mr. Epstein and the Sheriff's Department violated Due Process and Equal Protection to this Appellant this provides an additional reason to grant this application.

11. Mr. Epstein submits RRDa19 an abridged Transcript which the abridged parts conceal relevant issues to Appellants position. Page 35 of the transcript clearly is defended by Mr. Epstein and clearly states I am reopening the Foreclosure.

12. It is now established that the Foreclosure was reopened and that Judge Cruz denied this issue by her perception of operation of a statute of limitation, it now becomes Appealable as of Right.

2 .

13. If the chain of equity at the time of Foreclosure was limited to a certain dollar sum awarded to Emigrant Savings and the contract document by Operation of Law is required to be discharged due to a presence of a Novation also submitted under Title 11 Chapter 15, and Plaintiff was denied this right then this issue also is appealable.

14. If the time for obtaining all monies due the Emigrant Savings Co. it would have been at the time of the Judgment of Foreclosure. In that if a sum of money was not requested, Emigrant Savings through Mr. Epstein was barred by Equitable and Collateral estoppel and the doctrine of when you settle you settle.

15. Due to economic status, the Emigrant Savings Co. decides to transfer the note to a subsidiary company Retained Realty, so that Emigrant's balance sheet shows no bad debt or uncollected Debt. The note bears a significant legal caveat, wherein the Emigrant Mortgage Company was only allowed to sell the property to recover the financial amount loaned on the property and that no occupants were allowed to be evicted. An Appealable issue.

16. Retained Realty held title to Appellants home and Appellants $640,000.00 of which D'Antonio did NOT receive at the time of the sale to Mr. Luo the contract buyer. who is an In House buyer to the Bank.

17. The Borough of Allendale has established an assessed value of $1,340,000.00 at the time of transfer of the deed.

18. Retained Realty a subsidiary of Emigrant Savings received no rights to uncollected equity or financial losses from unearned interest on the loan. This Court is in possession of documents which collude to the evidence and facts that the Foreclosure was improper and illegal. No notice was given to D'Antonio, Calm Development, M&G Holding nor its Attorney

3

Mr. Capazzi, and should be reversed. Retained Realty has no right to sue on counterclaim equity issues in the appealed docket from below and they are not an equity defendant they are a holding company for the Parent company.

19. Equal Protection and Due Process allow this court to reverse the limitation on appeal so that the Foreclosure is now appealable. If Retained Realty can get a judgment against D'Antonio for $11,600.00 personally than the Foreclosure was reopened below, as the inception of debt or judgment of Foreclosure emanates from Emigrant and not Retained Realty and the Foreclosure Docket only. Appellant had no contract with Retained Realty niether did Calm Development or M & G Holding.

20. In Mr. Epstein's opposition brief he clearly leaves out definitive issues favorable to this Appellant and his brief should not be considered based on material issues of facts not being included and Summary Judgment.

21. The Foreclosure is requested to be reopened and protected due to the veracity of crimes committed by Mr. Epstein, Captain Edgars, Ms. Egan and the Bergen County Sheriff's Officers who handled the eviction.

22. Mr. Epstein paid the regular fee of $1500.00 but also paid $60,000.00 to secure an illegal Writ of Foreclosure, Writ of Possession and Sheriff's Deed.

23. Judge Innes having issued an Order compelling the Sheriff's Department to return the $60,000.00 is the fatal evidence against the Bank through Epstein for offering and submitting the bribe of $60,000.00. How or why would Judge Innes issue this Order? How did he find this?

24. Under Access to Public records, House Counsel for the Sheriff's Department refuses to give access to the check registers and or Bank Statements reflective of the time periods in question for the $60,000.00 in question. This is Obstruction of Justice, Embezzlement.

4

25. Page 3 of Mr. Epstein's procedural history states that "***pages 5 to 34 of this transcript have been redacted for purposes of abridging the transcript to include only the Courts decision starting on page 36:***

Mr. Epstein does not want this Appellate court to see that Judge de La Cruz attempted to hide the amended complaint by stating she did not see it then gets caught on the record by comparing the two different dates on the amended and the original complaints. pages 5-6.

page 7 reflects that she could not find the amended complaint and three attached documents related to the foreclosure.

page 8 reflects that Judge Doyne did not turn the recorder on during the Foreclosure hearing where I was made to represent the corporation and was denied access to a new Attorney due to the death of my former Attorney and that I requested a mistrial.

page 8-9 shows that I could not appeal without a verbatim record.

pages 9-10 prove I tried to get new counsel and that Mr. Carter refused to submit proofs to stay the Foreclosure and Eviction and Capazzi was incarcerated for embezzlement.

page 11 discusses Judge Doyne's improper conduct, my intention to appeal but no record was made and the fact that Judge Doyne concealed a Novation of the parties during the hearing and the following day made an 8 page opinion discussing the Novation which was not on the records the day before. [ Mr. Epstein fears the Novation aspect which negated the essence of a valid contract in the presence of a foreign entity paying the mortgage for 40 consecutive payments.] Judge de La Cruz references R. 4:50-2 when Plaintiff entered R.4:50-1

page 13 Judge Cruz repeatedly cuts off Appellant on the record

5

page 14 18-25 advice of Counsel regarding lack of record means we cant appeal

page 15 again references regarding other Judges not making a record, Judge Toskos and Judge Escalla. Judge Escalla resigned as well as Judge Doyne in the face of impropriety. Mr. Epstein misrepresented the lease aspect of appellant from 9 years prior to the actual lease in place at the time of the eviction before Judge Escala.

pages 15-16 Epstein admits knowledge of NO transcripts 15- 24,25, 16- 1-25 17 1-25

pages 18, 19, 20 relative to due process and rules of court and ethical conduct.

page 21 no hearing mistrial 1-25

page 22 verbatim record reopening the foreclosure action 1-25 plus read equitable resolution to the bank would have caused them to have more money!!!

page 23 Mr. Epstein argues about time and now the statue allows me the time to regain title and he will not concede, plus get more money for his client. Discovery was incomplete thereby creating material issues of facts which would defeat summary judgment

pages 24,25,26,27, 28, 29, 30, 31, 32,33,34, 35 all relevant fact issues covering Appellant's case and just cause of this court to grant the appeal.
26. These "redacted "documents clearly indicate the type of attorney Mr. Epstein is and his intentional act to deceive the court in saying there is no basis to reopen the foreclosure.

27. Letter of Joseph S. Di Maria attesting to the position offered to Mr. Epstein on behalf of Emigrant Savings and Retained Realty to join Appellant

6

to collect on a $5.9 million judgment to satisfy the mortgage and regain title to the Appellant home.

28. The letter of release was signed under coercion and threats by Sargent Braney and Patricia Egan. The act of coercion negates the legal effect of the documents, they further refused me Medical attention and made me urinate in my pants.

29. Mr. Epstein Misrepresents the presence of Mr. Scott miller as the agent for Retained Realty. Mr. Epstein certifies that Retained Realty was not present at the eviction when they were represented by Patricia Egan who made the Sheriff keep my appliances worth $20,000.00 from both houses.

30. The release signed for Network trucking was signed prior to the final moving of my possessions being removed. Once the releases were signed they threw me off the property with out all of my possessions.

Retained Realty has a duty of care in who or what company they hire. Non-English speaking day laborers broke, twisted, damaged art, car parts, stole my trains, tools, machines. Plus it clearly states some damages will send list and Judge de La Cruz stated I did not make proof of the damages. I even had the police go to my sons house and his employee's house to prove they did not have any of the missing items.

30. I sent an e-mail to Mr. Epstein as a letter of rescission for the abandonment part of my possessions. I sent further e-mails about regaining my stolen and or abandoned property from Retained Realty's agent and he denied same to me, see Epstein Certification and enclosures explaining the dissipation of the security to fix the property.

7

## Cross Statement of Counter Statement of Facts

1. Retained Realty was not the owner of the property pursuant to the Sheriffs Deed. The Contracted parties in interest where Emigrant Savings and Calm Development and Michael A. D'Antonio

2. Retained Realty failed to respond to a subpoena dated 8-12-16 for discovery documents. As did all Defendants in this action. Judge de La Cruz denied discovery and reconsideration Pa 203a-207a.

3. Retained Realty states by way of Counsel they had no contract with Network Trucking, and therefore are directed by Retained Realty and therefore Retained Realty is responsible for the consequences of its agent's actions. Retained Realty hired Terry O' Conner Realty who sent Patricia Egan to effectuate a coercion against Appellant to have the Sheriff Officers threaten and take personal property and be thrown off the property unless the release were signed in advance. Upon compliance the Appellant was thrown off the property. This constitutes an attendance by Retained Realty when an agent is present and therefore constitutes liability and responsibility. If Retained Realty is found liable for any wrongful act at Law, they are soley responsible for the damages incurred, due to the illegal conduct of Mr. Epstein bribing the Bergen County Sheriff's Department. The Removal and storage of Appellants property are the responsibility of Retained Realty as they had no written contract with Network Trucking and no contractual disclaimers or insurance protection disclaimers. Upon request to all parties Retained Realty, Network Trucking and Richard Epstein, for the location of storage or dump to get my possession's back I was denied the location. Page 8 of

8

counterstatement of facts states that all the property was removed but yet Network Trucking had to return to complete the clean out the next day, yet no one from the front house or the neighbors saw anyone present. Appellant was threatened and coerced and thereby moots the property release documents Title 11 Chapter 15. Pa 162a-164a

4. Rents and security were not awarded to Emigrant nor Retained Realty at the Judgment of Foreclosure. The surety aspect of the Mortgage and Note Pa 232a-240a states that the sole remedy in the presence of default is that the Bank has the right to sell the property. **Further Mr. Epstein failed to give Notice of the Sheriff's Sale, failed to have Judge Doyne enter the award of security and rent and the Writ of Possession Issued by the Sheriff required all tenants to be evicted see SDa34**. The security was used to make repairs to the property and the rents alleged due and owing are incorrect. Retained Realty also discounted some security owed in the presence of damages.

