NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL A. D'ANTONIO,<br><br>                    Plaintiff,<br><br>          v.<br><br>BOROUGH OF ALLENDALE, *et al.*,<br><br>                    Defendants. | Civil Action No.: 16-cv-816<br><br><br>**OPINION** |

**CECCHI, District Judge.**

This matter comes before the Court on Motions to Dismiss *pro se*[1] Plaintiff Michael A. D'Antonio's ("Plaintiff" or "D'Antonio") Third Amended Complaint (ECF No. 296 "TAC") filed by defendants: (1) Borough of Allendale (the "Borough"), David Bole, Mary McDonnell, David Pfund, and Stiles Thomas (ECF No. 265) (together, the "Borough Defendants"); (2) Richard Epstein (ECF No. 301); (3) Passaic River Coalition (ECF No. 302); (4) Bergen County Sheriff's Office (improperly pleaded as "Bergen County Sheriff's Department") (ECF No. 308; ECF No. 308-2 at 1) ("Bergen County Sheriff"); and (5) John Albohm (ECF No. 324).[2]  Plaintiff opposed Defendants' motions (ECF Nos. 274, 307, 311, 316–18, 320, and 329), and the Borough Defendants, Epstein, and the Bergen County Sheriff replied.  ECF Nos. 310, 312, 314.  The Court decides this matter without oral argument pursuant to Fed. R. Civ. P. 78(b).  For the reasons set forth below, the Court grants Defendants' Motions to Dismiss the TAC.

---

[1] The Court is mindful of Plaintiff's *pro se* status, and as such, has construed the TAC liberally and "made every reasonable effort to decipher [Plaintiff's allegations]."  *Martino v. Everhome Mortg.*, No. 09-11, 2009 WL 5206237, at *1 (D.N.J. Dec. 21, 2009), *aff'd*, 411 F. App'x 508 (3d Cir. 2010).

[2] The Court will collectively refer to all of the defendants listed above as "Defendants."

I.    **BACKGROUND**

   a.  **Factual Background**

This action, which has been preceded by numerous state court litigations regarding the same issues, is based on Plaintiff's asserted belief that Defendants interfered with his use and development of a tract of land located in the Borough, and ultimately evicted him from the property. While the TAC is often difficult to understand and fails to comport with Rule 8 of the Federal Rules of Civil Procedure, the factual allegations relevant to this decision are included below. In addition, the Court relies upon its previous Opinions and Orders (ECF Nos. 80, 259), as well as public records submitted by the parties to provide a factual background for this Opinion. *See Mayer v. Belichick*, 605 F. 3d 223, 230 (3d Cir. 2010).

The property at issue in this litigation is located at 316 E. Allendale Avenue, Allendale, New Jersey (the "Subject Property"). TAC at ¶ 1. The Subject Property was owned by Calm Development, Inc. ("Calm") from October 1997 through 2012 (the "Relevant Period"). ECF No. 80 at 3; ECF No. 265-6 at 74 n.3.[3] In 2012, Emigrant Mortgage foreclosed upon the Subject Property. ECF No. 301 at 5; *see also Emigrant Mortgage Company, Inc. v. Calm Development, Inc., Michael D'Antonio and Shirley Meek* (Docket No. BER-F-47234-09); TAC ¶ 11. Plaintiff was, at some point, a director of Calm. ECF No. 301 at 4. Although Plaintiff asserts that he resided

---

[3] In its Order dismissing Plaintiff's second amended complaint ("SAC"), the Court directed Plaintiff to explain in the TAC "why Plaintiff has standing to bring claims related to the Subject Property if he was not the owner of the Subject Property." ECF No. 259 at 3. Plaintiff failed to include any allegations in the TAC regarding Calm and its ownership of the Subject Property, and provided an inadequate explanation of this issue in his letter attached to the TAC. *See* TAC; ECF No. 296-1.

on the Subject Property, he does not plausibly allege that he maintained an ownership interest in the Subject Property during the Relevant Period.  TAC at ¶¶ 1, 40.[4]

Plaintiff alleges that he was involved in "the business of buying, selling, remodeling, flipping homes and sub-dividing any land large enough to be sub-divided for the purpose of building new homes including affordable housing units."  TAC ¶ 1.  Plaintiff maintains that the Borough was hostile to his plans to develop the Subject Property, and that beginning in 1998 and continuing over the course of subsequent years, the Borough directed its attorneys to create and enforce various zoning, building, and property maintenance codes in order to "threaten and intimidate Plaintiff" to leave the Subject Property and abandon his plans to develop the land. TAC ¶ 3.

Plaintiff further alleges that at some point, Thomas, the Borough's Marsh Warden, and the Borough diverted a tributary of a nearby river to create a lake, part of which jutted onto the Subject Property.  ECF No. 80 at 5–6; TAC ¶ 5.  Plaintiff asserts that as a result, the Subject Property was designated as a "wetland," which further inhibited Calm's ability to develop the Subject Property. ECF No. 80 at 6; TAC ¶ 20.  Plaintiff also asserts that Thomas tried to attract an endangered owl species onto the Subject Property in order to further frustrate Calm's ability to develop the Subject Property. ECF No. 80 at 6; TAC ¶ 5.

Subsequently, as discussed above, in 2012, Emigrant Mortgage, a creditor of Calm's, successfully moved to foreclose on the Subject Property.  ECF No. 301 at 4–5; ECF No. 301-3 at 3.  On December 6, 2013, Emigrant Mortgage purchased the Subject Property at a Sheriff's Sale,

---

[4] The Court notes that while Plaintiff does not allege specific facts regarding ownership of the Subject Property in the TAC, the Superior Court of New Jersey, Appellate Division found in a 2014 decision that D'Antonio was not the owner of the Subject Property after February 1997 when he transferred the Subject Property to his sons, who then transferred the Subject Property to Calm in October 1997.  *See* ECF No. 265-6 at 74 n.3.

but later "assigned its bid" on the Subject Property to Retained Realty.  ECF No. 301 at 6; ECF No. 301-3 at 4.  Ultimately, Plaintiff was evicted from the Subject Property in May 2014.  ECF No. 301 at 6; ECF No. 301-5 at 5; TAC ¶ 11.