D'Antonio assumed any debt that was present at that time, meaning any filed Judgments at the time of the dissolution of the corporation so that my sons would not be responsible for any judgments or debt. Not to include any future Judgments, The bank accepted 40 payments from M&G Holding but no Judgment was placed against this entity for fear of verification of a Novation of the Parties Pa 162a-164a.

## LEGAL ARGUMENT

## POINT I

## FORECLOSURE IS CONTESTED AND ACTIONABLE BY STATUTE DUE TO MATERIAL ISSUES OF FACTS

9

By proofs submitted in this response, prior submissions, Appellant's Appendices I and II, and the redaction IN PART of the transcript submitted by Mr. Epstein who intentionally with held material issues of facts, the Foreclosure is not over.

This reply brief provides factual reference to all issues which should convince this Appellate court of illegal conduct, failure by sitting Judges of violations of the Rules of Civil Practice and ethical values attempted by the Judges to deny Appellant Due Process and Equal Protection.

If the court follows Mr. Epstein's statement, page 12, Point I, Legal Argument "*Therefore, the only issues to be heard in this case, and on this Appeal are those set forth in D'Antonio's original complaint filed in this action".* This is opposed by the following facts and Rules of Civil Practice The Rules allow me to amend a complaint, this Appellant was denied with out proper or just cause to Amend the Complaint, see Pa 199a- 202a,which dilutes the Appellants damages and does not allow Justice to prevail. Judge de La Cruz denied my Amended Complaint, see attached transcript where in Mr. Epstein redacts the primary proofs of the Foreclosure being reopened and denied for Statute of Limitation, which is not in accordance with the Sections of Law as previously submitted. Mr. Epstein, on behalf of Retained Realty, filed a counterclaim on issues for equity relief which his present client Retained Realty did not suffer economic loss from. The only caveat in the Surety Aspect of the Note and Mortgage is for the bank to sell the property. Mr. Epstein does not deny or defend this FACT. Appellant nor the tenants were permitted to be evicted as the illegal Writ of Possession was issued for. The Bergen County Sheriff's Department violated Due Process and Equal Protection by allowing the front house tenants to remain in

10

possession. No damages would have been sustained if the contract were followed as written. The Bank would have made more money if they granted a vacating of the Illegal Sheriff's deed and applied for insurance claim protection under Errors and Omissions. The Contract documents were never countersigned, the Novation occurred due to errors of the accounting personnel for the Bank by accepting 40 checks from a party not part of the contract and agreed by all parties in writing. By Operation of Law see Pa 162a-164a, the contract, mortgage and note are invalid. The Bank decided to stop accepting the checks and refused to issue credits for the earned interest on the illegally escrowed Real Estate Taxes. The Bank then instituted illegal foreclosure proceedings and failed to give notice to this Appellant. The Sheriff's department did not give Notice of the Sheriff's Sale. The deed is invalid and the Writ of Possession was issued under false submissions of Mr. Epstein, wherein he informed Judge Escalla of facts that were obtained in depositions which reflected issues that were 9 years old and presents unsupported facts about values of rent with out expert opinion or supporting facts. Retained Realty has no standing to sue for lost monies, they are not a party to the contract and the time to attain a judgment for rent and or security was at the Foreclosure. The claims were abandoned and are disallowed under the Doctrines of Equitable Estoppel and Collateral Estoppel.

Retained Realty owes the appellant $640,000.00 as the assessed value of the property by the Borough of Allendale is $1,340,000.00 See Justice Harlan's decision Pa Table of Authorities 21.That Terrie O' Conner Realty and their staff of agents could not sell the property after 11/2 years caused Retained Realty to offer the property to Mr. Jian Luo at the price they could recover from him or $600,000.00. He was an inside buyer that did frequent

11

purchases from the bank for distressed problematic properties held by the
Bank.

Mr. Epstein argues that Calm development was the foreclosed
property owner and as such was closed due to the loss of all it assets. Mr.
Epstein received a personal judgment against Michael A. D'Antonio for
$11,600.00 in State Court below. Mr. Epstein construes the Agreement
signed after the foreclosure to include judgments not already in place which
was the intent of the document to secure a financial freedom for my children
from any damages. Both the town and the bank had received $200,000.00 of
my personal funds for real estate taxes. The bank escrowed the tax overages
and did not return the interest or the equity upside pursuant to the assessed
value. Mr. Epstein admits on page 14 that Retained Realty filed for damages
after it acquired title to the property and that could not have been raised in
the Foreclosure Action. Then says that any argument that Retained Realty
was opening the Foreclosure Action to which it was not a party, by seeking
such damages is patently wrong. What action did these alleged damages
occur from, what docket number did the damages arise from, only the
Foreclosure Docket Number.

This issue is subject to the submission of the Appellant, which
controlling Law /Statutes states I have 6 years to reopen Foreclosure,
Contract, Mortgage issues and 10 years to redeem the property and the
decisions by Judge Cruz and Judge Ostrer REGARDING FORECLOSURE
must be reversed as per the Statutes. see Pa 162a-164a.

Mr Epstein has not once responded, opposed or deny this section of
Law.

## **POINT II**

12

## <u>MATERIAL ISSUES OF FACTS ARE PRESENT AND WARRANT A</u>
## <u>VACATING OF THE SUMMARY JUDGMENT ORDER</u>

1. No Notice was given to Appellant, or the Named parties in the Note or Mortgage, or Counsel for the Parties by Mr. Epstein for the Sheriffs Sale.

2. The Bergen County Sheriff's Office did not give Notice to the Parties or Counsel of the pending Sheriff's Sale.

3. The Bank stopped accepting payments for the Mortgage after accepting 40 consecutive payments. Claiming M&G was not a party to the contract and they are not permitted to make residential loans to multifamily applications.

4. Emigrant Savings filed for Foreclosure not Retained Realty who was not a party to the contract. Due to Mr. Epstein informing his clients of a Novation being present, Foreclosure was the only resolve.

5. The Application to the Sheriff's Department by Emigrant Savings did not include the demand for Rent or Security which was a waiver of their claims.

6. The Money requested for escrow of taxes and processing of the Sheriff's Deed and Writ of Possession do not match.

7. Judge Innes became aware of the money collected and issued an Order for the Bergen County Sheriff to return $60,000.00.

8. The Bergen County Sheriff and House Counsel refuse to give access to complete Public Records to prove if the money was received and if the money was returned.

9. Mr. Epstein stated that only $47,492.80 was in the order there are two orders, the second for an additional $13,000.00+- and moreover the taxes were current. **Mr. Epstein now admits that on page 30 of his reply brief Emigrant not Retained Realty was the Foreclosure Plaintiff, thereby**

13

 **proving Retained Realty has no legal right to collect or become a part of the Equity Dispute over security and rents.**

10. In response to providing evidence to prove liability, a person in possession of a lease with proof of rent paid for 4 years has a protection from eviction under the Anti Eviction Act. Even if a person has NO lease eviction can be stopped. Counsel Mark Carter stated that if I show the Sheriff's Officers a lease and payment history they must stand down this was also confirmed by Judge Escalla's Law clerk.   Judge de La Cruz was the **pre-trial** Judge. Appellant was entitled to a trial by Jury which was not granted and **the Judge made a Summary Judgment in the presence of material issues of fact which are disputed.**

It took several months to calculate and form a complaint with an understanding of what happened and who or what entity is responsible. The facts are not supported due to foul play by  Emigrant Savings who over escrowed the Real Estate taxes and made interest with out submitting a monetary  credit to the Appellant or the Sheriff's Department for refusing to give discovery for a proper financial accounting of fees and misplaced escrow for taxes which were paid in full by the Bank and failure to give notice of the Sheriff's sale by the Sheriff's Department's employees which deny the coveted Qusai Judicial Protection Mr. Seaman seeks. If the employees commit conspiracy, fraud, obstruction of justice and acceptance of a bribe, can the Sheriff's immunity cover or negate his illegal employees conduct from granting a just and fair Judgment to this Appellant.  The standard of proofs must hold some form of latitude under the conditions of eviction especially when a litigant expects to not be evicted.  Plus the Sheriff's Officers threatened to forcefully remove me if I did not sign a

14

release. Mr. Epstein's legal mind is insufficient for reasons that are elementary. When a person or an entity institutes a crime but sends someone else to steal or damage a person's property, they are just as guilty as the actor.

11.**In this matter Network Trucking did not sign a contract, therefore, are they protected under the Independent Contractor Rule**. If a party has no legal privity then the actor is the party who initiated the act and therefore Emigrant and Retained Realty are the parties responsible for the damages. If Retained Realty did NOT hire Network Trucking to remove my possession from a home where no eviction was permitted by contract (the Note) this Appellant would have had no damages. When and if a buyer purchased the home the new buyer would have been obligated to honor the leases and then upon renewal state that there would be no renewal and I would have to have moved, but I would not have suffered any damages.

12. Mr. Epstein and Judge de La Cruz failed to accept and understand the Surety aspect of the contract. Emigrant was not allowed to evict the tenants it was a multifamily property and under there guidelines the Bank was not permitted to make the Loan. Judge de La Cruz was not aware of this legal obligation and when presented by me in Court she demanded to know what I do for a living to qualify my submission about the Surety Aspect.

13. Ms. Egan insisted that the Sheriff's Officers make me leave my appliances in both houses worth $20,000.00 Ms. Egan THREATENED AND COERCED ME TO SIGN OR SHE WOULD HAVE THE SHERIFF'S OFFICERS THROW ME OFF WITH OUT MY PROPERTY. Ms. Egan never responded to the Litigation, BY COUNSEL OR IN PERSON upon asking for Default Judgment Judge de La Cruz denied that .