### b.  Prior State-Court Litigation

Plaintiff and Calm previously engaged in numerous state court lawsuits with Defendants, as well as other parties, concerning the Subject Property.[5]  Seven of those lawsuits are particularly relevant to the disposition of this case and are briefly described below.  *See* ECF No. 265 at 7–13; ECF No. 265-1 at 3–15; ECF No. 301 at 3–7; ECF No. 301-1 at 7–9.

*First*, in 1999, the Borough instituted an action in the Superior Court of New Jersey, Law Division, Bergen County, ("First Litigation"),[6] against Plaintiff and Calm to prevent them from using the Subject Property in contravention of established zoning ordinances.  ECF No. 265-1 at 3.  Plaintiff and Calm responded with counterclaims.  *Id.*  Ultimately, in early 2002, Superior Court Judge Jonathan Harris entered judgment for the Borough, and permanently enjoined Calm and Plaintiff from using the Subject Property for non-residential purposes, allowing for only limited residential use.  *Id.* at 4, ECF No. 265-4 at 2–6.

*Second*, on December 13, 2002, Calm filed suit against the Borough in the Superior Court of New Jersey, Law Division, Bergen County, ("Second Litigation"),[7] alleging that the Borough's zoning ordinances and "development regulations" were exclusionary and unlawfully prohibited Calm from developing the Subject Property for low-income housing.  ECF No. 265-1 at 4, ECF

---

[5] The Court takes judicial notice of certain public records, including complaints and orders filed in prior lawsuits. *United States v. Kindred Healthcare, Inc.*, 469 F. Supp. 3d 431, 439 (E.D. Pa. 2020).
[6] *Borough of Allendale v. Calm Development, Inc., et al.*, Docket No. 5058-99 (Superior Court of New Jersey, Law Division, Bergen County).
[7] *Calm Development v. Borough of Allendale*, Docket No. 10047-02 (Superior Court of New Jersey, Law Division, Bergen County).

No. 265-4 at 9–11.  Superior Court Judge Jonathan Harris subsequently transferred the matter to the New Jersey Council on Affordable Housing ("COAH"), a New Jersey State Agency.  ECF No. 265-1 at 4; ECF No. 265-4 at 14.  Calm failed to achieve relief before COAH.  ECF No. 265-1 at 4.

*Third*, in 2003, Calm sued the Borough in the Tax Court of New Jersey, ("Third Litigation"),[8] demanding that the Borough reduce Calm's tax liability assessments with respect to the Subject Property.  ECF No. 265-1 at 4–5, ECF No. 265-4 at 16.  On May 4, 2004, Tax Court Judge Peter Pizzuto dismissed Calm's suit for lack of prosecution.  ECF No. 265-1 at 5; ECF No. 265-4 at 18–19.  Calm subsequently failed to amend its complaint and the suit was dismissed with prejudice.  ECF No. 265-1 at 5.

*Fourth*, in September 2005, Plaintiff instituted an action against Thomas, the Marsh Warden, and his wife, in the Superior Court of New Jersey, Law Division, Bergen County, ("Fourth Litigation"),[9] alleging that Thomas interfered with the Subject Property.  ECF No. 265-1 at 7, ECF No. 265-4 at 40–44.  Specifically, Plaintiff alleged that Thomas unlawfully caused the reclassification of the Subject Property as a "wetland," inhibiting Calm's ability to develop it for non-residential use.  *Id.*  On March 17, 2006, Superior Court Judge Robert Polifroni dismissed Plaintiff's action with prejudice.  ECF No. 265-1 at 7; ECF No. 265-4 at 46.

*Fifth*, on June 17, 2010, Calm filed a complaint against the Borough, Thomas, and other individuals and entities in the Superior Court of New Jersey, Law Division, Bergen County, ("Fifth

---

[8] *Calm Development, Inc., v. Borough of Allendale*, Docket No. 003206-03 (Tax Court of New Jersey).

[9] *D'Antonio v. Thomas, et al.*, Docket No. 006207-05 (Superior Court of New Jersey, Law Division, Bergen County).

Litigation"),[10] alleging that defendants in that case "misrepresent[ed] the status of the environmental and wildlife conditions upon [the Subject Property] so as to obstruct the development of this property," caused "water infiltration upon [the Subject Property]," and "over-charged [the Subject Property] in property taxes."  ECF No. 265-1 at 13–14, ECF No. 265-5 at 71–94.  Superior Court Judge Robert C. Wilson dismissed Calm's claims as to all defendants with prejudice.  ECF No. 265-1 at 15; ECF No. 265-6 at 42–43, 57–65.

*Sixth*, in 2010, Emigrant Mortgage, represented by Epstein, filed a foreclosure action regarding the Subject Property against Calm and Plaintiff in the Superior Court of New Jersey, Chancery Division, Bergen County ("Sixth Litigation").[11]  ECF No. 301 at 4; ECF No. 301-1 at 2. Superior Court Judge Peter Doyne entered final judgment of foreclosure against Calm and Plaintiff in December 2012, and the Sheriff's Sale of the Subject Property took place on December 6, 2013. ECF No. 301 at 5–6; ECF No. 301-1 at 7–8.

*Seventh*, in May 2015, one year after the eviction, Plaintiff filed an action against Retained Realty in the Superior Court of New Jersey, Law Division, Bergen County, ("Seventh Litigation"),[12] alleging damages resulting from the eviction.  ECF No. 301 at 6–7; ECF No. 301-1 at 3.  On February 21, 2018, Superior Court Judge Estela De La Cruz granted summary judgment to Retained Realty against Calm and Plaintiff.  ECF No. 301-1 at 9; ECF No. 301-5 at 4–23.  The Superior Court of New Jersey, Appellate Division, Bergen County affirmed Judge De La Cruz's orders in full.  ECF No. 301 at 7; ECF No. 301-1 at 15.