15

14. Mr. Epstein submits in part that the release signed by unauthorized agents of Emigrant/Retained Realty [*Network Trucking has no contract with Emigrant/Retained Realty*] wherein a caveat still exists, that **some damages, will send a list** must be considered as a cause of action. Plaintiff's property was to be moved with a duty of care and loaded on the Network Trucking trucks by the employees of Network Trucking who were acting without a signed contract thereby exposing them and the initial actor Retained Realty/ Emigrant Savings. What was the duty of the Bergen County Sheriff's Dept. during the eviction.

15. Mr. Epstein submits on page 23, that the Summary Judgment motion was devoid of any facts or legal basis to establish Retained Realty's liability. Retained Realty did not grant discovery, Mr. Epstein raised an Objection for the subpoena of Howard Milstein the Owner of Emigrant Savings and Notice of the Sheriff's Sale.

16. The Sheriff's Officers feel they are entitled to Quasi Judicial protection. Judge de La Cruz denied this to Mr. Seaman as no such designation is present in the act of outrageous conduct by these officers. This was fully briefed in Appellants application before Judge de La Cruz.

15. Mr. Epstein submits on page 32 that equal protection arguments are equally unavailing and unsupported by the facts. Clearly the facts are present that no notice was given for the Sheriff's sale and that no discovery was submitted during the lower Court pre-trial matter plus the conduct of the Sheriff's Department to evict in the presence of protection of the Anti-eviction Act. Mr. Epstein does not speak of the due process and equal protection portion of the Appellants reasons for granting this appeal.

16. Mr. Epstein keeps stating that the decisions were from the Trial Court

16

and this Appellate Court and that the Foreclosure Action was completed and NON- Appealable but gives no mention of Appellant's submission of OAL Title 11 Chapter 15. Plus it was a pre-trial Court, Appellant never received a Trial by Jury.

## POINT III

## RETAINED REALTY HAS NO LEGAL PRIVITY OR EQUITY CLAIMS AND OR JUDGMENT

17. Retained Realty is not entitled to Judgment on its Counterclaim as they have no legal privity to any such equity claim. Mr. Epstein in his reply Brief states on page 30 paragraph 9 of this brief that **Emigrant was the Foreclosure Plaintiff not Retained Realty.** No contract was entered giving equity control of forgotten and not asked for funds at the time of the Foreclosure. The Foreclosure Judgment was exclusive of rents and security and are barred by Collateral and Equitable Estoppel and lack of contractual standing between the Parties. The only contractual remedy between Emigrant Savings, D'Antonio, Calm Development and M&G Holding was the property **WAS TO BE SOLD TO SATISFY ANY REMAINING DEBT IN THE EVENT OF DEFAULT. NO EVICTION OR ATTACHMENT OF ANY OTHER ASSETS OF D'ANTONIO , CALM DEVELOPMENT OR M&G WERE PERMISSIBLE .** This was a Commercial Loan and Mr. Epstein refuses to make this distinction and follows Rules and Law for residential properties. He acknowledges this when he lists the rents of other parties as tenants plus ordered only the eviction of D'Antonio and no other tenants as the Writ of Possession required.

17

# POINT IV

## DEFENDANTS HAVE FAILED TO DENY AND ARE SUBJECT TO R.4:5-5 EFFECT OF FAILURE TO DENY

18. Plaintiff does not believe as a Pro Se Litigant he can say anything he wants as Mr. Epstein submits. I am bound by the same Rules and Statutes as anyone else involved in a Litigation. A Judge is required to give aid to a Pro Se Litigant when the issues are a matter of Justice being served and or the Litigant is being taken advantage of by an Attorney. This issue is well presented with facts and documents.

19. Rule 4:64-1 No review of Title was made by Emigrant or Retained Realty to identify any lien holder nor was notice given to any of the Defendants in the Foreclosure action, **up to and including this instant submission, Emigrant/Retained Realty and or Mr. Epstein have not responded to any of the illegal issues.** Why Mr. Epstein did not submit the fatal Sheriff's Department's Notice of Sheriff's Sale to Me, My Attorney or Corporations involved would then prove his Client's Application. The Sheriff's Department (not Sheriff Saudino) violated my rights and the Rules of Foreclosure by not giving me the final Notice for the Sheriff's sale after 4 other notices were given. This leads to the probability of a **bribe** for Captain Edgars to not inform me or my Attorney who had previously adjourned the sale due to bankruptcy protection. Further Mr Epstein paid the fee for the Sheriff's Sale and the Writ of Possession ( which does not hold an original signature of Sheriff Saudino).

20. Mr. Epstein paid about $1,500.00 in Foreclosure and Writ of Possession fees plus Judge Innes signed two orders requiring the Sheriff's Dept. ( Not

18

Sheriff Saudino) to return the $47,000.00+- plus an additional $13,000.00.

21. Upon access to public records being made, the House Counsel of the Bergen County Sheriff refused to answer my requests for the check register and deposit registers. Capt. Kolich states that Mr. Epstein never submitted these funds. One must consider why Judge Innes signed an Order where funds do not exist. Or in the alternative did someone else take a rubber stamp and create these Orders and make these orders to cover up the money being kept by the Sheriff's Dept for the illegal eviction. These documents have already been submitted pages Pa 359a to 377a.

22. Mr. Epstein Certifies on page 29 of his reply Brief that Appellant does not support these issues by any evidence when all these facts are submitted in Plaintiff Appendix and fully briefed to this Court.

23. Appellant further submits that Mr. Epstein nor the Sheriff's Department did not submit the questionable documents as proof to show that they are incompliance in this Appeal.

24. Denial of all Appellants Motions are proof of Appellant's legal and constitutionally protected rights and may include Judge de La Cruz in part of the Conspiracy, Obstruction of Justice and Bribery, as evidenced by the Appellants District Court Matter.

25. Appellant holds that Mr. Epstein and the Sheriff's Department employees and not the Sheriff Mr. Saudino colluded to commit violations of the Rules of Foreclosure and Mr. Epstein nor the Sheriff's Department simply have not included the required Documents in the instant reply brief.

26. Judge Paul Innes is a Judge but the submissions by Appellant were meant to present that it is possible for the Sheriff's Employees to make up documents as if signed by Judge Innes. Mr. Epstein nor the Sheriff's

19

Department and Attorney Mr. Seaman have submitted the proofs necessary to exonerate the accusations of Appellant. The Appellant submits conspiracy theories and submits facts but most compelling is the fact that **all employees of the Sheriff's Department and Network Trucking are no longer employed and all employee records are sealed and denied to Plaintiff in discovery.**

27. Plaintiff should not have to defend arguments by Counsels for not doing more than filing one Motion to compel. Plaintiff filed for Summary Judgment in response to lack of Discovery. Plaintiff is NOT compelled to take any other method for suppression of the Defendants future pleadings or lack of proper legal actions. Without discovery the facts and or evidence can not be proven. The merits of this case were that Appellant was NOT legally evicted, nor were his possessions handled with the duty of care and the Appellant did not consider being taken advantage by the Bergen County Sheriff officers for coercion fraud and deception of the taking of Appellant's personal property.

29. Mr. Epstein submission on page 30 is misplaced and the Judge did not convey the proper sequence of events Plaintiff filed the Summary Judgment after the Defendants time had lapsed to respond to Discovery thereby granting the right to file Summary Judgment for failure to comply with the Rules of Civil Practice and the opportunity for the Defendants to answer and submit discovery to deny the facts of the Appellant. Appellant relies upon R.4:5-5 Effect of Failure to Deny which constitutes an admission

20

## REPLY BRIEF TO BERGEN COUNTY SHERIFF DEPARTMENT

1. Appellant did not sue the Bergen County Sheriff Michael Saudino.

2. As of right all Police Chiefs, County Chiefs and State Police Chiefs do not share an immunity from wrong doing :

    a) Outrageous Conduct

    b) Intentional Tort

    c) Intentional Criminal Behavior

    d) Total disregard for the Oath of the Office

    e) Mr. Seaman seeks new issues about Qusai Immunity

3.In this Matter, Appellant did not at any time raise charges or issues against Michael Saudino Bergen County Sheriff.

It is totally in violation of all ethical considerations to not hold Mr. Seaman Esq. in proper form by his submission as to requesting a dismissal based upon the entire matter being entitled to Quasi-Judicial Immunity for its actions in executing the Writ of Possession. All references submitted by Mr. Seaman are aimed at the Sheriff when clearly Appellant states it was the Officers. Judge de La Cruz clearly denied Mr. Seaman's request as she indicated the Sheriff and its Officers are not members of the Judiciary. Mr. Seaman presents his argument in the singular form of only the Sheriff being the "Actor' and none of the Officers are mentioned.

    4.Mr. Seaman presents Imbler v Pachtman 424 U.S. 409 437-440 984, 998-99 47 L. ed.2d 128 (1976) WHICH ONLY RELATES TO PROSECUTORS, not Sheriff's or Officers of the Sheriff Dept. He further states a matter in Pennsylvania wherein the Prothonotary was immune for not filing papers. However, in this case niether cite resembles the causation

26

of actions relative to the instant matter.  This is a State Court Appeal and the mention of a PA case is Not a federal  case relative to the Federal Case which connects all Parties so named in Appellants Federal Matter. Mr. Seaman does not respond to the allegations in any form or presents legal arguments to the cite precedents as submitted by Appellant such as <u>Velez.</u>

    5.Mr. Seaman's additional submissions do not cancel the facts in this case, further more, had Mr. Seaman submitted all the missing documents in discovery than Appellant would view the matter in a different light. Here Mr. Seaman denied discovery, and  distracts the Court to conceal the conduct of the officers and in some form of legal semblance justify the actions of his client for evicting the Appellant to be granted immunity and the Appellant receives nothing.