---

[10] *Calm Development, Inc. v. Borough of Allendale, et al.*, Docket No. 5248-09 (Superior Court of New Jersey, Law Division, Bergen County).
[11] *Emigrant Mortgage Company, Inc. v. Calm Development, Inc., et al.*, Docket No. 47234-09 (Superior Court of New Jersey, Chancery Division, Bergen County).
[12] *D'Antonio v. Retained Realty, et al.*, Docket No. 4562-15 (Superior Court of New Jersey, Law Division, Bergen County).

### c. Procedural Background

Plaintiff filed an initial *pro se* complaint (the "Complaint") against Defendants in this matter on February 10, 2016.  ECF No. 1.  This Court dismissed the Complaint without prejudice on February 21, 2017.  ECF No. 80.[13]  Plaintiff then filed a *pro se* amended complaint on March 8, 2017 (ECF No. 84), but subsequently requested and received leave to file his SAC following his retention of counsel.  ECF No. 164.  Plaintiff's counsel filed the SAC, but later withdrew from this case.  On March 13, 2020, this Court dismissed the SAC without prejudice, holding that the Subject Property was owned by Calm, not Plaintiff, and "because all of Plaintiff's claims in the SAC stem from alleged interference with the development of the Subject Property or eviction and foreclosure proceedings in connection with the Subject Property, Plaintiff's claims must all be dismissed for lack of standing."  ECF No. 259 at 2–3.  This Court further held that "Plaintiff may file a [TAC] that specifically alleges why Plaintiff has standing to bring claims related to the Subject Property if he was not the owner of the Subject Property."  *Id.*  On March 13, 2020, Plaintiff moved for this Court to reconsider its dismissal of his SAC.  ECF No. 260.  On November 30, 2020, this Court denied Plaintiff's motion for reconsideration.  ECF No. 326.

---

[13] The Opinion issued on February 21, 2017 also denied Plaintiff's motion for default judgment against defendants Louis Capazzi and Thomas P. Monahan.  ECF No. 80 at 23.  While Plaintiff had obtained entry of default against Capazzi and Monahan in August 2016, the Court declined to grant default judgment as "the Court lacks jurisdiction over Plaintiff's claim against Capazzi, and there are no apparent claims in the Complaint against Monahan."  Id.  While Plaintiff has repeatedly moved for default judgment against Capazzi and Monahan since that Opinion (*see* ECF Nos. 131, 191), it is well settled that the prior entry of default from 2016 is no longer in effect given that the operative pleading has been amended repeatedly since that time.  *See Sarwar v. Neelkanth Enterprises LLC*, No. 20-15685, 2021 WL 243135, at *1 (D.N.J. Jan. 25, 2021) ("The Court finding that because the Clerk's Entry of Default was filed in relation to the superseded pleading, it shall be set aside and Plaintiff's Motion for Default Judgment . . . shall be denied as premature.").  The Court additionally notes that the TAC only lists Capazzi and Monahan in the caption and contains no other references to them.  To the extent Plaintiff is still seeking to move for default judgment against Capazzi and Monahan (ECF No. 191), such motion is denied.

Plaintiff filed his TAC on July 3, 2020.  *See generally* TAC.  Plaintiff's TAC contains claims that rely on references to unrelated legal theories with limited supporting facts or delineation as to specific Defendants.  For example, Count One, entitled "Violation of 42 USC SEC 3601-3614; 14th Amendment and 42 USC SEC1983," purports to bring claims under all of the following causes of action:  (1) the Fair Housing Act, 42 U.S.C. § 3604 ("FHA"), (2) the Fourteenth Amendment's Equal Protection Clause and Due Process Clause, (3) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), (4) 42 U.S.C.A. § 1983 ("Section 1983"), and (5) "Fraud in the Concealment, Fraud in the Inducement, Theft by Deception, Mail Fraud, Wire Fraud, Money Laundering and Income Tax Evasion."  *Id.* at ¶¶ 1–45.  Plaintiff also inserted a list of claims into the "wherefore clause" of the TAC without alleging any supporting facts (*id.* at 17–18), which includes the following causes of action (some of which are also asserted in other counts of the TAC):

1. "1st, 2nd, 4th, 14th Amendment[s]";
2. "Appropriation of Tax Levies for 15 years";
3. "Municipal Officials Theft";
4. "CFO'S manipulation of Borough Accounting";
5. "Mail Fraud";
6. "Wire Fraud";
7. "Violation of Court Rules and Professional Conduct";
8. "Federal Civil Rights";
9. "Taking of property without compensation";
10. "Conspiracy";
11. "Criminal RICO";
12. "Title 11 USC";
13. "Title 18 USC";
14. "Consumer Fraud on the Public";
15. "Negligence after Notice of Claim";
16. "Violation of State Open Public Meeting Laws";
17. "Breach of Duty of Care and Fiduciary Duty";
18. "Non-Client Legal Malpractice";
19. "OPRA";
20. "[His] Right to Disclose for Gironda Report, Financial Records";
21. "Failure to disclose/report Banking";
22. "NJ Fair Housing Laws and COAH Violations";

23. "Fraud in the General Principles of Equity"; and
"Conspiracy in the Inducement Political Members Former Borough Attorney,
Chief of Police."

## II.   <u>Legal Standard</u>

### a.  Federal Rule of Civil Procedure 12(b)(1)

A court, on the motion of a party or *sua sponte*, must dismiss a claim under Rule 12(b)(1)

where it lacks subject matter jurisdiction.  *In re Schering Plough Corp. Intron/Temodar Consumer*

*Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).  When addressing a challenge to subject matter

jurisdiction, "the court must start by determining whether [it is] dealing with a facial or factual

attack to jurisdiction."  *U.S. ex rel. Atkinson v. PA. Shipbuilding Co.,* 473 F.3d 506, 514 (3d Cir.

2007).  Here, Defendants "filed the attack before [they] filed any answer to the Complaint or

otherwise presented competing facts. Their motion[s] [are] therefore, by definition, a facial

attack."  *Silverberg v. City of Philadelphia*, No. 19-2691, 2020 WL 108619, at *3 (E.D. Pa. Jan.

8, 2020).  A facial attack challenges the "sufficiency of the plaintiff's pleadings on jurisdictional

grounds" where the jurisdictional facts are not in dispute. *Brown v. Tucci*, 960 F. Supp. 2d 544,

561 (W.D. Pa. 2013) (citing *Petruska v. Gannon University*, 462 F.3d 294, 302, n.3 (3d Cir. 2006)).