    In addition Mr. Seaman suggests that due to precedents  which do NOT relate to the instant case, he seeks immunity for the Appellants possession being stolen, his gun being taken by  Sargent Braney and yes it was returned 2 days later, but the court must know that being denied medical attention and the use of a bathroom and denial of protection under the anti eviction act is totally punitive and beyond the granting of Mr. Seaman's present submission.

    6.Mr. Seaman refuses to defend or respond to Appellants submission of Harlow v Fitzgerald,457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) Under Harlow, bare allegations of malice are not sufficient to subject a public employee to broad reaching discovery or trial. The Supreme Court sought to avoid the disruption of effective government cause by litigation thorough resolution on Summary Judgment. It held, therefore, that public official is immune from liability unless ho or she violated a clearly

27

established law of which a reasonable person would have known, 457 U.S.
at 817-818, 102 S. Ct. at 2737-38.

The Sheriff's Officers were aware of the anti-eviction act, the eviction took
place at 10:05 AM may 14, 2014 They Stated that under Orders of Capt.
Edgars "under no certain circumstances is D'Antonio to NOT be evicted"
Further, the Sheriff's Officers and Ms.Egan coerced D'Antonio into signing
the abandonment agreement or be thrown off with out his personal property.
Upon signing of the abandonment agreement Plaintiff was promptly thrown
off the premises"

7.In light of Harlow and its Progeny, Anderson v Creighton, 483 U.S.
635, 107 S. Ct. 3034 97 L. ed. 2d 523(1987), the test becomes whether a
public employee would have reasonably believed that his or her **884
actions were lawful in light of clearly established law [Anti-eviction Act].
[Abandonment of Personal Property] Anderson supra 107 S. Ct. at 3040.
The Law violated must be sufficiently clear that a reasonable public
employee would understand that what he or she is doing.

9.As the Court explained in Mitchell v Forsyth, 472 U.S. 511, 1055
S. Ct. 2806, 86 L. ed. 2d 411 (1985) under the "objective good faith" test of
qualified immunity, the entitlement is an immunity from suit rather than a
mere defense to liability: and like an absolute immunity, it is lost if a case is
erroneously permitted to go to trial. In the instant matter good faith has not
been sustained based on the Judiciary violating this appellants protected
Civil Rights in light of the non actions under those Civil Rights. Appellant
sustained physical injury from improper conduct and lack of objective good
faith. Equally responsible are those Officers of the Sheriff's department who

28

must be terminated. [ The preceding narrative was submitted 9-22-2016 in a Motion before Judge de LA Cruz. The Bergen County Sheriff Michael Saudino saw to the termination retirement or reassignment of all personnel connected with this eviction]

10. In Brill v Guardian Life Ins. Co of America 142 N.J. 520 (1995) Appellant submits the fact that no party has answered the discovery requests, Defendant Bergen County Sheriff's department send a second Notice to Produce which Appellant complied with but Mr. Seaman failed to acknowledge same in writing. This brief may not be denied based on the possibility that discovery may establish the requisite claim: rather, the legal requisites for Plaintiffs claims must be apparent from the complaint itself. NJ Sports Prods. Inc. supra, 405 N.J. Super. at 178, 963 A 2d 890 quoting Edwards v prudential Pro. & gas Co. 357 N.J. Super. 196, 202, 814 A 2d 1115 (App Dic) cert. denied 176 N.J. 278,822 A. 2d 608 (2003)

11.Mr. Seaman seeks immunity after Judge Escalla used documents submitted by Mr. Epstein that were 9 years old to deny staying of the eviction. The service of the Writ is not what this Appellant is suing about. The immunity for stealing my possessions allowing my possession for being stolen, damages and or the coercion by the Sheriff's Officers is not allowed to be immune plus the coercion is a willful act that the Officer knew was not a reasonable act and therefore immunity should be denied. Further that Mr. Seaman does not segregate the variables or levels of violations of acts by his clients but just commingles them and seeks total immunity when none is warranted.

12. The Sheriff's allowed the moving company to leave possession in the garage demand that it be locked so i could not see my possession that

were not being loaded on the trucks. The coercion of sign or be thrown off with out all your possessions is not conduct subject to immunity. Mr. Seaman does not detail the merits and facts for a basis of immunity and therefore must be denied.

13. Mr. Seaman did not include this in his Summary Judgment motion. nor amend same after disclosure of Appellants submission of same before Judge de La Cruz.

14. Quashing the Writ or continuing to serve the Writ are not the basis of claims as stated above.

15. Outrageous Conduct is denial of medical attention and the need to use the bathroom. Further, they allowed Appellant to remove a light fixture and major electric tool but not $20,000.00 worth of appliances of which Ms. Egan further coerced me to sign or be thrown off the property with out my possessions.

16. Outrageous Conduct is allowing a realtor in the premises before the completion of the eviction and allowing the realtor to "Dictate" terms to the Sheriff's Officers as to which possession stay and which can be removed.

17. Claims were not dismissed due to Tort Claim Protection, the Notice of Tort Claim was made properly within the requirements of the law. and were further not required due to the scope and amount of destruction caused by the Sheriff's Officer and the finding of Outrageous Conduct.

18. as to the amount of claim Plaintiff could not determine same due to the damages and what was actually stolen plaintiff want the property return and the Sheriff could have assisted the appellant in the location of the property and who cleaned it out and, who took some of the wood, tools, trains and machines.

30

19. Mr. Seaman is unethical to submit the Tort Claim notice and misstating or making an invalid interpretation subject to his opinion. Mr. Seaman does include this Notice in his Appendix at SDa48

20. Page 20 Mr. Seaman States " to obtain that remedy plaintiff is required to show he had: (a) complied with either R. 1:6-2 (c) (1) by personally conferring with counsel for the Sheriff about outstanding discovery. At SDa20 Mr. Seaman submits Appellant's Certification to resolve issues prior to Summary Judgment. Therefore Mr. Seaman is incorrect and deceives the Court again about facts wherefore Appellant respectfully request denial of Defendants Motion, Brief and supporting documents and grants Appellants application to reverse the lower Courts decision.

31

## REPLY BRIEF TO NETWORK TRUCKING

1. Appellant was coerced to sign all documents regarding the eviction and the abandonment of property and the condition of the property.

2. Appellant signed the paper for Network Trucking and stated some damages will send list.

3. The agreement states that I would not bring suit. However they never offered to make restitution as verbally agreed to.

4. Discovery proves that no contract exists between Retained Realty Emigrant Savings and or the Sheriff's department with Network trucking.

5. They are not entitled to subcontractor protection.

6. The trucks were not lettered or any identification for compliance with DOT regulations.

7. The Bergen Sheriff Officers ordered the employees of Network trucking to stop loading Appellants possessions. and locked me out so I could not retrieve them my self, they changed all the locks.

8. The Owner of network Trucking refused to give the names of the foreman and or any employees.

9. Mr Parmar states that the Network trucking no longer has any foreman and or employees.

10. Appellant request a reversal of the lower Courts decision.

7-20-2018

Michael D'Antonio

32

## TABLE OF CONTENTS

PROCEDURAL HISTORY                                    PAGE 1

CROSS STATEMENT OF COUNTERSTATEMENT OF FACTS          PAGE 8

POINT I FORECLOSURE IS CONTESTED AND ACTIONABLE

    BY STATUTE AND MATERIAL ISSUES OF FACTS          PAGE 9

POINT II MATERIAL ISSUES OF FACTS A RE PRESENT AND

    WARRANT A VACATING OF THE SUMMARY

    JUDGMENT ORDER                                   PAGE 12

POINT III RETAINED REALTY HAS NO LEGAL PRIVITY OR

    CLAIM TO EQUITY CLAIM AND OR JUDGMENT            PAGE 17

POINT IV DEFENDNATS HAVE FAILED TO DENY AND ARE

    SUBJECT TO R. 4:5-5 EFFECT OF FAILURE TO DENY    PAGE 18

REPLY BRIEF TO BERGEN COUNTY SHERIFF DEPTMENT         PAGE 26

REPLY BRIEF TO NETWORK TRUCKING                       PAGE 32

APPENDIX                                              PAGE 33

**APPENDIX REPLY BRIEF 07-24-2018**

**07--2-18 DECISION OF JUDGE CECCHI 2ND PAGE**        **PAGE 378A**

33

is warranted in order to rule on the motions. More specifically, the parties should submit supplemental briefing detailing as to each related state court litigation the: (1) status of each case; (2) case number; (3) judge; (4) procedural posture; (5) brief history of rulings; and (6) if appealed, what has transpired. Moreover, the parties should address, on a count-by-count basis, whether Plaintiffs' claims are barred by any abstention doctrine, including but not limited to the *Rooker-Feldman* and *Younger* abstention doctrines. In so doing, the parties should clearly and succinctly state the factual and legal bases as to why, or why not, the Court must abstain as to each count. Moreover, the parties are not to merely incorporate by reference any portion of their prior filings, nor are they to include any novel arguments in these supplemental briefs. The parties' supplemental briefs are not to exceed ten (10) pages in length.

Accordingly, IT IS on this ⊆ day of ⎽⎽⎽July⎽⎽⎽, 2018,

**ORDERED** that within thirty (30) days of this Order, the parties shall file their supplemental briefs, not to exceed ten (10) pages in length; and it is further

**ORDERED** that the Clerk shall **ADMISTRATIVELY TERMINATE** Defendants' motions to dismiss, (ECF Nos. 173, 174, 176, 177, 179), as well as Plaintiff's motion for default judgment, (ECF No. 191), pending full briefing and a submission by the parties indicating that briefing is complete and requesting that the motions be reinstated.

**SO ORDERED.**

⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽
**CLAIRE C. CECCHI, U.S.D.J.**

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION, CIVIL PART
BERGEN COUNTY, NEW JERSEY
DOCKET NO. BER-L-4562-15
APP. DIV. NO.