For purposes of a facial attack, courts accept as true all well-pleaded factual allegations, viewing

them in the light most favorable to the party asserting jurisdiction.  *In re Kaiser Group Int'l, Inc.*,

399 F.3d 558, 561 (3d Cir. 2005).

### b.  Federal Rule of Civil Procedure 12(b)(6)

To survive dismissal under Rule 12(b)(6), a complaint must meet the pleading requirements

of Rule 8(a)(2) and "contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  In

evaluating the sufficiency of a complaint, a court must also draw all reasonable inferences in favor

of the non-moving party. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Ultimately, a complaint "that offers 'labels and conclusions' or . . . tenders 'naked assertions' devoid of further factual enhancement," will not withstand dismissal under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678 (citations omitted).

## III.   DISCUSSION

As noted above, Plaintiff alleges that Defendants restricted his purported use and enjoyment of the Subject Property, and ultimately foreclosed on and evicted him from the Subject Property, in violation of federal and state law.   In response, Defendants argue that the TAC warrants dismissal because Plaintiff:  (1) lacks standing to bring his claims under Article III of the Constitution of the United States; (2) is precluded from bringing his claims based on the disposition of the previously adjudicated state-court lawsuits; and (3) has failed to state any claim for relief.[14] For the reasons described below, the Court agrees with Defendants that dismissal of the TAC is warranted.

### a.   Plaintiff Lacks Standing to Bring this Suit

The crux of Plaintiff's claims stem from Defendants' alleged interference with the Subject Property, which, as noted above, was owned by Calm throughout the Relevant Period.   Because Plaintiff has failed to plausibly allege that he, as opposed to Calm, ever maintained an actionable legal interest in the Subject Property during the Relevant Period, he cannot demonstrate any injury, let alone causation or redressability, and therefore lacks standing to bring his claims.[15] *See Collura*

---

[14] The Court notes that, in addition to the parties' moving and opposition papers, Plaintiff has filed numerous other submissions on the docket regarding dismissal of the TAC, his request for default judgment and other unrelated matters.   The Court has reviewed and considered all such submissions in connection with this Opinion.

[15] Moreover, as this Court previously held in its 2017 Opinion, the *Rooker-Feldman* doctrine independently deprives this Court of subject matter jurisdiction over Plaintiff's claims "to the extent that Plaintiff alleges a direct injury (rather than an injury to Calm . . .) based on any [of the]

*v. Maguire*, 569 F. App'x 114, 117 (3d Cir. 2014) ("[Plaintiff] had no right . . . and thus he suffered no injury.").

Plaintiff principally argues that he has standing through his financial relationship with Calm. ECF No. 329 at 3. In support of this argument, Plaintiff alleges that he invested at least $840,00 into Calm which was used to fund payments associated with the Subject Property during the Relevant Period. ECF No. 329 at 3. Plaintiff's argument fails, however, as he cannot bring claims based on injuries to Calm, its interests, or its property because "a stockholder, director, officer or employee of a corporation has no personal or individual right of action" unless "the shareholder or officer suffers an[] injury separate and distinct from that suffered by the corporation as a result of the wrongdoer's actions." *Id.* Here, contrary to Plaintiff's contention, the purported loss of his personal investment into Calm for the Subject Property does not constitute such a "separate and distinct" injury. *Grimm v. Borough of Norristown*, 226 F. Supp. 2d 606, 632 (E.D. Pa. 2002) (a "personal loss by virtue of losses incurred by the corporation" is insufficient to confer standing) (disagreed with on other grounds by *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 284 n.6 (3d Cir. 2004)); *see also Toto v. McMahan, Brafman, Morgan & Co.*, No. 93-5894, 1997

---

adverse state court decisions [listed above] prior to the filing of this lawsuit." ECF No. 80 at 17. The *Rooker-Feldman* Doctrine is applicable where "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (citations and internal quotation marks omitted). Insofar as Plaintiff's claims in the TAC continue to ask this Court to overturn final state court judgments against Plaintiff that were decided before the instant litigation, those claims continue to be barred under the *Rooker-Feldman* Doctrine. *See Kar v. HSBC Bank USA NA*, No. 2014-16, 2020 WL 7028555, at *3 (D.N.J. Nov. 30, 2020) ("To entertain Plaintiffs' challenge and grant relief would necessarily require the Court to review and invalidate the state court decision, a result that is inconsistent with the *Rooker-Feldman* doctrine.").

WL 458764, at *4 (S.D.N.Y. Aug. 11, 1997) (plaintiff failed to demonstrate "standing to sue for injury suffered directly by the [Corporation] through which [he] invested")  (citations omitted).

Plaintiff's other allegations that he suffered a different injury from any alleged injury suffered by Calm also fail.  *First*, in a letter attached to the TAC Plaintiff alleges that he has standing because the Borough "purchased an insurance policy in [his] name alone," which supposedly evidences his legal interest in the Subject Property.  ECF No. 296-1 at 3.  It is unclear to the Court how this alleged insurance policy would provide standing to Plaintiff.  Regardless, Plaintiff has not alleged any specific facts in support of his contention, and, in opposition, the Borough avers that it never took out this type of special insurance policy.  ECF No. 265-1 at 19 ("Plaintiff's irrational and incorrect belief that the Borough took out a special insurance policy is ludicrous and illustrates the delusional thought process exhibited by plaintiff (THERE IS NO SPECIAL INSURANCE POLICY FOR MR. D'ANTONIO.)").  The Court therefore finds that Plaintiff's unsubstantiated allegations regarding the insurance policy do not plausibly support a finding of standing.  *See Chan v. Daimler AG*, No. 11-5391, 2012 WL 5827448, at *9 (D.N.J. Nov. 9, 2012) ("[C]onclusory allegations are insufficient to confer standing.").