MICHAEL A. D'ANTONIO,          )
                               )
        Plaintiff,             )
                               )          TRANSCRIPT
    vs.                        )              of
                               )          MOTIONS HEARING
RETAINED REALTY, INC.,         )
ET AL.,                        )
                               )
        Defendants.            )

                  Place: Bergen County Superior Court
                         Justice Center, 10 Main St.
                         Hackensack, N.J. 07601

                  Date:  September 18, 2015

BEFORE:

    HONORABLE ESTELA M. DE LA CRUZ, J.S.C.

TRANSCRIPT ORDERED BY:

    MICHAEL A. D'ANTONIO (P.O. Box 55, Allendale,
    New Jersey 07401)

APPEARANCES:

    MICHAEL A. D'ANTONIO, PRO SE
    Attorney for the Plaintiff

    RICHARD EPSTEIN, ESQ. (Attorney at Law)
    Attorney for the Defendant

                  Transcriber Dolores Hastings, AD/T 417
                  **APPEALING TRANSCRIPTS INC.**
                  8 Victoria Drive
                  Clark, New Jersey 07066
                  (732) 680-1610 / Fax (732) 680-1615
                  Appealingtrans@gmail.com
                  Digitally Recorded
                  Operator, Patrick O'Connor

2

1              I N D E X

2    Colloquy / Argument:

3                                                Page(s)

4        By Mr. D'Antonio          3,  16,  19,  24,  27,  30,  36

5        By Mr. Epstein                    15,  22,  25,  29,  33

6

7    THE COURT:   Decisions                              37

8    Colloquy                                            40

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1      THE COURT:  Good afternoon, everyone, you can
2  all be seated.  All right, next motion on oral argument
3  involves the complaint filed by Michael A. D'Antonio
4  against Retained Realty, et al., this is Bergen Docket
5  Law Division 4562-15.  Are you Michael D'Antonio?
6      MR. D'ANTONIO:  Yes I am, Your Honor.
7      THE COURT:  Thank you.  And appearance of
8  counsel?
9      MR. EPSTEIN:  Good afternoon, Your Honor,
10  Richard Epstein appearing for Retained Realty, Inc.
11      THE COURT:  All right, thank you, you can all
12  be seated.  And I thank again Mr. D'Antonio and counsel
13  for the situation that occurred on the last motion date
14  that caused the Court to carry this and you to return,
15  so thank you for that courtesy at that late hour.
16      Before the Court are four motions, three
17  filed by Plaintiff, Michael D'Antonio, and one filed by
18  the defendant; Michael D'Antonio's motion to compel
19  discovery filed July 28, 2015, Michael D'Antonio's
20  motion to dismiss, Retained Realty's answer or strike
21  realty -- Retained Realty's answer and compel discovery
22  filed August 11, 2015 and a third motion filed by
23  plaintiff, self-represented Plaintiff Michael D'Antonio
24  on August 24 to amend the complaint.  I also have
25  before me Defendant Retained Realty's cross-motion to

4

1  dismiss filed August 13, 2015.
2      Now let me start with this question, Mr.
3  D'Antonio - did you -- in the motion to amend the
4  complaint did you attach the proposed new amended
5  complaint?
6      MR. D'ANTONIO:  Yes, I did.
7      THE COURT:  All right, because honestly I
8  went through it numerous times and I could not find it,
9  could not discern what document was the proposed new
10  pleading.  What is the exhibit number?
11      MR. D'ANTONIO:  Do you want me to read it
12  complaint by complaint, count by count?
13      THE COURT:  No.  Did you list it as an
14  exhibit number or letter?
15      MR. D'ANTONIO:  No, I filed it as a separate
16  --
17      THE COURT:  You just attached it, right?
18      MR. D'ANTONIO:  No, it was a separate
19  fileing.  I have it here, I have a copy of it.
20      THE COURT:  No, maybe you're not
21  understanding.  I recognize you're -- you're
22  representing yourself so I -- and I -- and you -- I
23  understand, I recognize you're doing the best you can.
24  You filed a motion to amend your complaint on August
25  24, correct?

5

1       MR. D'ANTONIO:  Yes.
2           THE COURT:  And I have before me the batch of
3   papers that you submitted.  All right?  I cannot find -
4   - maybe it's in here, but I looked at least twice if
5   not three times for the proposed new amended complaint
6   and I could not find it.  So did you file it in the
7   papers with your motion to amend the complaint as
8   required by the rule?  That's what my question is.
9           MR. D'ANTONIO:  This is it.
10          THE COURT:  That's it?  All right.  Can my
11  law clerk go down and get it from Mr. D'Antonio?  Let
12  me see.
13                      (Pause)
14          THE COURT:  You -- you filed -- along with
15  the notice of motion to amend the complaint you filed
16  very other -- various other documents from a prior
17  foreclosure that was eventually decided by Judge Peter
18  Doyne.  Correct?
19          MR. D'ANTONIO:  Yes.
20          THE COURT:  And you in fact attached an
21  Appellate Division decision, so all of this you
22  attached.  I do not see the amended complaint filed
23  here, in fact the motion for the amended complaint is
24  dated -- it was filed on August 24.  The document that
25  you say is the new proposed amended complaint is

6

1   stamped filed August 11th.  So I don't understand how
2   you can have a motion to amend the complaint filed
3   August 24 but then submit the proposed new amended
4   pleading that pre-dates the motion to do it.
5           MR. D'ANTONIO:  Jamie B. had a concern about
6   the form of that amended complaint.
7           THE COURT:  Can you move the microphone
8   closer to you?
9           MR. D'ANTONIO:  Jamie B. had a --
10          THE COURT:  Let me just stop you.  Jamie B?
11  Who is that?
12          MR. D'ANTONIO:  He's a clerk in the clerk's
13  office, he's one of the --
14          THE COURT:  I have no idea, maybe you know
15  these people more than I do.
16          MR. D'ANTONIO:  And he contacted me and said
17  that it would not be received as I submitted it and
18  that I had to re-file it and pay a fee.  So I re-typed
19  it, sent it in and paid the fee.
20          THE COURT:  All right.  So the point is, when
21  this motion was filed August 24 you did -- did you or
22  did -- I don't have the amended complaint attached to
23  it is my point.
24          MR. D'ANTONIO:  Can I submit it to you?  I'll
25  look at it later and --

7

```
 1            THE COURT:  Well, that's one of the issues
 2   before me right now, the motion to amend the complaint
 3   which I could not find the proposed new amended
 4   complaint attached.  And furthermore, it appears that
 5   you've attached all of these three documents related to
 6   the foreclosure action which Judge Doyne decided and
 7   then it went on to the sale, correct?  By the sheriffs?
 8            MR. D'ANTONIO:  Correct.
 9            THE COURT:  All right.  And what's the point
10   of attaching all of that?  Because this feels like --
11   reading this I feel like I'm Judge Doyne doing that
12   case all over again.
13            MR. D'ANTONIO:  It was a mistrial in that
14   there was no verbatim record made.  And Judge Doyne
15   denied me the presence of counsel, Mr. Maycher died.
16   He allowed me to represent myself.
17            THE COURT:  Dennis Maycher died, passed away
18   October of 2012.  Judge Doyne decided that case in
19   December of 2012.
20            MR. D'ANTONIO:  And I -- when this case came
21   up Judge Doyne did not -- denied me the right to get
22   another attorney.  I asked for an adjournment and he
23   allowed me to represent the corporation, plus there was
24   no verbatim record made.
25            THE COURT:  What do you mean there was no
```

8

```
 1   verbatim record made?
 2            MR. D'ANTONIO:  He did not turn on the
 3   recorder and I did not know that that's not allowed;
 4   that's part of the process of civil process, is having
 5   a verbatim record.  What was discussed at that meeting
 6   was --
 7            THE COURT:  Sir, sir, sir, on this motion to
 8   amend did you supply -- also submit a certification --
 9            MR. D'ANTONIO:  Yes.
10            THE COURT:  -- explaining your reasons?
11            MR. D'ANTONIO:  Yes.
12            THE COURT:  To this motion?
13            MR. D'ANTONIO:  I feel that I'm entitled to a
14   mistrial and I'd like to have the aspects of a novation
15   re-heard.  I went into detail in explaining the
16   novation and if I, you know, want -- if you want me to
17   resubmit it I'll resubmit it and if you want further
18   explanation I'll be happy to explain it.  I have a copy
19   of a draft of the amended complaint and it speaks of
20   what happened in detail, what Judge Doyne did and I'm
21   seeking to have that re-argued.  If Mr. Epstein can
22   reopen or Retained Realty can reopen the foreclosure
23   case and sued Calm Development I feel that I can reopen
24   the case and go over the issues that denied me my basic
25   civil rights during a trial.  I had no record, I
```

**9**

```
 1    couldn't appeal it, I was denied counsel and I had no
 2    time to present or review the documents.
 3              THE COURT:  Judge Doyne issued an 8 page
 4    decision on December 7, 2012.  Did you receive that
 5    back in December of 2012?
 6              MR. D'ANTONIO:  That decision did not conform
 7    with what was spoken about.  During the hearing Judge
 8    Doyne did not mention the word novation once and I have
 9    no way to prove it, there's no record.  So if there's
10    no record it has to be deemed a mistrial.
11              THE COURT:  Judge Doyne issued a decision, an
12    order December 7 along with the decision.
13              MR. D'ANTONIO:  Correct.
14              THE COURT:  Did you receive those -- that
15    order and the decision?
16              MR. D'ANTONIO:  Yes, I did.
17              THE COURT:  So those were his reasons for
18    entering the order on December 7th?  You understood at
19    least that much?
20              MR. D'ANTONIO:  Yes.
21              THE COURT:  You --
22              MR. D'ANTONIO:  I -- I tried to get an
23    attorney, Mr. Carter, to argue that, Mr. Carter refused
24    to argue that.  I have no choice but to try to do it
25    myself now.
```