*Second*, Plaintiff asserts in the letter attached to his TAC that the State of New Jersey revoked Calm's "legal standing" because it failed to pay required corporate filing fees.  ECF No. 296-1 at 2.  As a result, Plaintiff argues that Calm became a "trade name," and its corporate existence should be ignored in favor of recognizing Plaintiff as the aggrieved party here.  *Id.* Assuming for argument's sake that Calm has dissolved, Plaintiff's argument still fails pursuant to N.J.S.A. 14A:12-9, which provides that a "dissolved corporation shall continue its corporate existence," meaning that Calm could still have standing to sue and be sued.  *Id.*; *see also Lancellotti*

*v. Maryland Cas. Co.*, 260 N.J. Super. 579, 583 (App. Div. 1992) (explaining that a dissolved corporation retains standing to bring a suit).

*Third*, Plaintiff argues that he has standing because he was a named defendant in the foreclosure litigation concerning the Subject Property. ECF No. 304 at 9. This argument lacks merit as it appears Plaintiff was named as a defendant in the foreclosure litigation because he executed the underlying Note evidencing Calm's mortgage debt as required by New Jersey state law. *See* N.J.S.A. 2A:50-2 (requiring that "any person" who signs a mortgage note must be "made a party in the action to foreclose the mortgage"). The fact that Plaintiff was named as a defendant in a separate litigation does not confer standing upon him to bring claims in the instant matter. *See, e.g.*, *U.S. Fire Ins. Co. v. Weishorn*, No. 08-226, 2009 WL 3300040, at *4 (W.D.N.C. Oct. 13, 2009), as amended (Oct. 14, 2009)) ("[W]aging a defense in a wholly separate litigation does not confer standing.").

*Fourth*, Plaintiff asserts that this Court "granted" him standing when it reopened this case and allowed Plaintiff to proceed *pro se*. ECF No. 329 at 4. The Court does not have the authority to confer standing on a party under Article III. U.S. Const. art. 3, § 2, cl. 1.

*Finally*, although Plaintiff made no reference to any purported lease in the SAC, he now alleges that he "held a lease" to reside on the Subject Property during the Relevant Period. TAC at ¶ 11. This argument fails for a variety of reasons. As noted above, "conclusory allegation[s]" are "insufficient to establish standing." *Brown v. Hyundai Motor Am.*, No. 18-11249, 2019 WL 4126710, at *3 (D.N.J. Aug. 30, 2019); *see also Vasquez v. RVA Garage, Inc.*, 238 A.D.2d 407, 408 (1997) (holding that "conclusory statements" were insufficient to establish a lease between an owner and a purported tenant). Additionally, the Court notes that Superior Court Judge Gerald C. Escala already found that there was not a valid lease in place on the Subject Property, as the lease

offered was a "sham lease" and that 2010 deposition testimony contained an admission that "there is no lease." ECF No. 301-3 at 7.[16]  Consequently, Plaintiff had no "legal right" in the Subject Property, including in the form of a "leasehold interest[]," and thus lacks standing to sue as a purported tenant.[17]  *Ruiz v. New Garden Twp.*, 376 F.3d 203, 212 n.16 (3d Cir. 2004).

Accordingly, Plaintiff lacks standing to bring his claims arising from issues related to the Subject Property against Defendants and the Court therefore lacks subject matter jurisdiction over the TAC.[18]  Furthermore, as described below, even assuming, *arguendo*, that this Court retains subject matter jurisdiction over any of Plaintiff's instant claims, dismissal of the TAC is warranted under Rule 12(b)(6) because Plaintiff's claims are precluded under the Entire Controversy, *Res Judicata* and Collateral Estoppel Doctrines, and because Plaintiff has failed to state any claim for relief.

---

[16] Furthermore, while the TAC briefly alleges that "the Sheriff indicat[ed] that Plaintiff held a lease and had 3 years of cancelled rent checks," in connection with Plaintiff's claim that his eviction was illegal, such allegations cannot support the existence of a lease throughout the entire Relevant Period spanning fourteen years, and it is unclear in which years Plaintiff is claiming to have paid rent.

[17] To the extent Plaintiff alleges that his personal belongings were left at the Subject Property following the foreclosure (TAC at ¶ 40), the Court notes that the foreclosure and eviction have been fully and fairly litigated in New Jersey State Court. *See* ECF No. 301-5 at 18 (Bergen County Superior Court Judge Estela M. De La Cruz held that "[a]s to the alleged damaged or missing goods, the Plaintiff has not set forth any evidence that would show that any of the Defendants either damaged his property or that any of the Defendants took any of the missing items."). In any event, as described below, Plaintiff's claims independently warrant dismissal irrespective of whether Plaintiff has standing in this limited regard.

[18] While defendants Capazzi and Monahan did not file a motion to dismiss, this Court may raise *sua sponte* the issue of whether it has subject matter jurisdiction over a case. *Wayne Land & Mineral Grp., LLC v. Delaware River Basin Comm'n*, 959 F.3d 569, 574 (3d Cir. 2020) ("[O]ur continuing obligation to assure that we have [subject matter] jurisdiction requires that we raise the issue of standing *sua sponte*.") (citations omitted). While the TAC only references Capazzi and Monahan in the caption, the Court also lacks subject matter jurisdiction over any claims against these defendants arising from issues related to the Subject Property for the reasons discussed above.

### b.  Preclusion

Plaintiff is precluded from bringing his claims against Defendants because he or Calm (with whom he was in privity) were parties to fully adjudicated state-court lawsuits which resulted in final judgments on the merits, a foreclosure sale, and ultimately eviction, and all of those lawsuits arose out of the same transaction or occurrence that is the basis of this case—Defendants' allegedly unlawful interference with the Subject Property.

Specifically, the Entire Controversy and *Res Judicata* Doctrines "both share a trio of requirements" for preclusive effect to be given to an instant claim: (1) "the judgment in the prior action must be valid, final, and on the merits"; (2) "the parties in the action must be identical or in privity with those in the prior action"; and (3) "the action must grow out of the same transaction or occurrence as the claim in the earlier one." *Rodrigues v. Unifund CCR, LLC*, 690 F. App'x 799, 802 (3d Cir. 2017) (applying the Entire Controversy and *Res Judicata* Doctrines together) (citations omitted).