**10**

```
 1              THE COURT:  What do you mean Mr. Carter
 2    refused?  Someone declined your request to represent
 3    you?
 4              MR. D'ANTONIO:  Mr. Capazzi was handling the
 5    bankruptcy and the foreclosure, Mr. Capazzi decided to
 6    do something and was incarcerated, he violated 52 of
 7    his clients.  My files were taken from me.
 8              THE COURT:  He -- I'm sorry?
 9              MR. D'ANTONIO:  Mr. Capazzi was arrested for
10    violation of client fund protection.  He took 52 -- he
11    took $1.6 million of his clients' money, including
12    mine, and he took my files.  I had no way to present
13    any evidence that Mr. Capazzi had sequestered.  Dennis
14    Maycher had passed, his files were in disarray.  Mr.
15    Carter took over the case and there was a document that
16    was to be filed which he refused to file.  We found a
17    way to pay the bank and he refused to submit it.  I have
18    no choice but to request that the Court find a
19    mistrial.  If the Court has the authority to --
20              THE COURT:  You mean this Court, me?  Enter a
21    mistrial on Judge Doyne --
22              MR. D'ANTONIO:  You, yes.
23              THE COURT:  -- from 2012?
24              MR. D'ANTONIO:  Yes.
25              THE COURT:  Based on what rule or legal
```

11

1   authority can I do that and reverse Judge Doyne --
2           MR. D'ANTONIO:  Based upon --
3           THE COURT:  -- not to mention this at this
4   point.
5           MR. D'ANTONIO:  There was no record made,
6   there was a novation.  The discovery that I'm asking
7   here will prove that they received checks from a
8   foreign entity and under novation, which is a language
9   in the law, Office of Administrative Law, Title 15,
10  Chapter 45, if there's a foreign party that enters into
11  a contract without the written consent and approval of
12  all parties, by operation of law that contract is
13  automatically discharged.
14          THE COURT:  Mr. D'Antonio, Judge Doyne states
15  in his decision at page 7 from December 7, 2012, in the
16  foreclosure action under Docket F-47234-09, Judge Doyne
17  held at page 7,
18          "D'Antonio's current opposition to the final
19  judgment which comes more than two years after granting
20  of summary judgment in this matter is not reasonably
21  timely within the purview of Rule 4:50-2.  Defendant
22  has not provided sufficient reason why the instant case
23  should be further delayed.  This foreclosure action has
24  continued for over three years and defendant has
25  already had the opportunity to provide his defense and

12

1   counterclaims which were subsequently stricken by the
2   Court.  Defendant merely argues that an adjournment
3   should be granted because his previous counsel has
4   passed away however, there is not sufficient cause to
5   grant defendant's request, especially considering that
6   the defendant has had ample opportunity to litigate
7   this matter, has been represented by counsel when
8   summary judgment was granted.  Counsel had failed to
9   oppose the February 2012 application and the defendant
10  has had a reasonable opportunity to obtain new
11  counsel."
12          The -- the judge also noted in that decision,
13  recognized in that decision in the very page in
14  footnote one that,
15          "Defendant's prior attorney, Dennis Maycher,
16  Esquire passed way on October 8, 2012.  A firm by the
17  name of Bittiger Triolo P.C. is now located at
18  Maycher's previous office in Garfield, New Jersey.  A
19  phone call to the firm revealed that Bittiger Triolo
20  P.C. took over as counsel for some of Maycher's clients
21  but not for D'Antonio.  An attorney at the firm stated
22  the firm has -- was in no position to represent
23  D'Antonio.  The extent of Bittiger Triolo's
24  professional duty to represent D'Antonio is determined
25  herein.  Further, at oral argument D'Antonio indicated

13

1   for the first time that he has retained counsel.
2   Accordingly, his request for a three month adjournment
3   is problematic.  The lawyer who has been apparently
4   retained has not contacted the Court."
5           So all of these issues that you're raising
6   now as having been ignored by Judge Doyne or not ruled
7   correctly were fully addressed in his decision of
8   December 7, 2012.
9           MR. D'ANTONIO:  Addressed in the letter but
10  it wasn't addressed in --
11          THE COURT:  In this decision and order of
12  December 7th is what I'm saying.  I just read from the
13  decision.
14          MR. D'ANTONIO:  I know that, but that wasn't
15  what was said.  He wrote that after the hearing.  I had
16  Mr. Capazzi retained, Mr. Capazzi is now incarcerated.
17  There were four adjournments by Mr. Capazzi recognized
18  by the sheriff's department.  Mr. Epstein never made a
19  fifth notice to Mr. Capazzi or myself and reached the
20  sheriff's department to grant the deed, the sale of the
21  property.  Mr. Epstein did not give us notice of that
22  until the appeal time had passed.  We then recognized,
23  because the tenants came and said we're not paying you
24  rent anymore, Retained Realty is now the owner, I
25  immediately went to Mr. Capazzi; Mr. Capazzi said they

14

1   can't do this, Mr. Capazzi filed an appeal with Judge
2   Toskos, Judge Toskos ruled against it because we didn't
3   have enough documents.  So they --
4           THE COURT:  Mr. D'Antonio, this decision of
5   Judge Doyne is dated December 7, 2012 and I thought a
6   few minutes ago you acknowledged that you had received
7   it sometime in December, by the end of the year 2012,
8   correct?
9           MR. D'ANTONIO:  Yes.
10          THE COURT:  We're in September of 2015.  Have
11  you filed any appeal on Judge Doyne's decision and
12  order of December 7, 2012 before right now?
13          MR. D'ANTONIO:  No, we could not because
14  there was no record, you have to have a transcript.
15          THE COURT:  You have a filed order and a
16  decision setting forth the reasons as required by rule
17  for entering that order.
18          MR. D'ANTONIO:  According to Mr. Capazzi and
19  Mr. Carter they said that because there was no
20  transcript made you can't file an appeal.
21          THE COURT:  Okay.  Was there any application
22  to the Court to obtain that record or transcript or any
23  appellate application indicating that there would be no
24  transcript submitted because it didn't exist?
25          MR. D'ANTONIO:  I did not make that.  There -

15

```
1        -
2               THE COURT:  Was there any movement on -- on
3   this issue before this motion now to amend the
4   complaint on the issue of Judge Doyne's December --
5               MR. D'ANTONIO:  There were issues made by Mr.
6   Capazzi and by Mr. Carter before Judge Escala and Judge
7   Toskos, both which were denied.
8               THE COURT:  Okay.
9               MR. D'ANTONIO:  There was no record, there is
10  not record, he didn't make one.
11              THE COURT:  Let me hear from -- on this
12  limited issue, because there are four motions, from
13  defense counsel, Mr. Epstein.  You were -- you were
14  involved in that prior litigation?
15              MR. EPSTEIN:  Yes, Your Honor, I handled the
16  foreclosure for Emigrant Mortgage Company.
17              THE COURT:  Right.  You're stating the
18  obvious and I want to just lay it out.
19              MR. EPSTEIN:  That is correct.
20              THE COURT:  And are you aware of this
21  situation that Plaintiff D'Antonio, Mr. D'Antonio
22  describes as -- you know, that there is no transcript
23  or recording of that prior proceeding?
24              MR. EPSTEIN:  Your Honor, I -- I've never
25  heard of that before.  He put some indication he wanted
```

16

```
1   transcripts from me in some of his discovery requests,
2   but this is the first time I'm hearing what that's all
3   about.  But I would indicate one other thing, Your
4   Honor - the novation argument that he's relying on was
5   disposed of by Judge Doyne on the motion for summary
6   judgment in 2010 when Dennis Maycher was representing
7   Mr. D'Antonio and Calm Development.  Specifically I
8   believe in page -- at page 16 of Judge Doyne's summary
9   judgment decision dated December 7th of 2010 and it
10  says six --
11              "Defendant's sixth argument - finally
12  defendants assert that a novation occurred when
13  plaintiff accepted payments from," et cetera, et
14  cetera.
15              So the novation was disposed of in 2010 when
16  -- when the defendants in the foreclosure were
17  represented by counsel, not in 2012 at this hearing
18  where he's alleging that no transcript was made.  I
19  just wanted to clarify that for the Court because it's
20  an important point.
21              MR. D'ANTONIO:  May I speak?
22              THE COURT:  Yes.
23              MR. D'ANTONIO:  There was a hearing and I was
24  denied access, it was held in judge's chambers.  This
25  attorney and Mr. Maycher and Judge Doyne had a hearing
```

17

1   without my presence.  There was no formal hearing,
2   there was no record made as to what Mr. Epstein just
3   testified to.  My attorney came out and said the judge
4   doesn't buy your novation argument and I said I wanted
5   to go through the trial.  Under Rule 4:50 at any time I
6   have the right to bring new evidence to sustain that
7   something should be changed.
8           THE COURT:  Sir, what language in Rule 4:50
9   says you can bring an application at any time?
10          MR. D'ANTONIO:  I don't have the rule with
11  me, I believe in the presence of new evidence.  If
12  there's no transcript made, and I requested that in
13  discovery because if he has the transcript, if he knows
14  there's a transcript, he made transcripts of every
15  other proceeding, so I asked for that in this discovery
16  and he refused to give it to me.  So if there's no
17  discovery that means there was no formal
18  (indiscernible) and that's constitutionally
19  (indiscernible).
20          THE COURT:  Mr. Epstein, that 2010 decision
21  from Judge Doyne, what exhibit is this in this mass
22  array of papers submitted?
23          MR. EPSTEIN:  I filed a certification, Your
24  Honor, dated September 10th and attached -- it's near
25  the -- near the end, there's a 16 page decision by