In contrast, Collateral Estoppel, or issue preclusion, applies where "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17-151, 2021 WL 129803, at *9 (D. Del. Jan. 14, 2021) (quoting *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 209 (3d Cir. 2001)).  The critical difference between the Entire Controversy and *Res Judicata* Doctrines (claim preclusion) and Collateral Estoppel (issue preclusion) is that a party asserting issue preclusion does not need to demonstrate that they were a party (or in privity with a party) to a previously adjudicated lawsuit.  *Id.*

As discussed at length above, Plaintiff and Defendants have already fully litigated numerous lawsuits involving the Subject Property in state court, which, like this case, were based on allegations that Defendants unlawfully interfered with Plaintiff's purported use and enjoyment of the Subject Property, and ultimately foreclosed on and evicted him from the Subject Property, in violation of federal and state law. *See supra*, pages 4–6. The Court will analyze the preclusion arguments that apply to each of the Defendants below.

1. *The Borough Defendants*

Plaintiff's claims against the Borough Defendants concerning their alleged interference with the Subject Property are precluded by the Entire Controversy and *Res Judicata* Doctrines.

The first factor is satisfied here because the Superior Court issued final judgments on the merits against Plaintiff or Calm in the First, Third, Fourth, and Fifth Litigations. ECF No. 265-1 at 3–15.

The second factor is also met here because the Borough Defendants and Plaintiff were parties, or were in privity with parties, in the First, Third, Fourth, and Fifth Litigations. *Id.* Plaintiff was a party in the First and Fourth Litigations, and Calm, whom he was in privity with given his role as an investor and director, was a party in the Third and Fifth Litigations. *Jarvis v. Matlin Patterson Glob. Advisers, LLC*, 867 F. Supp. 2d 559, 562 (D. Del. 2012) (finding privity between an individual and certain entities where the individual's managerial role was "so intertwined" with the operations of the entities). Either the Borough or Thomas (or both) was a party in the First, Third, Fourth, and Fifth Litigations. ECF No. 265-1 at 3–15. Additionally, Thomas, Bole, McDonnell, and Pfund, sued by Plaintiff in their official capacities, are also in privity with the Borough with respect to the First, Third, Fourth, and Fifth Litigations. *Pasqua v. Cty. of Hunterdon*, No. 15-3501, 2017 WL 5667999, at *12 n.14 (D.N.J. Nov. 27, 2017) (citing

*Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988) ("[G]overnmental officials sued in their official capacities for actions taken in the course of their duties are considered in privity with the governmental body.")).[19]

Finally, the third factor is satisfied here because this case and the First, Third, Fourth, and Fifth Litigations arise out of the same transaction or occurrence—Defendants' allegedly unlawful interference with the Subject Property.  In particular, the First Litigation involved claims that the Borough instituted unlawful zoning ordinances that prevented certain development of the Subject Property, the Third Litigation included allegations that the Borough illegally taxed Calm and the Subject Property, the Fourth Litigation was based upon claims that the Borough Defendants improperly designated the Subject Property as a "wetland," and the Fifth Litigation involved allegations that the Borough misrepresented environmental and wildlife conditions to obstruct the development of the Subject Property, caused water damage to the Subject Property, and overcharged the Subject Property's taxes.  ECF No. 265-1 at 3–15.

Accordingly, Plaintiff's claims against the Borough Defendants are precluded.

2. *Epstein*

Plaintiff's claims against Epstein are likewise precluded by the Entire Controversy and *Res Judicata* Doctrines.  The first factor is met here because the New Jersey Superior Court issued final judgments on the merits against Plaintiff or Calm in the Sixth and Seventh Litigations.  ECF No. 301-1 at 2–5.

---

[19] Insomuch as Plaintiff intended to sue Thomas, Bole, McDonnell, and Pfund in their individual capacities, they are still in privity with the Borough as Plaintiff has failed to allege "any actions taken by the[se] individual Defendants . . . that are separate and distinct from the actions of the [Borough]."  *Pasqua*, 2017 WL 5667999, at *12 n.14 (citing *Gregory*, 843 F.2d at 120).

The second factor is satisfied as Plaintiff and Epstein were parties, or in privity with parties, in the Sixth and Seventh litigations.  Plaintiff was a party in the Sixth Litigation, and Calm, with whom Plaintiff is in privity, was a party in the Seventh Litigation.  *Id.*  Epstein, although not a party in the Sixth and Seventh Litigations, is in privity with a party in those cases, Emigrant Mortgage, by virtue of his attorney-client relationship.  *See Camp v. Wells Fargo Bank, N.A.*, No. 16-2463, 2017 WL 738493, at *3 (D.N.J. Feb. 24, 2017) (finding law firm that represented mortgagee in prior foreclosure suit in privity with mortgagee); *Tagayun v. Citibank, N.A.*, No. 05-4302, 2006 WL 5100512, at *5 (D.N.J. June 9, 2006) (holding attorney to party in the first suit was in privity with that party).

Finally, the third factor is met here because this case and the Sixth and Seventh Litigations arise out of the same transaction or occurrence—Defendants' allegedly unlawful interference with the Subject Property.  Specifically, the Sixth and Seventh Litigations involved claims that Epstein, serving as counsel for Emigrant Mortgage, and the Bergen County Sheriff unlawfully foreclosed on the Subject Property and evicted Calm and Plaintiff from the premises.  ECF No. 301-1 at 2–5.