18

1   Judge Doyne, it's actually an 18 page decision by Judge
2   Doyne, it's September 8th of 2010.  Would Your Honor
3   like to see my copy of it?
4           THE COURT:  No, I have it, thank you.
5           MR. EPSTEIN:  Your Honor, I have no idea what
6   Mr. D'Antonio is talking about, that I have transcripts
7   of proceedings.  The only transcript I have is of a
8   deposition which I had gotten.  I have no transcripts
9   of any other proceedings.  And I would also indicate to
10  Your Honor that although my memory is not as great as
11  it used to be, I believe, and I am certain that the
12  motion for summary judgment was argued before Judge
13  Doyne with Mr. Maycher in attendance and myself in open
14  court, not in some chambers.
15          THE COURT:  Well, Judge Doyne's order of
16  September 8, 2010, which is --
17          MR. EPSTEIN:  That's the order granting
18  summary judgment.
19          THE COURT:  Which is attached to your papers
20  and certification, Mr. Epstein, dated September 10,
21  2015.  Judge Doyne's order dated September 8, 2010
22  indicates that in the introductory paragraph of that
23  order that,
24          "It appearing to the Court that due notice of
25  the motion having been given to said defendants and all

19

```
 1      counsel of record and oral argument having been
 2      conducted and the Court having considered the matter,"
 3      -- then he went on to enter the order.
 4                  MR. EPSTEIN:  That's correct.
 5                  THE COURT:  Were you present when -- or --
 6      and -- actually you were.
 7                  MR. EPSTEIN:  Yes.
 8                  THE COURT:  It's your form of order that
 9      Judge Doyne signed?
10                  MR. EPSTEIN:  Yes, that was -- that was the
11      oral argument of the motion for summary judgment with
12      Mr. Maycher in attendance.  Mr. Maycher filed
13      opposition papers, he raised the issue of novation and
14      on page 16 Judge Doyne rejected that argument.
15                  THE COURT:  Last word on this, Mr. D'Antonio?
16      Go ahead.
17                  MR. D'ANTONIO:  Could we have a continuance
18      on this one issue and I will apply to the transcription
19      office --
20                  THE COURT:  Just one second.  What do you
21      mean by can we have a continuance?
22                  MR. D'ANTONIO:  Could we not decide the
23      amended complaint motion now and I'll ask
24      transcription to give us a copy of that transcript of
25      that hearing and see if there's one that can be made.
```

20

```
 1      If there's no transcript I didn't have --
 2                  THE COURT:  Well, let me ask you again, from
 3      the 2010 decision Judge Doyne, based on that, and he
 4      entered a 2012 decision on the foreclosure, he
 5      referenced the summary judgment having been granted on
 6      September 8, 2010 and he mentioned in his 2012 decision
 7      on the foreclosure matter that there was no appeal or
 8      no -- there was no -- the -- the decision of -- on
 9      summary judgment entered on September 8, 2012 had not
10      been appealed or modified in any way.
11                  MR. D'ANTONIO:  Judge Doyne --
12                  THE COURT:  So what -- what -- what would it
13      serve to get transcripts or find out that there weren't
14      transcripts?
15                  MR. D'ANTONIO:  Judge Doyne was Judge
16      Maycher's law clerk.  Judge Doyne took Mr. Maycher and
17      Mr. Epstein and there was no formal hearing as to that
18      aspect.  There has to be a --
19                  THE COURT:  What are you insinuating?  That
20      Mr. Maycher, may he rest in peace, was Judge Doyne's
21      law clerk?
22                  MR. D'ANTONIO:  That's the relationship that
23      they had and when he came out there was no hearing,
24      there was no trial, there was no record, I'm entitled
25      to that.
```

1    THE COURT:  But Mr. Maycher was your
2    attorney.
3        MR. D'ANTONIO:  Correct.
4        THE COURT:  Did you go away?  Did you walk
5    away?  Did you leave court with Mr. Maycher and follow
6    his direction until the day he died?
7        MR. D'ANTONIO:  No.  There was a discord and
8    he explained to me what do you want me to do, that's
9    the judge's ruling.  I said we didn't have a hearing
10   and he was in the process, we spoke about it, certain
11   things happened and it got put aside.  The chronology,
12   the timing and so on I don't have in front of me, but
13   Mr. Maycher so to speak laid down on the issue.  If
14   there was no formal hearing, no trial, no record I'm
15   entitled to a mistrial and a re-hearing.
16       THE COURT:  But didn't Mr. Maycher represent
17   you through 2012 until he died?  That appears to be
18   what Judge Doyne is saying in the December 7, 2012
19   decision, indicating that Mr. Maycher died on October
20   8, 2012 and that thereafter the new law firm that took
21   over his practice, Mr. Maycher's practice, did not
22   continue to represent you.
23       MR. D'ANTONIO:  But I didn't know the rule
24   and I found out the rule after.
25       THE COURT:  You didn't know what rule?

1    MR. D'ANTONIO:  That there has to be a
2    verbatim record.  If there's no verbatim record that's
3    a mistrial.  And since I lost Mr. Maycher and I lost
4    Mr. Capazzi and Mr. Carter refused to do as I asked, I
5    have to take it upon myself because they're arguing
6    over facts.  Mr. Epstein, how does it hurt his client
7    if a novation is declared?  He gets paid in full, he
8    gets $815,000, not $600,000 if he's lucky.  So what I'm
9    asking for is beneficial, it's a balance of equities in
10   his favor, so there should be no argument.  The bank
11   has to have error and omission insurance and it's an
12   error on their part for taking the checks from a
13   foreign company.  There's no harm if -- if there is a
14   novation they get paid $215,000 more, there should be
15   no opposition.  The fact that there was something done
16   in irregularity, I'm still willing to pay and they'll
17   get, you know, -- so I don't understand why there's
18   opposition, he's getting paid in full, $200,000 more.
19       THE COURT:  Anything else, Mr. Epstein?
20       MR. EPSTEIN:  Real quickly, Your Honor.  He's
21   trying to open up the foreclosure action in this case
22   three years after the final judgment was entered, --
23       THE COURT:  Just be --
24       MR. EPSTEIN:  -- five years after the motion
25   for summary judgment was granted.  I's absurd, it's

23

1   absurd because he says there's no transcripts, there's
2   nothing proving any -- even if there were any
3   transcripts he's still well out of time.  This is a
4   classic case of a -- of a disgruntled borrower who's
5   lost property, unwilling to move on.  The bank owns the
6   property, Retained Realty owns the property,
7   foreclosure is over, times to appeal are over and he's
8   trying to re-litigate the foreclosure case when all
9   these issues have been decided and he's been
10  represented by numerous attorneys throughout the case.
11  There were also two bankruptcy cases where he tried to
12  basically undue the sheriff's sale, Your Honor.  This -
13  - this -- all I could say is this is absurd, Your
14  Honor, he's trying to re-litigate something that was
15  decided years ago.
16              THE COURT:  All right.  Now what discovery on
17  your first two motions, Mr. D'Antonio, to compel
18  discovery and/or to dismiss the -- or strike the
19  defendant's answer are still missing --
20              MR. D'ANTONIO:  All --
21              THE COURT:  -- from this litigation?
22              MR. D'ANTONIO:  May I respond to what he just
23  said?
24              THE COURT:  No, I -- I have heard enough
25  about that issue.

24

1               MR. D'ANTONIO:  Okay.  All of it.  I think
2   the interrogatories and requests for the documents, and
3   he states that he will give what he believes is
4   relevant to the case, I have objection with that.  He
5   doesn't know the presence of my mind so he can't state
6   what is relevant and not.  He reopened up the
7   foreclosure case and so I responded by asking for a
8   mistrial.  None of the discovery --
9               THE COURT:  I -- I -- I did not -- I did not
10  -- I heard what you said, I do not -- do not understand
11  your point.  He, meaning Mr. -- Defense Counsel
12  Epstein, reopened the foreclosure case?
13              MR. D'ANTONIO:  Yes.  He filed --
14              THE COURT:  He opened the door you mean?
15              MR. D'ANTONIO:  He filed against Calm
16  Development under the foreclosure docket.  He filed a
17  third-party complaint seeking $11,000, the case is over
18  three years.  When you settle you settle.  He got the
19  equity, now he wants $11,000 more and he falsifies the
20  amounts of money and is out of time so I can do the
21  same thing.  He's suing --
22              THE COURT:  You're referring to the Retained
23  Realty's --
24              MR. D'ANTONIO:  Retained Realty's --
25              THE COURT:  -- third-party complaint against

25

1   Calm Development?
2                   MR. D'ANTONIO:   Correct, that's re-opening
3   the foreclosure.
4                   THE COURT:   Well how is that re-opening the
5   foreclosure, Mr. D'Antonio?
6                   MR. D'ANTONIO:   The amounts of money would be
7   revenues that were supposed to be collected during the
8   foreclosure.
9                   THE COURT:   Without giving -- without giving
10  any deep analysis to the defendant third-party
11  plaintiff's pleadings I can take a wild guess and say
12  that they brought in Calm Development because the
13  certification of the owner, the president of Retained
14  Realty, certifies that Retained Realty hired Calm
15  Development -- one second, one second.
16                  MR. EPSTEIN:   What (indiscernible) is the --
17  is the --
18                  THE COURT:   One second, one second.   What is
19  the purpose for the third-party complaint against Calm
20  Development?
21                  MR. EPSTEIN:   It's also part of the
22  counterclaim against Mr. D'Antonio, Your Honor.   A
23  security deposit that was received by Mr. D'Antonio of
24  Calm Development which was not turned over to us, under
25  statute it has to be.   Also, after the sheriff's sale

26

1   took place and Retained Realty owned the property Mr.
2   D'Antonio and Calm Development received rents from the
3   tenant at the property.   This is all after the
4   foreclosure action.   So we're seeking the return of the
5   rents that he took improperly that belonged to Retained
6   Realty once we had title to the property and we're
7   seeking the security deposit which we're required to
8   return to the tenant.   None of those issues could have
9   been dealt with during the foreclosure because you
10  don't know who was going to own the property until the
11  sheriff's sale took place.
12                  THE COURT:   And just repeat again the claims
13  --
14                  MR. EPSTEIN:   The security deposit.
15                  THE COURT:   -- informally against Calm
16  Development.
17                  MR. EPSTEIN:   Calm Development was the owner
18  of the property.   We're not sure who received the
19  security deposit, it was either Calm Development or Mr.
20  D'Antonio who was the director of Calm Development.   So
21  we brought in Calm Development because if sued -- if we
22  just counterclaim Mr. D'Antonio is going to say it's a
23  corporation, I'm not corporation, I never got the
24  security deposit, Calm Development did.
25                  THE COURT:   Okay.   And what discovery to you