Therefore, Plaintiff is also precluded from bringing his claims against Epstein.[20]

### 3. *The Bergen County Sheriff, Passaic River Coalition, and Albohm*

The doctrine of Collateral Estoppel, as opposed to the Entire Controversy and *Res Judicata* Doctrines, bars Plaintiff's claims against the Bergen County Sheriff, Passaic River Coalition, and Albohm.  While these Defendants were not a party (or in privity with a party) in any of the state-

---

[20] To the extent that Plaintiff's causes of action in this matter deviate from his causes of action asserted in the state court lawsuits, the Entire Controversy Doctrine still bars his claims against the Borough Defendants and Epstein because they were "known to [him] during the pendency of these" state-court litigations.  *Puche v. Wells Fargo NA*, 256 F. Supp. 3d 540, 548 (D.N.J. 2017).  The doctrine of *Res Judicata* also bars such claims because they "could have been brought" at the time of these state-court litigations.  *Duhaney v. Att'y Gen. of U.S.*, 621 F.3d 340, 347 (3d Cir. 2010).

court lawsuits discussed above, Plaintiff's claims in this case—involving challenged zoning ordinances, tax assessments, and foreclosure and eviction proceedings—have already been litigated to final judgments on the merits in state court.  In other words, Collateral Estoppel precludes Plaintiff's claims against the Bergen County Sheriff, Passaic River Coalition, and Albohm because Plaintiff or Calm previously litigated and received adverse rulings on the key issues in this case.  Those adverse rulings in the First, Third, Fourth, Fifth, Sixth, and Seventh Litigations were final judgments on the merits and were "necessary" to the state court decisions, thus barring their re-litigation here.  *Bolivarian Republic of Venezuela*, 2021 WL 129803, at *9 (citations omitted).

### c.  Failure to State a Claim

Dismissal of Plaintiff's TAC is also warranted under Rule 12(b)(6) because he has failed to state any claim for relief pursuant to Federal Rules of Civil Procedure 8 and 9.

### 1.  Fair Housing Act

Plaintiff's claim that Defendants violated the Fair Housing Act (42 U.S.C §§ 3601–3614) (the "FHA") fails for three reasons.  TAC at ¶¶ 1, 2, 13.  First, Plaintiff fails to identify which provision of the FHA, and under what grounds, he purports to bring this claim.  This alone is fatal to Plaintiff's claim.  *See Ass'n of New Jersey v. Horizon Healthcare Servs., Inc.*, No. 16-08400, 2017 WL 2560350, at *4 (D.N.J. June 13, 2017) (burden to establish private right of action rests with the plaintiff).  Second, assuming that Plaintiff intended to bring this claim under Section 3604 of the FHA (TAC at ¶ 8 (alleging discrimination)), he has failed to assert that he was a "member[] of a protected group," as required to state such a claim.  *Connecticut Fair Hous. Ctr. v. CoreLogic Rental Prop. Sols., LLC*, No. 18-705, 2020 WL 4570110, at *17 (D. Conn. Aug. 7, 2020).  Insofar as Plaintiff alleges that he intended to build low-income housing to provide housing for members

of a protected group, such allegations are similarly insufficient to state a claim under Section 3604 because he cannot bring a third-party claim on behalf of others based on the allegations of the TAC.  *See Sw. Key Programs, Inc. v. City of Escondido*, No. 15-01115, 2017 WL 1094001, at *7 (S.D. Cal. Mar. 23, 2017) ("Plaintiff . . . is a corporation, not a member of a protected class, and the FAC does not allege that it has been deprived a right to equal protection other than a statement that the zoning decision hurt its mission. . . . Therefore, the Court declines to find third party standing for Plaintiff.").  Third, "[c]laims for violations of the FHA are subject to a two-year statute of limitations, running from the date of the alleged injury," and, here, the alleged injury appears to have taken place over a decade prior to the filing of the Complaint, the earliest date that the statute of limitations could have been tolled by the filing of this suit.  *Ezell v. JPMorgan Chase Bank Nat'l Ass'n*, No. 18-1407, 2020 WL 525899, at *7 (D.N.J. Jan. 31, 2020).  Accordingly, Plaintiff has not pleaded a cognizable claim under the FHA.

### 2.  Fourteenth Amendment – Equal Protection Clause and Due Process Clause

Plaintiff's claims that Defendants violated his rights under the Equal Protection Clause by inhibiting his ability to develop the Subject Property are similarly without merit.  TAC at ¶¶ 2, 4, 12–45.  In particular, as noted above, Plaintiff has failed to demonstrate that "he is a member of a protected class," which is a required element of an Equal Protection Clause claim.  *Kaul v. Christie*, 372 F. Supp. 3d 206, 254 (D.N.J. 2019).

Plaintiff primarily claims that Defendants violated his Due Process rights by interfering with the Subject Property.  TAC at ¶¶ 11–42.  These claims fail because, as described above, he never maintained a legal interest in the Subject Property.  *Roberts v. Mentzer*, 382 F. App'x 158, 166 (3d Cir. 2010) (Plaintiff must allege a "protected property . . . interest was at stake" to demonstrate a Due Process claim).   Regardless, Plaintiff has been afforded ample opportunities to vindicate whatever rights he claims have been violated here in his myriad court proceedings

concerning the Subject Property, and the Court finds that he has been afforded ample Due Process. *See, e.g.*, *Hasher v. Christie,* No. 10-3435, 2010 WL 5068099, at *11 (D.N.J. Dec. 6, 2010) ("[B]ased on the allegations and admissions by plaintiff in his Complaint, this Court also determines that there has been no procedural or substantive due process violations at this time.").

Finally, Plaintiff's Fourteenth Amendment claims against Epstein and Albohm independently fail because Plaintiff does not allege that they were government actors, or that they acted under color of state law.   Without such allegations, Plaintiff cannot assert Fourteenth Amendment claims against Epstein and Albohm.   *Liggon-Redding v. Generations, Interstate, Harvest House APT*, No. 14-3191, 2015 WL 3991148, at *4 (D.N.J. June 30, 2015) (citations omitted).

### 3.  Title VII

Plaintiff additionally claims that Defendants violated his rights under Title VII because they interfered with the Subject Property.  TAC at ¶¶ 5, 7, 13–28.  This claim must fail because Title VII prohibits employment discrimination, but this case does not involve an employment dispute.  *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1738 (2020).  Plaintiff does not allege that he was ever employed by any of the Defendants and therefore cannot state a claim for employment discrimination.  Plaintiff's Title VII claim is also time-barred as Plaintiff does not allege that he filed a complaint with the United States Equal Employment Opportunity Commission within 300 days of his alleged injuries as is required to bring a Title VII claim.   *See Graham v. Univ. Radiology Grp.*, No. 18-8616, 2020 WL 5640705, at *10 (D.N.J. Sept. 22, 2020) (noting statute of limitations defense for Title VII claims).