1  say, Mr. D'Antonio, is missing?  Thank you, Mr.
2  Epstein.
3           MR. EPSTEIN:  You're welcome.
4           MR. D'ANTONIO:  All of it.
5           THE COURT:  All of it?
6           MR. D'ANTONIO:  He hasn't answered any, he
7  hasn't produced the photographs.  When they evict you
8  they take photographs of your furniture.  The first
9  motion is regarding damages, being wrongfully evicted
10  in the presence of the Anti-Eviction Act.
11           Some of the things that he just stated, may I
12  counter?  May I speak to that?
13           THE COURT:  Counter for what?  That he just
14  described the chain the pleadings to explain them as I
15  had questioned --
16           MR. D'ANTONIO:  Okay.  He said that Calm
17  Development may have or Mr. D'Antonio may have the
18  security.  He has a copy of the lease, we need to go
19  over it.  He sees that it's a Calm Development lease,
20  Michael D'Antonio doesn't have the money, he sees that
21  the Cristians (phonetic) paid no March rent and he's
22  suing for March rent, he sees that they damaged the
23  property.  And he was given an explanation that that
24  money was used to reopen the bankruptcy, so there is no
25  money.  And he states that he didn't have the

1  opportunity to go for it in the foreclosure.  When you
2  file for foreclosure you file for the assets that are
3  in the note and part of what's in the note is the
4  assets of Calm Development which would be the security.
5           When you take over someone's rental position
6  if you take over the asset of the lease the security
7  should be requested; he didn't do it, it's not in the
8  judge's order -- Judge Doyne's order.  And the amounts
9  that he's asking for don't correlate.  When you go to a
10  foreclosure and you get a deed from the sheriff's
11  department you're supposed to (indiscernible) notice.
12  He purposely delayed so that the appeals process would
13  pass.  Notice didn't come.  He received the deed
14  December 6th of 2013 and the first notice was March 7,
15  2014 when the tenants came to me with the papers and
16  said you don't own the house anymore.  So the two prior
17  months that he's suing for were dissipated, Calm
18  Development paid the bills with it and the tenants paid
19  -- didn't pay the bank and the tenants left the
20  following month.  So he's asking for monies that a) I
21  don't have, Calm Development is closed, and that the
22  tenants didn't pay him either.
23           THE COURT:  Okay.  Mr. Epstein, have you
24  provided any discovery related to the request that
25  plaintiff complains that have -- remain unanswered?

1      MR. EPSTEIN: No I have not, Your Honor. I
2 indicated to him that I would respond to those issues,
3 to those interrogatories dealing specifically with his
4 claim as to the damage to his personal property on the
5 eviction. His interrogatories wants escrow accounting
6 from the foreclosure, he wanted this transcript, he
7 wanted information as to the listing agreement that we
8 have to sell the property, none of his business,
9 Retained Realty owns the property. I have indicated to
10 him and I indicated in my responsive papers I have no
11 problem providing discovery relating to the eviction
12 issues vis-a-vis damage to his property, our
13 relationship with Network Trucking, the photos, any
14 photos that are in Network Trucking's possession, I
15 believe I received copies, I don't have a problem with
16 providing those. But it was very clear to me that his
17 interrogatories, and there's interrogatories, there's
18 e-mails for requesting information, went far beyond the
19 scope of this very narrow issue of damage to personal
20 property during the eviction. So I was not going to
21 just provide that because we'll be standing before Your
22 Honor in any event dealing with that. I have no
23 problem providing it to him in 30 days. If however,
24 the complaint is dismissed against Retained Realty
25 under the independent contractor rule then there will

1 be no need to provide discovery as to that.
2      THE COURT: Okay.
3      MR. D'ANTONIO: We would have to discuss what
4 is the damages and what he feels is relevant. In the
5 presence of Judge Escala's order, Judge Escala
6 overrules Judge Harris's order where I'm required to
7 have a lease, that was submitted to Your Honor. So he
8 submits a partial transcript to Judge Escala where I
9 stated no, there is no written lease in two thousand
10 and -- in the year 2000. Ten years later there is a
11 written lease which he has a copy of and he
12 misrepresents to Judge Escala that there is no lease
13 and uses the portion of the transcript which was from
14 2000. So Judge Escala's order violates the Anti-
15 Eviction Act. The sheriff's department already evicted
16 me at 10:01 and at 1:30 Mr. Epstein had a telephone
17 conference with the judge and he misrepresented that
18 fact.
19      THE COURT: Mr. -- Mr. Dagostino [sic] --
20 D'Antonio, were any of these prior orders ever
21 appealed?
22      MR. D'ANTONIO: No.
23      THE COURT: No? All right, then please --
24 please stop talking about things, events, orders, court
25 orders that occurred years ago that you say now were

31

```
1    wrong and I should undue.
2              MR. D'ANTONIO:  It's one year old, Judge --
3    Judge Escala's order.
4              THE COURT:  Where is that?  Is that in the
5    papers?
6              MR. D'ANTONIO:  Yes it is, and it's -- I seek
7    that -- that portion.  Based on the discovery that he's
8    going to give me, I would be able to give the Court a
9    clearer picture.
10             THE COURT:  You seek what?  When you say you
11   seek that, I --
12             MR. D'ANTONIO:  I want repossession of the
13   property because he falsified a submission -- a
14   submission to Judge Escala.  He told the judge there
15   wasn't a lease.  How do -- I mean that issue is one
16   year old.  So he falsified his submission to Judge
17   Escala stating that there was no written lease, I have
18   a written lease.
19             THE COURT:  Have you appealed Judge Escala's
20   order?
21             MR. D'ANTONIO:  No, I did not.
22             THE COURT:  So how -- I am not the Appellate
23   Division for Judge Escala.  If you have a criticism of
24   a court order you're fully entitled to file it with the
25   Appellate Division or request reconsideration from that
```

32

```
1    very judge, the same judge that entered the -- the
2    order or ruling.
3              MR. D'ANTONIO:  I couldn't get my papers in
4    time because I asked the sheriff's department not to
5    touch my office and my bedroom.  They took everything
6    and just dumped everything in a box, I could not get my
7    possessions until after the period to appeal.  They
8    were not to touch it; I had no clothing for two months,
9    we couldn't find anything, so I ask the Court some
10   latitude in that.
11             THE COURT:  So two months and this is a year
12   ago that this happened?
13             MR. D'ANTONIO:  No, no, it was six months
14   that I couldn't -- till I got my papers, so I'm six
15   months past that.  But in that he reopens the
16   foreclosure don't I have standing to address the issue
17   before the Court?
18             THE COURT:  I don't see that defendant has
19   reopened the foreclosure -- foreclosure -- foreclosure
20   proceeding.  I do not see that, no.
21             MR. D'ANTONIO:  Well, he's asking for $11,000
22   in fines which (indiscernible) foreclosure
23   (indiscernible).  He says that that doesn't take place
24   until you know who's going to own it.  Retained Realty
25   is the one who made the process, Retained Realty is the
```

33

```
 1    one that caused the sheriff's sale to issue a deed when
 2    they knew that the property was protected by
 3    bankruptcy.  They gave four adjournments for the
 4    sheriff's sale and then Mr. Epstein did not send a
 5    fifth notice to either Mr. Capazzi or myself.  So he
 6    waited two months after he had possession of the deed
 7    to send the notice to the tenants.
 8           MR. EPSTEIN:  Your Honor, I'll make it brief.
 9    Mark Carter represented Mr. D'Antonio on the order to
10    show cause opposing the eviction.  Mr. Carter was
11    present I believe during the oral argument of that on
12    the morning of the decision when Judge Escala denied
13    the application.
14           There was a lease that was turned over that
15    was presented, it was an eight year lease between Calm
16    Development and Mr. D'Antonio, Mr. D'Antonio was the
17    director of Calm Development, at well below market
18    rent. If you look at the first exhibit, the first order
19    attached to my certification you can see Judge Escala's
20    handwritten --
21           THE COURT:  What certification?  Dated?
22           MR. EPSTEIN:  My certification dated
23    September 10th, the certification in opposition to
24    plaintiff's motion to amend.
25           THE COURT:  One second.
```

34

```
 1           MR. EPSTEIN:  It's the same certification
 2    with Judge Doyne's summary judgment order, it's the
 3    first order attached after my signature page.
 4           THE COURT:  All right, I have it.
 5           MR. EPSTEIN:  And it says, this is Judge
 6    Escala's handwriting,
 7           "Lease offered by defendant is a sham lease
 8    made by corporation of which defendant is director to
 9    himself.  Rent appears to be below market."
10           So there was a lease present.  Mr. Carter was
11    arguing the case for Mr. D'Antonio at the point, at
12    that point.  So he was represented by counsel, no
13    appeal was filed from that order, the eviction that
14    morning -- that afternoon.
15           THE COURT:  The order itself says he's pro
16    se.
17           MR. D'ANTONIO:  Thank you.
18           MR. EPSTEIN:  Mark Carter filed paperwork.
19           THE COURT:  Well the order says he's --
20    D'Antonio is pro se.
21           MR. EPSTEIN:  Okay.  It may -- maybe Mr.
22    Carter didn't show up at the argument then.
23           THE COURT:  Well, that doesn't qualify as
24    someone pro se, that the attorney doesn't show up.
25           MR. EPSTEIN:  Looking at a letter of May 5th
```