4. *Section 1983*

Plaintiff also brings federal claims against Defendants under Section 1983.  *See generally*

TAC.  However, because Plaintiff has failed to allege that Defendants violated any of his federal

rights as described above with respect to his claims under the FHA, Fourteenth Amendment, and

Title VII, Plaintiff has failed to establish a cognizable Section 1983 claim.

Plaintiff's Section 1983 claim fails for two other reasons.  First, Plaintiff's *respondeat*

*superior* theory of liability against the Borough and the Bergen County Sheriff is foreclosed by

the Supreme Court's decision in *Monell v. Department of Social Services of the City of New York*,

436 U.S. 658 (1974), which held that "a municipality cannot be held liable under § 1983 on a

respondeat superior theory."  *Id.* at 691.  Second, Plaintiff's Section 1983 claim is time barred as

"in New Jersey, claims brought under . . . Section 1983 . . . are subject to a two-year statute of

limitations."  *Joey's Place LLC v. City of Clifton*, No. 19-20546, 2020 WL 7778066, at *5 (D.N.J.

Dec. 31, 2020).  Here, Plaintiff's 1983 claim focuses on his inability to develop the Subject

Property into low-income housing and any alleged injury connected with these claims occurred

more than two-years prior to the filing of the Complaint as described above.

5. *Fraud*

Plaintiff also alleges that certain Defendants, grouped collectively, committed "Fraud in

the Concealment, Fraud in the Inducement, Theft by Deception, Mail Fraud, Wire Fraud, Money

Laundering and Income Tax Evasion."  TAC at ¶ 9.  Fraud claims must be alleged with heightened

particularity.  *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) ("To satisfy this

standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise

inject precision or some measure of substantiation into a fraud allegation.").  Plaintiff's allegations

fall far short of that pleading requirement here as his generalized and unsupported allegations that

the Borough's 2007 budget appropriation was inconsistent with bank statements and impacted taxes are implausible, lack detail, and are not properly tied to an injury suffered by D'Antonio. *Estate of Cotton v. Senior Planning Servs., LLC*, No. 19-8921, 2020 WL 7022740, at *16 (D.N.J. Nov. 30, 2020) (holding that Rule 9(b), which covers claims of fraud, "precludes a litigant from alleging conclusory, generalized facts") (citations omitted).

### 6. Other Claims

Finally, Plaintiff lists claims in the TAC in a "wherefore clause" for: "1st, 2nd, 4th, 14th Amendment"; "Appropriation of Tax Levies for 15 years"; "Municipal Officials Theft"; "CFO's manipulation of Borough Accounting"; "Mail Fraud"; "Wire Fraud"; "Court Rules and Professional Conduct"; "Federal Civil Rights"; "Taking of property without compensation"; "Conspiracy"; "Criminal RICO"; "Title 11 USC"; "Title 18 USC"; "Consumer Fraud on the Public"; "Negligence after Notice of Claim"; "State Open Public Meeting Laws"; "Breach of Duty of Care and Fiduciary Duty"; "Non-Client Legal Malpractice"; "OPRA"; "Right to Disclose for Gironda Report, Financial Records"; "Failure to disclose/report Banking"; "NJ Fair Housing Laws and COAH Violations"; "Fraud in the General Principles of Equity"; and "Conspiracy in the Inducement Political Members Former Borough Attorney, Chief of Police." *See* TAC at 17–18. Plaintiff only makes a passing reference to these claims without alleging any supporting facts. *Id*. Thus, because the TAC lacks any allegations substantiating these claims, they "do not pass muster under Rule 8's and Rule 9(b)'s pleading standards."[21] *Covington v. Equifax Info. Servs., Inc.*, No. 21-81564, 2020 WL 1921954, at *8 (D.N.J. Apr. 20, 2020) (citing *Iqbal*, 556 U.S. at 678).

---

[21] Defendants also argue that Plaintiff's claims are barred by the law of the case doctrine. *See, e.g.*, ECF No. 302-1 at 15. The "law of the case doctrine" provides that once a court makes findings on an issue in a case, the law of that case will not be disturbed by that court unless it appears that there are compelling reasons to do so. *SEC v. Lucent*, No. 04-2315, 2006 WL 2168789, at *5 (D.N.J. June 20, 2006). Thus, to the extent that Plaintiff's allegations in the TAC mirror those in

## IV.     AMENDMENT OF THE TAC

"Dismissal of . . . a complaint with prejudice is appropriate if amendment would be . . . futile." *Bankwell Bank v. Bray Entertainment, Inc., et al.*, No. 20-49, 2021 WL 211583, at *2 (D.N.J. Jan. 21, 2021). "An amendment is futile if it is frivolous or advances a claim or defense that is legally insufficient on its face." *Lombreglia v. Sunbeam Prod., Inc.*, No. 20-0332, 2021 WL 118932, at *5 (D.N.J. Jan. 13, 2021). Here, Plaintiff's TAC warrants dismissal with prejudice because he fails to demonstrate standing, his claims are precluded, and he has failed to state any claim for relief. *See Ibrahim v. New Jersey Office of the Att'y Gen.*, No. 19-15405, 2020 WL 4282453, at *5 (D.N.J. July 27, 2020), *reconsideration denied sub nom.*, 2020 WL 7868145 (D.N.J. Dec. 31, 2020) (dismissing action with prejudice on preclusion grounds as "further amendment would be futile"). Many, if not all, of these deficiencies were present in Plaintiff's prior pleadings, demonstrating the futility of allowing further amendment here.

## V.     CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' Motions to Dismiss (ECF Nos. 265, 301, 302, 308, 324) and the TAC is dismissed **WITH PREJUDICE**. An appropriate Order Accompanies this Opinion.

**DATE:** March 31, 2021.

s/Claire C. Cecchi
**CLAIRE C. CECCHI, U.S.D.J.**

---

his initial Complaint and the SAC, which this Court already dismissed (ECF Nos. 80, 259), they are barred by the law of the case doctrine. *Dougherty v. VFG, LLC*, 118 F. Supp. 3d 699, 708 (E.D. Pa. 2015) (The law of the case doctrine "expresses the practice of courts [to] generally . . . refuse to open [issues that have already] been decided [in the same case]") (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)).